**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware corporation, and WIRELESS VALLEY COMMUNICATIONS, INC., a Delaware corporation, | ) ) ) ) | |
| | ) | C.A. No. 07-519-JJF |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| v. | ) ) | **JURY DEMANDED** |
| ARUBA NETWORKS, INC., a Delaware corporation, | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

**SYMBOL TECHNOLOGIES, INC.'S AND WIRELESS VALLEY
COMMUNICATIONS, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF THEIR JOINT MOTION (1) TO STRIKE
THE FIFTH, SIXTH, AND NINTH DEFENSES AND INTRODUCTION;  AND
(2) DISMISS, IN PART, COUNT SIX OF ARUBA'S COUNTERCLAIMS**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, Delaware  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs
Symbol Technologies, Inc. and Wireless Valley
Communications, Inc.*

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York  10022
(212) 918-3000

Dated:  December 10, 2007

**Table Of Contents**

                                                                                                    **Page**

Table Of Authorities ........................................................................................................iii

SUMMARY OF ARGUMENT ......................................................................................1

STATEMENT OF FACTS .............................................................................................3

    A.    Symbol And Its '922 And '923 Patents ........................................................3

    B.    Wireless Valley And Its '454 And '622 Patents ...........................................4

    C.    Aruba's Infringing Sale Of Wireless Communication Devices.....................4

NATURE AND STAGE OF THE PROCEEDINGS ............................................................5

    A.    Plaintiffs' Complaint.....................................................................................5

    B.    Aruba's Answer And Counterclaims .............................................................5

ARGUMENT .................................................................................................................7

I.    ARUBA'S EQUITABLE ESTOPPEL DEFENSE IS LEGALLY DEFICIENT
    BECAUSE SYMBOL MADE NO COMMUNICATIONS REGARDING
    THE '922 AND '923 PATENTS, WHICH ISSUED IN FEBRUARY 2007............7

    A.    Equitable Estoppel Requires, At Minimum,
        Some Communication From Plaintiff About The Patent...............................7

    B.    Symbol Said Nothing About The Unissued '922 And '923
        Patents, And That Silence Cannot Give Rise To Estoppel ............................8

II.    ARUBA'S LACHES DEFENSE FAILS BECAUSE ARUBA
    HAS NOT ALLEGED UNREASONABLE DELAY OR PREJUDICE .................10

    A.    Elements Of A Patent Laches Defense .........................................................10

    B.    Symbol's Timing Was Entirely Reasonable
        And Is Not Alleged To Have Prejudiced Aruba ...........................................11

    C.    Aruba's Pleading Is Devoid Of Any Facts
        Supporting An Inference Of Unreasonable Delay
        Or Prejudice From Wireless Valley's Conduct ...........................................12

III.    ARUBA'S UNENFORCEABILITY DEFENSE TO THE '622 PATENT
    FAILS BECAUSE INEQUITABLE CONDUCT CANNOT BE
    BASED ON A REFERENCE THAT THE EXAMINER CONSIDERED...............13

i

IV.    ARUBA'S SELF-SERVING, UNRESPONSIVE, AND IRRELEVANT
       "INTRODUCTION AND SUMMARY" SHOULD BE STRICKEN........................18

CONCLUSION..........................................................................................................................21

# Table Of Authorities

## Cases

**Pages**

*A.C. Auckerman Co. v. R.L. Chaides Construction Co.,*
   960 F.2d 1020 (Fed. Cir. 1992)...............................................................7, 10, 11

*Altech Controls Corp. v. EIL Instruments, Inc.*
   No. 00-1216, 2001 WL 487603 (Fed. Cir. May 2, 2001)...................................9, 12

*Burlington Indus., Inc. v. Dayco Corp.,*
   849 F.2d 1418 (Fed. Cir. 1988)........................................................................13

*Delaware Health Care, Inc. v. MCD Holding Co.,*
   893 F. Supp. 1279 (D. Del. 1995).....................................................................19

*Ferguson Beauregard/Logic Controls v. Mega Sys. LLC,*
   350 F.3d 1327 (Fed. Cir. 2003).........................................................................14

*Fiskars Inc. v. Hunt Manufacturing,*
   221 F.3d 1318 (Fed. Cir. 2000)...................................................................14, 15

*Hemstreet v. Computer Entry Systems,*
   972 F.2d 1290 (Fed. Cir. 1992).........................................................................11

*Hottel Corp. v. Seaman Corp.,*
   833 F.2d 1570 (Fed. Cir. 1987)...........................................................................8

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.,*
   863 F.2d 867 (Fed. Cir. 1988)...........................................................................14

*Litton Sys., Inc. v. Honeywell, Inc.,*
   87 F.3d 1559 (Fed. Cir. 1996)...........................................................................14

*Louisiana Sulphur Car. v. Gulf Resources and Chem. Corp.,*
   53 F.R.D. 458 (D. Del. 1971) .............................................................................7

*Meyers v. Asics Corp.,*
   974 F.2d 1304 (Fed. Cir. 1992).....................................................................8, 10

*Meyers v. Brooks Shoe Inc.,*
   912 F.2d 1459 (Fed. Cir. 1990)...............................................................8, 10, 12

*Molins PLC v. Textron, Inc.,*
   48 F.3d 1172 (Fed. Cir. 1995)...........................................................................15

*Multiform Desiccants, Inc. v. Medzam, Ltd.,*
    133 F.3d 1473 (Fed. Cir. 1998)...........................................................................13

*O/E Systems, Inc., v. Inacom Corp.,*
    179 F. Supp. 2d 363 (D. Del. 2002).....................................................................14

*Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.,*
    998 F.2d 1192 (3d Cir. 1993)...............................................................................14

*Scripps Clinic and Research Fund v. Genentech, Inc.,*
    927 F.2d 1565 (Fed. Cir. 1991)......................................................................14, 15

*Southwest Software, Inc. v. Harlequin, Inc.,*
    226 F.3d 1280 (Fed. Cir. 2000)...........................................................................12

*State Contracting & Engineering Corp. v. Condotte America, Inc.,*
    346 F.3d 1057 (Fed. Cir. 2003)...........................................................................10

*Talbot v. Robert Matthews Distrib. Co.,*
    961 F.2d 654 (7th Cir. 1992) ..............................................................................19

## Statutes, Rules, And Regulations

37 C.F.R. § 1.56(b) ...............................................................................................17

37 C.F.R. § 1.97(h) ..........................................................................................17, 18

Fed. Cir. Rule 47.6 (superseded) ...........................................................................9

Fed. Cir. Rule 32.1 ..................................................................................................9

Fed. R. App. P. 32.1 ................................................................................................9

Fed. R. Civ. P. 7(a) ...............................................................................................18

Fed. R. Civ. P. 8(b) ...............................................................................................18

Fed. R. Civ. P. 10 ..................................................................................................18

Fed. R. Civ. P. 12(b)(6)...........................................................................................1

Fed. R. Civ. P. 12(f) ...........................................................................1, 7, 18, 19

**Other Sources**

Manual of Patent Examining Procedure, Chapter 609, III C (2) (Rev. Aug. 2001) ..........15

Manual of Patent Examining Procedure, Chapter 2000,
        Section 2004 (Rev. Aug. 2001).......................................................................17, 18

51 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure
        § 1382 (2d ed. 1990) ....................................................................................... 19-20

Plaintiffs, Symbol Technologies, Inc. ("Symbol") and Wireless Valley Communications ("Wireless Valley"), submit this memorandum of law in support of their joint motion, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, to strike, as legally deficient and/or improper, defendant Aruba Networks, Inc.'s ("Defendant" or "Aruba"), purported affirmative defenses to Plaintiffs' infringement claims of equitable estoppel (Fifth Defense) and laches (Sixth Defense); one of its inequitable conduct defenses (Ninth Defense) and related counterclaim (Count 6); and its so-called Introduction and Summary, all set forth Aruba's October 17, 2007 Answer and Counterclaims. (D.I. 8.)

## SUMMARY OF ARGUMENT

In time, Symbol and Wireless Valley will establish that Aruba's products infringe the four patents being asserted ("Patents-in-Suit"); and, because the Patents-in-Suit were validly issued, Aruba will be unable to meet its burden of establishing invalidity. While those judgments must await another day, several of Aruba's defenses are inadequately pled as a matter of law, serve only to needlessly complicate this case, and, therefore, should be dismissed out of hand.

    1.     First, Aruba's claim that Symbol is equitably estopped from asserting two of the Patents-in-Suit that issued in February of this year, based on purported discussions in 2003 concerning a possible business combination, is nonsense. Aruba alleges that during 2003 Symbol did not raise potential claims of infringement of its then-unissued patents, which is hardly surprising given their status as mere pending applications. As a matter of law, Symbol's complete silence regarding the unissued patents cannot be the basis for an equitable estoppel claim.

    2.     Similarly, Aruba's laches defense, based on alleged unreasonable delay in bringing this case, also fails as a matter of law. As noted, Symbol's patents issued just this past

February, presenting, *at the outside, a narrow seven month potential laches period.* Not surprisingly, Aruba has not (and cannot) allege as required either (a) that this very short interval was an "unreasonable delay"; or (b) that Aruba prejudicially changed its position due to it.

3.    Turning to Wireless Valley, there is no allegations that it engaged in any business discussions with Wireless Valley that somehow led Aruba into a false sense of security. Wireless Valley's patents issued roughly nineteen months and four years, respectively, before this action was filed. Aruba alleges no basis from which a fact finder could infer that Wireless Valley unreasonably delayed bringing suit or that Aruba was harmed by a change in position resulting from any allege delay. As to both patents, therefore, Aruba falls short of the minimum pleading mark.

4.    Equally lacking is Aruba's inequitable conduct defense and counterclaim based on the flimsy notion that *the manner* in which Wireless Valley disclosed a reference to the Patent Office during the prosecution of its '622 Patent (as defined below) was intended to deceive the PTO. Even accepting Aruba's disingenuous portrayal of that disclosure as accurate (it demonstrably is not), as a matter of Federal Circuit law, inequitable conduct cannot be supported by a reference which an examiner reviewed.

5..    Finally, Aruba's gratuitous, self-serving, irrelevant, and factually inaccurate public-relations piece (veiled under the misnomer "Introduction and Summary") attacking Symbol's *bona fides* in brining this case – which Symbol vigorously repudiates – should be stricken. Such commentary does nothing to help frame the issues in this case. Rather, it was obviously made to assuage Aruba's shareholders and customers by suggesting that Plaintiffs, not Aruba, are somehow at fault for enforcing their Patent rights. Such a statement has no place in a federal court pleading, and should be stricken as improper, immaterial, and impertinent.

2

## STATEMENT OF FACTS

For purposes of this motion only, Plaintiffs accept as true the well-plead allegations in Aruba's Answer and Counterclaims, but otherwise deny them, as set forth in their joint Reply To Counterclaims, filed herewith.

### A.    Symbol And Its '922 And '923 Patents

Symbol is a Delaware corporation with its principal place of business in Holtsville, New York. (Answer and Counterclaims of Aruba Networks, Inc. ("Ans. and Counterclaims"), D.I. 8, a copy of which is Exhibit 1 to the December 10, 2007 Declaration of Lawrence Brocchini ("Brocchini Decl.")[1] ¶ 70.) Symbol, a wholly-owned subsidiary of Motorola since January 2007 (Complaint, D.I. 1, ¶ 3), is the owner by assignment of United States Patent No. 7,173,922, entitled "Multiple Wireless Local Area Networks Occupying Overlapping Physical Spaces" and No. 7,173,923, entitled "Security In Multiple Wireless Local Area Networks" (the "'922 Patent" and "'923 Patent," respectively; collectively "Symbol Patents"). (Copies of the '922 Patent and '923 Patents, respectively, are Exhibits C and D, respectively, to Plaintiffs' Complaint for Patent Infringement ("Complaint"), D.I. 1. A copy of the Complaint with exhibits is attached as Exhibit 2 to the Brocchini Decl.)

The Symbol Patents both issued on February 6, 2007, (*see* '922 and '923 Patents); the '923 Patent was subsequently the subject of a Certificate of Correction. Thereafter, on July 7, 2007, at Symbol's request, the U.S. Patent and Trademark Office ("PTO") issued a Certificate of Correction for the '922 Patent, correcting claim language incorrectly incorporated into the issued patent. (A copy of the '922 Patent Certificate of Correction is attached as Exhibit 3 to the

---

[1]  Exhibits referenced herein ("Exhibit ___"), refer to the Declaration of Lawrence Brocchini in Support of Joint Motion of Symbol Technologies, Inc. and Wireless Valley Communications, Inc. (1) to Strike the Fifth, Sixth, and Ninth Defenses and Introduction; and (2) Dismiss, in Part, Count Six of Aruba's Counterclaims, filed contemporaneously herewith.

Brocchini Decl.) Both of the Symbol Patents relate generally to wireless communications, including through Wireless Local Area Networks ("WLANs"), between mobile units and access ports (sometimes called base stations or RF Ports) using a wireless protocol and what the Symbol Patents call cell controllers (sometimes called switches) that are common to a plurality of access ports. (*See, e.g.*, '922 Patent, Claim 1; '923 Patent, Claim 1.)

**B.    Wireless Valley And Its '454 and '622 Patents**

Wireless Valley is a Delaware corporation with its principal place of business in Austin, Texas.   Wireless Valley is the owner by assignment of United States Letters Patent Nos. 6,625,454 (the "'454 Patent"), entitled "Method and System for Designing or Deploying a Communications Network Which Considers Frequency Dependent Effects" and 6,973,622 ("'622 Patent"), entitled "System and Method for Design, Tracking, Measurement, Prediction and Optimization of Data Communications Networks" (collectively, the "WV Patents").   (The '454 Patent and '622 Patent, respectively, are Exhibits A and B, respectively, to the Complaint.) The '454 Patent issued on September 23, 2003, and the '622 Patent issued on December 6, 2005. (Ans. and Counterclaim ¶¶ 10, 11; *see also*, '454 Patent and '622 Patent.)  The Wireless Valley Patents pertain generally to methods and systems for designing, planning, configuring, monitoring, managing and optimizing wireless communications networks. (*See, e.g.*, '454 Patent, Claim 1 ("A method for designing or deploying a communications network. . . ."); '622 Patent, Claim 1 ("A method for analyzing and adjusting a wireless communication network. . . .").)

**C.    Aruba's Infringing Sale Of Wireless Communication Devices**

Founded, according to its Answer and Counterclaims, in 2002, Aruba is a Delaware corporation, with its principal place of business in Sunnyvale, California. (Ans. and Counterclaims ¶ 69.) Aruba designs, manufactures and sells in the United States wireless switches (which it calls mobility controllers), access points, management servers, and related

4

software for use in connection with Wireless Local Area Networks, as well as software for designing, planning, configuring, monitoring, managing, and optimizing WLANs. (Complaint ¶ 3.)

## NATURE AND STAGE OF THE PROCEEDINGS

### A.    Plaintiffs' Complaint

Plaintiffs commenced this action on August 27, 2007 by filing their Complaint against Aruba. (D.I. 1.) Symbol contends that Aruba infringes Symbol's '922 and '923 Patents through its manufacture, use, sale, and/or offers for sale of certain of Aruba's wireless mobility controllers, access points and related equipment. (Complaint, Counts 3 and 4.) Wireless Valley asserts that Aruba infringes the '454 and '622 Patents in connection with the manufacture, use, sale, and/or offers for sale of certain systems and components, including computer software, for the design, planning, configuring, monitoring, managing, and optimizing of WLANs. (Complaint, Counts 1 and 2.)

### B.    Aruba's Answer And Counterclaims

On or about October 17, 2007, Aruba served its Answer and Counterclaims. (D.I. 8.) Aruba led off that pleading with a two page statement, labeled "Introduction and Summary," that does not respond to any of Plaintiffs' averments, set forth any legal defenses to the Complaint, nor allege any counterclaims. Further, the section does not meet the requirements of the Federal Rules of Civil Procedure. Instead, the section makes statements that Symbol brought this action only because of Aruba's purported success in the marketplace. (Ans. and Counterclaims, Introduction and Summary.)

Aruba's Answer and Counterclaims also denied infringement, and purport to set forth affirmative defenses and declaratory judgment counterclaims, several of which are the subject of this motion. Among other defenses, Aruba contends that Symbol is equitably estopped from

5

asserting its '922 and '923 Patents (which issued only seven months before this action was

brought) because, during discussion of a possible business venture between Aruba and Symbol in

2003, Symbol allegedly was impressed with Aruba's technology, and did not mention the

possibility that Aruba might infringe the then-non-existent '922 and '923 Patents:

> Although the Symbol patent applications [which issued four years later as
> the '922 and '923 Patents] were no longer confidential, at no point during
> Symbol's efforts to convince Aruba did Symbol advise or suggest that if
> Aruba did not agree to a transaction, Symbol would later assert those
> pending patents against it. At no point during Symbol's efforts to
> convince Aruba did Symbol advise or suggest that Symbol had already
> invented the technology that Aruba had.

(Ans. and Counterclaims, Fifth Defense, ¶ 46.) In purported reliance of Symbol's silence

regarding its non-issued patents, Aruba alleges that it proceeded to invest tens of millions of

dollars in its products, believing that Symbol's silence was a signal that it would not enforce its

pending applications if they did ripen into patents. (*Id.*, ¶ 49.)

Aruba also asserts the defense of laches. Specifically, it contends that laches bars

recovery *under each of the four Patents-in-Suit* because one of those patents, the Wireless Valley

'454 Patent, issued in 2003, and Wireless Valley unreasonably delayed in suing on that patent, to

Aruba's prejudice. However, Aruba presents its unreasonable delay and prejudice claims as an

*ipse dixit*, never explaining how Wireless Valley unreasonably delayed or Aruba changed

position based on that delay, as required by well-settled law. (Ans. and Counterclaims, Sixth

Defense.)

Finally, Aruba asserts that Wireless Valley's '622 Patent is unenforceable on inequitable

conduct grounds because of the manner in which Wireless Valley disclosed a reference to the

PTO, a reference that the examiner did consider. (Ans. and Counterclaims, Ninth Defense;

Counterclaim, Count 6.)

While Plaintiffs are confident that Aruba cannot sustain any of its defenses to infringement, we turn now to discussion of why these three defenses are facially defective, and, along with Aruba's irrelevant "Introduction," should be stricken.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(f), a party may move the court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[D]efenses which would tend to significantly complicate the litigation are particularly vulnerable to a motion to strike." *Louisiana Sulphur Car. v. Gulf Resources and Chem. Corp.*, 53 F.R.D. 458, 460 (D. Del. 1971).

### I.

### ARUBA'S EQUITABLE ESTOPPEL DEFENSE IS LEGALLY DEFICIENT BECAUSE SYMBOL MADE NO COMMUNICATIONS REGARDING THE '922 AND '923 PATENTS, WHICH ISSUED IN FEBRUARY 2007

Aruba alleges in its Fifth Defense that Symbol is equitably estopped from asserting its '922 and '923 Patents because Aruba inferred from business discussions during 2003 between Aruba and Symbol that Symbol did not intend to assert any rights in its not yet issued patents against Aruba. Ans. and Counterclaims, Fifth Defense, ¶¶ 42-49. Accepting Plaintiff's allegations as true for purposes of this motion, Aruba nevertheless fails to allege a patent equitable estoppel defense.

### A.    Equitable Estoppel Requires, At Minimum, Some Communication From Plaintiff About The Patent

To plead equitable estoppel, the accused infringer must allege (1) that the plaintiff had made a misleading communication either through statements or conduct, or, where the plaintiff had a duty to speak, through silence; and (2) that the defendant relied upon this communication to his detriment. *See A.C. Auckerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020,

1041 (Fed. Cir. 1992) (*en banc*). In a patent infringement case, the patentee's misleading communication "must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer." *Id.* at 1042.

Silence alone can never be misleading. Silence can mislead only if accompanied by some other factor that gives rise to a "clear duty to speak." *Id.* at 1043. Most commonly, a duty to speak arises if the patentee *threatens vigorous enforcement* of its patent rights and then falls silent, lulling the infringer into a false sense of security. *See Meyers v. Asics Corp.*, 974 F.2d 1304, 1308-09 (Fed. Cir. 1992); *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1464 (Fed. Cir. 1990) (*overruled on other grounds*); *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1574 (Fed. Cir. 1987). The Federal Circuit has held that mere suggestions of infringement and/or discussions of licensing followed by silence, do not give rise to an equitable estoppel defense. *See Brooks Shoe*, 912 F.2d at 1464; *Asics*, 974 F.2d at 1308. And no Federal Circuit case (or any other we know of) that discusses a possible business combinations between two companies that do not involve suggestions of infringement or discussions of licenses, has found that to give rise to estoppel.

**B.     Symbol Said Nothing About The Unissued '922
And '923 Patents, And That Silence Cannot Give Rise To Estoppel**

Aruba alleges that it was misled into believing that Symbol would not assert its rights in the '922 and '923 patents when Symbol made an offer to acquire Aruba in 2003, inspected (and even complimented) its technology, and then said nothing concerning the '922 and '923 patents. Specifically, Aruba alleges that "at no point...did Symbol advise or suggest that if Aruba did not agree to a transaction, Symbol would later assert those pending patents against it." And, "[a]t no point...did Symbol advise or suggest that Symbol had already invented the technology that Aruba had." *See* Ans. and Counterclaim ¶ 46. Taking Aruba at its word, the only conclusion is

that Symbol was simply silent as to its then-unissued '922 and '923 Patents during negotiations of a possible business combination. And silence alone cannot form the basis of equitable estoppel.

Instructive on this point is *Altech Controls Corp. v. EIL Instruments, Inc.* No. 00-1216, 2001 WL 487603 (Fed. Cir. May 2, 2001),[2] in which the Federal Circuit reversed a grant of summary judgment dismissing an infringement claim, holding that the district court had abused its discretion in finding that that the plaintiff misled the defendant into believing it would not sue for infringement during a meeting to discuss a merger. 2001 WL 487603, at *2. The Federal Circuit reversed because, although plaintiff complained during the merger discussion of a third company copying its products, it made no reference to its patents or of potential litigation between those two parties. *Id.* Because that conversation said nothing about plaintiff's intent to enforce its patent rights against defendant, there was no basis on which to find estoppel. *Id.* Aruba's defense of equitable estoppel likewise falls flat on its face and must be struck because Symbol – by Aruba's own account – did not make any communication about Symbol's then-pending applications that issued as the '922 and '923 Patents. Thus, Aruba admits the very thing that makes their defense of equitable estoppel insufficient, *i.e.*, that Symbol said nothing at all about its pending applications. Indeed, Symbol's case is even stronger here than in *Altech*, as here there was not even an issued patent; and we are aware of no case where an estoppel arose with respect to patent applications which had not yet issued.

_____

[2] The *Altech* decision is an unpublished opinion which was not citable as precedent under former Federal Circuit Rule 47.6, which has been superseded by Federal Rule of Appellate Procedure 32.1 and Federal Circuit Rule 32.1.

## II.

### ARUBA'S LACHES DEFENSE FAILS BECAUSE ARUBA HAS NOT ALLEGED UNREASONABLE DELAY OR PREJUDICE

Ignoring the fact that this case involves two separate and distinct plaintiffs, each asserting two of its own separate patents, Aruba muddles together the plaintiffs and their patents to concoct an argument that recovery is barred under all the patents because of a purported unreasonable delay in bringing this action after the first of Wireless Valley's patents issued in 2003. It is not quite that simple, however; and when each aspect of the laches defense is properly and independently evaluated, it is clear that Aruba has failed to allege any laches defense.

### A.    Elements Of A Patent Laches Defense

A defendant asserting a laches defense to bar a claim of patent infringement has the burden to allege and demonstrate that (1) the plaintiff unreasonably delayed bringing suit for a time measured from the moment the plaintiff knew or should have known of its claim against the defendant; and (2) the delay operated to the prejudice or injury of the defendant. *See Auckerman*, 960 F.2d at 1028, 1032-33.

As to the first prong, the delay period cannot possibly begin to run until the patent issues. *Auckerman*, 960 F.2d at 1032; *Asics*, 974 F.2d at 1307; *Brooks Shoe*, 912 F.2d at 1462. In cases involving multiple patents, the period of delay for each patent is determined independently, and for each patent delay cannot possibly begin to happen until that patent has issued. *Asics*, 974 F.2d at 1307; *Brooks Shoe*, 912 F.2d at 1462.

To establish prejudice, the plaintiff must allege and show that the delay actually caused the defendant to materially change position to his detriment. "A nexus must be shown between patentee's delay in filing suit and the [prejudice]." *State Contracting & Engineering Corp. v.*

*Condotte America, Inc.*, 346 F.3d 1057, 1066 (Fed. Cir. 2003). "The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity." *Hemstreet v. Computer Entry Systems*, 972 F.2d 1290, 1294 (Fed. Cir. 1992). Under these principles, Aruba does not allege a laches defense.

**B.    Symbol's Timing Was Entirely Reasonable
And Is Not Alleged To Have Prejudiced Aruba**

As to Symbol and its '922 and '923 Patents, Aruba's laches claim can only be characterized as frivolous. The Symbol Patents issued on February 6, 2007, roughly seven months before this action was filed. Aruba does not even attempt to allege, nor could it, that (1) seven months is an unreasonable period or delay; (2) or that it was prejudiced by that short "delay."[3] It is hard to imagine how a seven month interval between patent issuance and suit could ever be an unreasonable delay or work a sufficient prejudice (and we are aware of absolutely no case so holding), and because Aruba fails to allege how it might be unreasonable or prejudicial, its laches defense against Symbol must be stricken.

In fact, it would be improper to characterize even the mere seven month period between February 6 and August 27, 2007 as a "delay" at all, as Symbol was awaiting the PTO's Certificate of Correction on the '922 Patent, which Symbol had requested to correctly reflect the claims allowed. *See* '922 Certificate of Correction. It is questionable whether Symbol could have even brought a lawsuit based on an uncorrected '922 Patent, containing what Symbol knew

---

[3] Instead, Aruba incorrectly contends that the period of laches began to run when Symbol could have become aware of Aruba's presence in the marketplace in May, 2003. This ignores the rule that the laches period cannot begin until the patent issues. *Auckerman*, 960 F.2d at 1032. Aruba also incorrectly assumes that the laches period began when the first of Symbol's and Wireless Valley's patents issued. Putting aside the fact that Symbol and Wireless Valley are distinct entities, that is not the rule. Even for related patents, the periods must be determined independently. *Id.* Thus for the '922 and '923 patents, the earliest conceivable time the laches period could begin was on February 6, 2007, the date on which the '922 and '923 patents issued.

to be claims different than those allowed; Symbol was certainly justified in awaiting the issuance

of the Certificate of Correction to ensure that this action was based on the allowed claims,[4] *cf.*

*Southwest Software, Inc. v. Harlequin, Inc.*, Nos., 226 F.3d 1280, (Fed. Cir. 2000) (ruling that

certificate of correction to add disclosure to satisfy best mode and enablement requirements

issued after action was brought, and so was not effective for purposes of the action). In any

event, promptly after that certificate issued in July 2007, this action was filed. If there was any

doubt (which there should not be) that Aruba failed to allege Symbol's unreasonable delay or

resulting prejudice to Aruba, this additional point – which Aruba ignores – lays it to rest.

**C.    Aruba's Pleading Is Devoid Of Any Facts Supporting An Inference Of Unreasonable Delay Or Prejudice From Wireless Valley's Conduct**

As to Wireless Valley, its '622 Patent issued on December 6, 2005 (roughly 19 months

before this action); and its '454 Patent issued on September 23, 2003 (approximately four years

prior to suit). Nowhere does Aruba allege any facts reflecting unreasonable delay by Wireless

Valley, or how Aruba materially changed its position as a direct result of Wireless Valley's

possible delay. Indeed, Wireless Valley (unlike Symbol, which even now is a separate and

distinct entity, but was not even affiliated with Wireless Valley until early in 2007) is not alleged

to have had any communications with Aruba or knowledge about its products prior to the time

the products were first on the market. There are simply no allegations of undue delay by

Wireless Valley resulting in prejudice to Aruba, and, therefore, its laches defense should be

stricken. *See Altech Controls Corp. v. EIL Instruments, Inc.* No. 00-1216, 2001 WL 487603

(Fed. Cir. May, May 2, 2001) (finding that district court abused its discretion in granting

---

[4] Since the '922 Patent and '923 Patents are related (with the '923 Patent being a continuation-in-part ("CIP") of the application which resulted in the '922 Patent, and both patents being CIPs of a March 17, 2000 application, *see* '922 Patent, at 1; '923 Patent at 1), to the extent that Symbol delayed filing suit on the '923 Patent, until it received the Certificate of Correction on the related '922 Patent, it was justified in so doing. *See Brooks Shoes*, 912 F.2d at 1462.

judgment on laches defense, as defendant failed to present evidence that four-year delay in

bringing suit was unreasonable and inexcusable; reversing judgment).

### III.

### ARUBA'S UNENFORCEABILITY DEFENSE TO THE '622 PATENT FAILS BECAUSE INEQUITABLE CONDUCT CANNOT BE BASED ON A REFERENCE THAT THE EXAMINER CONSIDERED

Aruba contends that Wireless Valley's '622 Patent is unenforceable because the applicant

purportedly "buried" a an allegedly highly material reference – U.S. Patent No. 6,505,045 (the

"'045 Patent") – in a long list of cited references, while expressly disclaiming that the '045

Patent was relevant.[5] Ans. and Counterclaim, Ninth Defense, ¶ 61; Counterclaim Count 6. That,

however, cannot be the basis for an inequitable conduct claim.

As the Federal Circuit has repeatedly recognized, unjustified accusations of inequitable

conduct are offensive and unprofessional, have become a "plague" on the patent system, and

should be condemned. *See Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed.

Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has

become an absolute plague.") This "plague" diverts the court's attention from genuine issues

and spawns unnecessary satellite litigation. *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133

F.3d 1473, 1482 (Fed. Cir. 1998). As described more fully below, Aruba's inequitable conduct

claim regarding the '622 Patent is the type of unjustified accusation that the Federal Circuit

likely had in mind when it made this statement.[6]

---

[5] As required for purposes of this motion only, Plaintiffs accept Aruba's characterization of this reference as "highly material." *See* Ans. and Counterclaims ¶ 61.

[6] Aruba does not limit its unjustified charge of inequitable conduct to the '622 Patent, but also impugns the prosecution of Symbol's '922 Patent and '923 Patent, Ans. and Counterclaim, Seventh Defense and Count 3, and Wireless Valley's '454 Patent, *id.*, Eighth Defense and Count 6 (*i.e.*, all the asserted patents). Plaintiffs deny Aruba's unfounded indictment of those applications, which they are confident Aruba will be unable to substantiate when put to its proof.

A defendant alleging inequitable conduct must demonstrate by clear and convincing evidence that (1) the patent applicant withheld material information or submitted materially false or misleading information; and (2) the applicant acted with an intent to deceive. *See Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988). Intent must be pled with particularity. *Ferguson Beauregard/Logic Controls v. Mega Sys. LLC*, 350 F.3d 1327 (Fed. Cir. 2003).

Dispositively here, "[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, regardless whether or not it was a ground of rejection by the examiner." *Fiskars Inc. v. Hunt Manufacturing*, 221 F.3d 1318, 1327 (Fed. Cir. 2000). Even an applicant's total failure to cite a reference cannot support inequitable conduct *if* the examiner independently cited the same reference. *Litton Sys., Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1571 (Fed. Cir. 1996); *Scripps Clinic and Research Fund v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991).

In this case, even accepting (for purposes of this motion only) the inference Aruba strains to draw (*i.e.*, that Wireless Valley "buried" the '045 Patent during prosecution of the '622 Patent), the fact is that Wireless Valley *did* disclose the '045 Patent; the examiner read it and initialed the information disclosure statement ("IDS") submitted by Wireless Valley. *See* IDS for App. No. 09/668,145 (which issued as the '622 Patent),[7] a copy of which is attached to the Brocchini Decl. as Exhibit 4. Examiners are required to consider all citations in an IDS, and an examiner's initials, when placed adjacent to a reference, means that the examiner did actually

---

[7] Since Aruba incorporated the '622 Patent application by reference in its answer, it is fair game on this motion. *Cf. Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *O/E Systems, Inc., v. Inacom Corp.*, 179 F. Supp. 2d 363, 367, n.2 (D. Del. 2002).

consider it. Manual of Patent Examining Procedure ("MPEP"), Chapter 609, III C (2), at 600-131 (Rev. Aug. 2001), referenced excerpts of which are part of Brocchini Decl. Exhibit 5; *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995) (stating that it is presumed that examiners consider cited references (citations omitted)). Thus, under controlling precedent, the '045 Patent reference cannot support a claim for inequitable conduct. *See, e.g., Fiskars*, 221 F.3d at 1327.

Indeed, in a closely analogous case, the Federal Circuit expressly rejected a claim like Aruba's that an applicant's had acted in bad faith by "burying" a relevant reference in a long list of cited references, because there, as here, the examiner had reviewed the reference:

> The [PTO] examiner initialed each reference, indicating his consideration of the same, and stated that he had considered all of the cited prior art. Absent proof to the contrary, we assume that the examiner did consider the references. [internal citation omitted]. These circumstances therefore do not present clear and convincing evidence of intent on the part of Hirsh or Smith to conceal [the] Wagenseil [reference] from the PTO during the reexamination. Thus, the court's finding in this regard is clearly erroneous, and the determination that the method of disclosure constituted inequitable conduct cannot be sustained.

*Molins*, 48 F.3d at 1184. Likewise, in *Scripps*, the Federal Circuit rejected a claim, similar to that made by Aruba, that the applicant acted inequitably because it failed to specifically bring a particularly relevant reference to the examiner's attention; again, because the examiner saw the reference, it could not be a basis for inequitable conduct.

> [Defendant] argues that Scripps should nonetheless have brought the Meyer abstract to the examiner's specific attention, in addition to having listed the complete Meyer paper in Scripps' prior art statement. When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner.

*Scripps*, 927 F.2d at 1582-83 (affirming summary judgment of no intent to deceive).

Because Wireless Valley disclosed the '045 Patent during prosecution of the '622 Patent, and that disclosure was considered by the examiner, the manner of its disclosure cannot give rise to a claim of inequitable conduct under controlling Federal Circuit law. Therefore, Aruba's Ninth Defense should be stricken and Count 6 of its counterclaims relating to the '622 Patent should be dismissed.

The examiner's consideration of the disclosed '045 Patent reference precludes Aruba's inequitable conduct defense as a matter of law, and the Court need go no further. Nevertheless, we note the extreme irony that Aruba grounded its purported inequitable conduct defense on a highly misleading and disingenuous deconstruction of Wireless Valley's statements to the PTO. In particular, in arguing that Wireless Valley intended to deceive the PTO by "burying" the '045 Patent reference, Aruba misleadingly suggests that Wireless Valley singled out the '045 Patent and expressly disclaimed its relevance. (*See* Ans. and Counterclaim ¶ 61.) Not true. Instead, the language Aruba cites to make this charge is a general introductory statement in the IDS that is equally applicable to all the cited references, not the '045 reference specifically:

> This citations does not constitute an admission that the references are relevant or material to the claims. They are only cited as constituting related art of which the applicant is aware.

Wireless Valley IDS, Brocchini Decl. Ex. 4, at 1.

There is, of course, nothing nefarious about the quoted language, which generally acknowledges that the IDS might include information not material or relevant to the application. First, it is fully consistent with the MPEP's guidance that applicants be overinclusive and disclose references that they might not consider material. *See* MPEP Chapter 2000, Duty of Disclosure, Section 2004, (Rev. Aug. 2001), referenced excerpts of which are attached as part of Exhibit 5 to the Brocchini Decl., ¶ 10 at 2000-9 ("When in doubt, it is desirable and safest to submit information. Even though the attorney, agent, or applicant doesn't consider it necessarily

16

material, someone else may see it differently and embarrassing questions can be avoided.").[8]

Second, although Aruba's criticism of Wireless Valley's general "disclaimer" language does not

mention it, the PTO's rules governing the filing of IDSs, 37 C.F.R. § 1.97, expressly stipulate,

using language substantively equivalent to Wireless Valley's, that the filing of material in an IDS

is not an admission of materiality:

> (h) The filing of an information disclosure statement shall not be
> construed to be an admission that the information cited in the statement is,
> or is considered to be, material to patentability as defined in § 1.56(b).

37 C.F.R. § 1.97(h).

Given the PTO's directive, it should come as no surprise that language similar to

Wireless Valley's incorporating the PTO's view likely appears in thousands of IDSs; it is,

however, harder to understand how Aruba would so casually level serious fraud and inequitable

conduct charges against Wireless Valley for incorporating the PTO's pronouncement in its IDS,

while failing to acknowledge that *Aruba's own information disclosure statements include the*

*same caveat*:

> [t]he submission of this Information Disclosure Statement ... is not to be
> construed as an admission that the information cited in this statement is
> material to patentability.

---

[8]  Aruba ignores this guidance and erroneously suggests that Wireless Valley had some statutory obligation to include only a short list of references in its IDS. Ans. and Counterclaims ¶ 61. Not so.  While the MPEP's "Aids to Compliance With Duty of Disclosure" (MPEP Chapter 2000, Section 2004 (Rev. Aug. 2001), Brocchini Decl. Exhibit 5) does say it is "desirable" to avoid long lists, that suggestion applies only if long lists "can be avoided." *Id.*, ¶ 13 at 2000-10, cited by Aruba.  Further, that section contains only suggestions for compliance and is not mandatory. *See id.*, Introductory Paragraph.  In any event, the guidance of ¶ 13 must be read and understood in the context of the guidance under ¶ 10, that "[w]hen in doubt, it is *desirable and safest* to submit information," and err on the side of submitting even information the applicant might not consider "necessarily material," to ensure that all arguably material references are available to the examiner to assess independently their relevance. *Id.* ¶ 10 (emphasis added).  Following the practice that the PTO itself calls "desirable and [the] safest" can hardly be deceptive.  Better yet, when such practice is combined with the fact that the examiner did, in fact, consider the reference, there can be no issue of inequitable conduct.

(*See, e.g.*, June 29, 2005 Information Disclosure Statement Under C.F.R. § 1.97 in connection

with the Application of Pradeep J. Iyer, *et al.*, entitled "A System and Method for Monitoring

and Enforcing Policy Within a Wireless Network," (subsequently issued Application No.

11/171,913; not yet issued as a patent) assigned to Aruba, at 2, a copy of which is Brocchini Decl.

Exhibit 6.) Thus, Aruba's disclaimer expresses the same general concept as the Wireless Valley

IDS statement (and PTO Rule 1.97(h)) that a citation does not constitute an admission that the

references are relevant or material to the claims.  If Aruba contends that Wireless Valley's

reference to the PTO's guidance is fraudulent, it must concede that the similar language in its

IDS is similarly deceptive.  Obviously, Aruba will not go that far; nor should the Court.

**IV.**

**ARUBA'S SELF-SERVING, UNRESPONSIVE, AND IRRELEVANT "INTRODUCTION
AND SUMMARY" SHOULD BE STRICKEN**

The Federal Rules of Civil Procedure authorize certain pleadings (*e.g.*, a complaint,

answer, and reply to counterclaims; Rule 7(a)); require a party to admit or deny allegations

against it, and set forth its defenses (Rule 8(b)); and to make all such averments of claims or

defenses in numbered paragraphs (Rule 10).  Those rules are not intended to give litigants a

forum to spew irrelevant, inaccurate, and impertinent speculation or commentary. *See* Fed. R.

Civ. P. 12(f) (authorizing a court to strike any "redundant, immaterial, impertinent, or scandalous

matter).[9]

---

[9]  One Court in this district has described the various Rule 12(f) grounds as follows:

> "Immaterial matter is that which as no essential or important relationship
> to the claim for relief or the defenses being pleaded."  51 Charles A.
> Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-
> 07 (2d ed. 1990).  "Impertinent matter consists of statements that do not
> pertain, and are not necessary, to the issues in question." *Id.* at 711.
> Scandalous allegations may be stricken if the matter alleged "bears no
> possible relation to the controversy or may cause the objecting party

The "Introduction and Summary" that Aruba improperly included in its Answer and Counterclaims should be stricken under Rule 12(f). It is not responsive to Plaintiffs' Complaint and serves no legitimate pleading purpose. Rather, it is apparently intended to deflect attention from Aruba's alleged infringing activities and potentially prejudice Plaintiffs' infringement case by impugning their motives for seeking to rightfully and lawfully enforce their patents. *See Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995) (striking as irrelevant under Rule 12(f) an allegation in an antitrust case seeking an examination of defendants' tax exempt status, which was unrelated to any issues in the action). For example, Aruba opens its Answer and Counterclaim by suggesting a David and Goliath scenario in which Plaintiffs, as part of "global behemoth Motorola, Inc.," are bringing this lawsuit to improperly get a jury to "overturn the verdict of the market":

> Sometimes, when companies are losing in the marketplace, they sue – hoping that they can persuade jurors to overrule the verdict of the market. This lawsuit, filed by [Symbol and Wireless Valley] (both wholly-owned subsidiaries of global behemoth Motorola, Inc.), is that type of case.

(Ans. and Counterclaims, Introduction, at 1; *see also id.* at 2.) Aruba also boasts about recognition the products it sells has received (*id.* at 2), and about increases in market share for those product (*id.*) (which, even if true, say little about Aruba, since Symbol and Wireless Valley contend that Aruba's product use Plaintiffs' patented technologies). While Plaintiffs wholly reject Aruba's fanciful account suggesting that Plaintiffs are somehow acting improperly in enforcing their patent rights, because it is completely beside the point legally and potentially prejudicial to Plaintiffs, it should be stricken.

---

prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992).

*Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1291-92 (D. Del. 1995).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to strike Aruba's equitable estoppel and laches defenses; its defense and counterclaim for inequitable conduct on the '622 Patent; and its "Introduction and Summary" should be granted.

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Dated: December 10, 2007

836501 / 32106

By: */s/ David E. Moore*
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       P. O. Box 951
       Wilmington, Delaware 19801
       Tel: (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

*Attorneys for Plaintiffs*
*Symbol Technologies, Inc. and Wireless Valley*
*Communications, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## **CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on December 10, 2007, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on December 10, 2007, I have Electronically Mailed the document to

the following person(s):

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899
cottrell@rlf.com

Matthew D. Powers
Vernon M. Winters
Brandon C. Conard
Jason D. Kipnis
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
matthew.powers@weil.com
vernon.winters@weil.com
brandon.conard@weil.com
jason.kipnis@weil.com

Paul E. Torchia
Etai Lahav
Nicholas Groombridge
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
paul.torchia@weil.com
etai.lahav@weil.com
nicholas.groombridge@weil.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

816924 / 32106