IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SYMBOL TECHNOLOGIES, INC., a    )
Delaware Corporation, and WIRELESS    )
VALLEY COMMUNICATIONS, INC.,    )
a Delaware Corporation,    )
 )
      Plaintiffs and    )
      Counter-Defendants,    )
 )
    v.    )   C. A. No. 07-519-JJF
 )
ARUBA NETWORKS, INC., a    )
Delaware corporation,    )
 )
      Defendant and    )
      Counter-Claimant.    )

**ARUBA NETWORKS, INC.'S OPPOSITION BRIEF TO MOTION TO
(1) STRIKE THE FIFTH, SIXTH, AND NINTH DEFENSES AND INTRODUCTION;
AND (2) DISMISS IN PART, COUNT SIX OF ARUBA'S COUNTERCLAIMS**

Of Counsel:

MATTHEW D. POWERS
BRANDON D. CONARD
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802.3000

NICHOLAS GROOMBRIDGE
PAUL E. TORCHIA
ETAI LAHAV
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310.8000

Dated: January 7, 2008

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 658-6541

*Attorneys for Defendant and Counter-Claimant
ARUBA NETWORKS, INC.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.   INTRODUCTION ................................................................................................ 1

II.  SUMMARY OF ARGUMENTS ......................................................................... 2

III. STATEMENT OF FACTS ................................................................................. 3

IV.  STAGE OF PROCEEDINGS ............................................................................ 3

V.   LEGAL STANDARDS ....................................................................................... 4

VI.  DISCUSSION ..................................................................................................... 4

    A.   ARUBA PROPERLY PLED LACHES .................................................. 4

        1.   Factual Support For Laches Not Required In Answer ................... 5

        2.   Prosecution Laches Applies To '922 And '923 Patents ................. 6

    B.   EQUITABLE ESTOPPEL IS PROPERLY BASED ON SYMBOL'S
        MANIPULATION OF DISCUSSIONS WITH ARUBA .......................... 6

        1.   Prior Communication About The Patents-In-Suit Is Not A
            Prerequisite To Estoppel ................................................................ 7

        2.   Symbol Mislead Aruba Through Silence, Inaction, And
            Misrepresentation ........................................................................... 9

    C.   INEQUITABLE CONDUCT INCLUDES DECEPTIVELY "BURYING"
        A MATERIAL REFERENCE IN A VOLUMINOUS SUBMISSION TO
        THE PTO .................................................................................................. 10

        1.   Burying A Reference With Intent To Deceive Can Be Inequitable
            Conduct ......................................................................................... 10

    D.   ARUBA'S "INTRODUCTION AND SUMMARY" IS MATERIAL TO
        ITS ANSWER .......................................................................................... 11

        1.   "Introduction and Summary" Describes The History Of The
            Relationship Underpinning Aruba Defenses .................................. 11

        2.   Symbol Is Not Prejudiced By The "Introduction And Summary" ......... 12

VII. CONCLUSION ...........................................................................................................13

ii

# TABLE OF AUTHORITIES

## CASES

*ABB Robotics, Inc. v. GMF Robotics Corp.,*
52 F.3d 1062 (Fed. Cir. 1995).................................................................................7, 9

*A.C. Aukerman v. R.L. Chaides Constr. Co.,*
960 F.2d 1020 (Fed. Cir. 1992)..........................................................................5, 6, 7, 9

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,*
988 F.2d 1157 (Fed. Cir. Mar. 9, 1998).....................................................................5

*Altech Controls Corp. v. EIL Instruments, Inc.,*
2001 WL 487603 (Fed. Cir. May 2, 2001) ...............................................................8

*Bradford Co. v. AFCO Mgfr.,*
2006 WL 143343 (S.D. Oh. Jan. 19, 2006) .............................................................5, 6

*Daulo v. Commonwealth Edison,*
892 F. Supp. 1088 (N.D. Ill. 1995) .........................................................................12

*Fiskars, Inc. v. Hunt Mfgr. Co.,*
221 F.3d 1318 (Fed. Cir. 2000)...............................................................................11

*Greiff v. T.I.C. Enter., L.L.C.,*
2004 WL 115553 (D. Del. Jan. 9, 2004)..................................................................6

*Hynix Semiconductor, Inc. v. Rambus, Inc.,*
2006 WL 1867724 (N.D. Cal. July 6, 2006)...........................................................7, 8

*Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc.,*
791 F.2d 1227 (5th Cir. 1986) ................................................................................5

*McKesson Info. Solutions, LLC v. Trizetto Group, Inc.,*
2005 WL 914776 (D. Del. 2005)..............................................................................4

*Molins PLC v. Textron, Inc.,*
48 F.3d 1172 (Fed. Cir. 1995)...........................................................................10, 11

*Plaum v. Jefferson Pilot Fin. Ins. Co.,*
No. 04-4597, 2004 U.S. Dist. LEXIS 28968 (E.D. Pa. Dec. 22, 2004) ...............13

*Poole v. Taylor,*
466 F. Supp. 2d 578 (D. Del. 2006) ........................................................................13

iii

*Proctor & Gamble Co. v. Nabisco Brands, Inc.*,
697 F. Supp. 1360 (D. Del. 1988).............................................................................4

*Puma v. Mariott*,
294 F. Supp. 1116 (D. Del. 1969)...........................................................................12

*Salcer v. Envicon Equities, Corp.*,
744 F.2d 935 (2d Cir. 1984).....................................................................................4

*Scholle Corp. v. Blackhawk Molding Co.*,
133 F.3d 1469 (Fed. Cir. 1998).................................................................................9

*Schwarzkopf Techs. Corp. v. Ingersoll Cutting Tool Co.*,
820 F. Supp. 150 (D. Del. 1992).............................................................................12

*Symbol Techs., Inc. v. Lemelson Med.*,
277 F.3d 1361 (Fed. Cir. 2002).......................................................................2, 5, 6

*Tin Pan Apple, Inc. v. Miller Brewing Co.*,
737 F. Supp. 826 (S.D.N.Y. 1990) .........................................................................12

## FEDERAL STATUTES

Fed. R. Civ. P. 12(f).................................................................................................11

iv

Defendant and Counterclaimant Aruba Networks, Inc. ("Aruba") respectfully submits this opposition to Symbol Technologies, Inc.'s and Wireless Valley Communications, Inc.'s Motion To (1) Strike The Fifth, Sixth, And Ninth Defenses And Introduction; And (2) Dismiss In Part, Count Six Of Aruba's Counterclaims.

## I.

## INTRODUCTION

Symbol Technologies and Wireless Valley Communications (collectively "Symbol") move to strike three equitable defenses and supporting factual allegations from Aruba's Answer. Symbol's burden in making this motion is very high: under the standards of Rule 12(f), if there is any possible set of facts that would allow these defenses to succeed, the motion must be denied. Contrary to Symbol's assertions, the relevant facts clearly show that Aruba's equitable defenses may succeed. Years before it commenced this lawsuit, Symbol entered into confidential negotiations with Aruba in which it learned about Aruba's technology. At no time in those negotiations did Symbol assert that it, rather than Aruba, was the true inventor of the technology – instead it waited until Aruba had invested in bringing the technology to market and only then made that claim when it filed this lawsuit. Under these circumstances, Symbol's decision to lie in wait is exactly the type of conduct that gives rise to the defenses of laches and equitable estoppel.

On the third defense, inequitable conduct, Symbol mischaracterizes the law. In its pleading, Aruba avers that Symbol intentionally obscured the significance of a key prior art reference by submitting it to the U.S. Patent and Trademark Office with more than 150 other less relevant references. Symbol asserts that regardless of its intent, such conduct is not inequitable because the reference was disclosed. However, the law is otherwise: if Aruba can prove that Symbol's representatives acted with deceptive intent, it can and will prevail on this defense.

In short, Symbol's motion should be denied and discovery should be permitted to proceed on the factual matters on which Aruba's defenses are based.

## II.

## SUMMARY OF ARGUMENTS

Symbol moves to strike four parts of Aruba's Answer, notwithstanding that each is properly pled, cognizable under the case law, and will be established by the facts once discovery is allowed.

(1) Symbol argues laches cannot apply because it filed this action within several months of the issuance of two of its patents, and according to Symbol, this period is insufficient to constitute laches. Symbol ignores the fact that the other two patents it has asserted issued years before this lawsuit was filed. Moreover, even the two more recently issued patents were under examination for approximately six years, rendering them subject to a prosecution laches defense. Indeed, Symbol itself successfully asserted this defense in the seminal case on prosecution laches, *Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1362 (Fed. Cir. 2002).

(2) Symbol argues Aruba's equitable estoppel defense cannot succeed because Aruba allegedly admitted Symbol never disclosed the patents-in-suit to Aruba before filing suit, which Symbol urges is a legal prerequisite to the defense. First, Aruba made no such admission. More importantly, the case law is clear, when the relationship or history between the parties creates a duty to disclose the patents, failure to do so gives rise to equitable estoppel.

(3) Symbol contends it could not commit inequitable conduct in prosecuting the '622 patent by intentionally "burying" a material reference because the reference was disclosed to the U.S. Patent and Trademark Office ("PTO"). However, case law shows obscuring the significance of a reference, for example by submitting it with a large number of immaterial references, can be inequitable conduct if there is proof that it was done with deceptive intent.

(4) Symbol demands Aruba's "Introduction And Summary" be stricken as immaterial. Yet, this section lays out factual allegations directly related to and in support of Aruba's equitable defenses. In addition, these averments frame for the Court the background for many of the positions Aruba will take on damages, willfulness, non-infringement, and invalidity. As such, Symbol's motion should be denied.

2

## III.

## STATEMENT OF FACTS

Aruba Networks, Inc. was founded in 2002. Aruba's entrance into the enterprise wireless LAN market with its innovative enterprise mobility solutions was met with widespread acclaim. It triggered immediate interest from Symbol. Recognizing the superiority of Aruba's technologies, Symbol tried to access them by buying Aruba. In early 2003, during discussions initiated by Symbol, Aruba gave Symbol essentially unfettered access to Aruba's products. As a result, Symbol learned how Aruba's products were designed, built, tested and made. Despite Symbol's great interest in acquiring Aruba, the parties were ultimately unable to come to an agreement.

Four years later, Aruba's share of the enterprise wireless LAN market has grown from zero to more than 10%. Symbol, on the other hand, has seen its market share decline. As a result, Symbol, along with its fellow Motorola subsidiary Wireless Valley, chose to sue Aruba for patent infringement.

## IV.

## STAGE OF PROCEEDINGS

This case is still at the pleadings stage. On August 27, 2007, two Motorola subsidiaries - Symbol Technologies, Inc. and Wireless Valley Communications, Inc. – filed this suit alleging Aruba infringes four patents – U.S. Patent No. 7,173,922 ("'922 patent"), No. 7,173,923 ("'923 patent"), No. 6,625,454 ("'454 patent"), and No. 6,973,622 ("'622 patent"). In response, on October 17, 2007, Aruba filed an Answer and Counterclaims denying the allegations and seeking a declaration that the patents in suit are invalid, unenforceable, and not infringed. In reaction to Aruba's Answer, Symbol filed both an answer to Aruba's counterclaims and the present motion to strike. No Rule 16 conference has been scheduled, nor has any discovery been taken yet.

## V.

## LEGAL STANDARDS

Symbol moves to strike Aruba's affirmative defenses and portions of its Answer pursuant to Federal Rule of Civil Procedure 12(f). Motions to strike affirmative defenses, are generally disfavored. *See Proctor & Gamble Co. v. Nabisco Brands, Inc.,* 697 F. Supp. 1360, 1362 (D. Del. 1988). When ruling on such a motion, "the court must construe all facts in favor of the nonmoving party . . . and deny the motion if the defense is sufficient under the law." *Id.* "Furthermore, courts prefer not to grant a motion to strike 'unless it appears to a certainty that . . . [the movant] would succeed despite any state of the facts, which could be proved in support of the defense.'" *Salcer v. Envicon Equities, Corp.,* 744 F.2d 935, 939 (2d Cir. 1984); *see also McKesson Info. Solutions, LLC v. Trizetto Group, Inc.,* 2005 WL 914776, at *1 (D. Del. Apr. 20, 2005). "In complex litigation, such as cases involving patent infringement, it is through the discovery process that the parties refine and focus their claims. At [the pleadings] stage in the litigation, the court declines to strike defendant's affirmative defenses until adequate discovery has been completed." *McKesson,* 2005 WL 914776, at *2.

## VI.

## DISCUSSION

### A.   ARUBA PROPERLY PLED LACHES

Symbol raises two objections to Aruba's laches defense. Both must be rejected. First, Symbol contends Aruba failed to plead facts showing laches should apply. But under Rule 8 no such particularity is required. Second, Symbol argues the '922 and '923 patents issued too recently for laches to apply. Yet, under the doctrine of prosecution laches the relevant period of delay is the time Symbol took prosecuting the patent not in filing suit. As such, Symbol's motion to strike Aruba's laches defense is without merit.

The longstanding defense of laches is based upon the unreasonable delay in a plaintiff's assertion of rights causing material prejudice to the defendant. In the patent context, in addition to the traditional basis for the defense, laches can also be found where the patent

applicant unreasonably delayed in prosecuting underlying patent application before the PTO –
*i.e.*, prosecution laches. Traditional laches requires (1) unreasonable and unexcusable delay by
the patentee in filing suit; and (2) material prejudice to the alleged infringer attributable to the
delay. *A.C. Aukerman v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (*en
banc*). Prosecution laches "may be applied to bar enforcement of patent claims that issued after
an unreasonable and unexplained delay in prosecution even though the applicant complied with
pertinent statutes and rules." *Symbol Techs.*, 277 F.3d at 1362. Aruba alleges both forms of
laches apply here, and thus pled the defense generally.

### 1.    Factual Support For Laches Not Required In Answer

Symbol argues the laches defense should also be stricken because Aruba failed to
plead "facts reflecting" how the delay was unreasonable or how Aruba was prejudiced. [Mot. at
12.] However, Rule 8 says Aruba need not plead these facts in its answer. "The general rule is
that an affirmative defense may be pled in general terms and will survive a motion to strike as
long as it gives the plaintiff fair notice of the nature of the defense." *Bradford Co. v. AFCO
Mgfr.*, 2006 WL 143343, at *4 (S.D. Oh. Jan. 19, 2006) (citing 5 C. Wright & Miller, supra, §
1274 at 616-17); *see also Marine Overseas Servs., Inc. v. Crossocean Shipping Co., Inc.*, 791
F.2d 1227 (5th Cir. 1986) ("The pleading of affirmative defenses is governed by the same liberal
standards as those for a complaint."). Only defenses subject to Rule 9(b) must be plead with
particularity. The equitable defenses of laches and estoppel, specifically listed in Rule 8(c), do
not fall within ambit of Rule 9(b). *Bradford Co.*, 2006 WL 143343, at *4 (laches and estoppel
adequately pled). The Federal Circuit echoed this point when considering a laches argument in
the context of a Rule 12(b)(6) motion:

> [T]he defense of laches usually requires factual development
> beyond the content of the complaint. The facts evidencing
> unreasonableness of the delay, lack of excuse, and material
> prejudice to the defendant, are seldom set forth in the complaint,
> and at this stage of the proceedings can not be decided against the
> complainant based solely on presumptions.

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,* 988 F.2d 1157, 1161 (Fed. Cir. Mar. 9, 1993).

Under this standard, Aruba provided exactly what was required — a "short and plain statement" giving Symbol fair notice of the defense it intends to assert. *Greiff v. T.I.C. Enter., L.L.C.,* 2004 WL 115553 at *1-2 (D. Del. Jan. 9, 2004). "The particulars of each defense can be sorted out in discovery." *Bradford Co.,* 2006 WL 143343 at *4.

### 2.    Prosecution Laches Applies To '922 And '923 Patents

Symbol argues that as a matter of law the defense of laches could not apply to the '922 and '923 patents because they issued seven months before Symbol filed suit. However, that is not the law. First, there is no set minimum period of delay for laches to apply. According to the Federal Circuit, "[t]he length of time which may be deemed unreasonable [for laches] has no fixed boundaries but rather depends on the circumstances." *A.C. Aukerman,* 960 F.2d at 1032. Moreover, laches does not look only to the delay between the issuance of a patent and the filing of suit. The doctrine of prosecution laches looks also to the delay in prosecuting the patent. *Symbol,* 277 F.3d at 1362. Under this doctrine, Symbol's seven month delay between the issuance of the patents and filing suit does not control the analysis. Instead, many factors must be evaluated, including the date the patent was filed, when it issued, and how the patentee pursued the prosecution. In light of this complex analysis, it cannot be said that no set of facts could support a laches defense against the '922 or '923 patents. As such, Symbol's attack on Aruba's laches defense should be denied.

### B.    EQUITABLE ESTOPPEL IS PROPERLY BASED ON SYMBOL'S MANIPULATION OF DISCUSSIONS WITH ARUBA

Symbol seeks to strike Aruba's equitable estoppel defense because, in its view, Aruba admitted Symbol said nothing about its '922 or '923 patents to Aruba prior to this suit. According to Symbol, this type of silence can never be the type of misleading conduct giving rise to equitable estoppel. This position is flatly contradicted by the case law. Aruba alleges Symbol mislead it in more ways than simply remaining silent. When the Answer is read

6

properly, it is clear Symbol engaged in a myriad of misleading conduct that the Federal Circuit has found warrants equitable estoppel.[1]

Equitable estoppel focuses on the patentee's conduct and if applied bars the patentee's claims.[2] *A.C. Auckerman*, 960 F.2d at 1041. "The purpose behind equitable estoppel is to protect a party from a claim of infringement by a patentee who had earlier communicated to that party that it would not disturb the party in the activities in which it was then engaged." *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2006 WL 1867724 at *3 (N.D. Cal. July 6, 2006). As an equitable defense, the doctrine is meant to be applied flexibly. The Federal Circuit has explained: "equitable estoppel is not limited to a particular factual situation nor subject to hard and fast rules." *A.C. Aukerman*, 960 F.2d at 1041. Despite this, Symbol asks the Court to adopt a categorical rule before Aruba has a chance to present the facts. Such a tactic must fail.

### 1.    Prior Communication About The Patents-In-Suit Is Not A Prerequisite To Estoppel

Symbol's central argument is: "[Aruba's defense of equitable estoppel] must be struck because Symbol — by Aruba's own account — did not make any communication about Symbol's then pending applications that issued as" the patents-in-suit. [Mot. at 9] As a threshold matter, Aruba made no such admission.[3] Yet, even if it had, Symbol's argument that a

---

[1] Under Rule 8, to plead equitable estoppel Aruba need only comply with the minimal burdens of the notice pleading standard. Although Aruba provided somewhat more factual context than the bare minimum required, it certainly did not endeavor to plead all facts supporting its defense with particularity. Nevertheless, even the broad factual allegations contained in Aruba's Answer show Symbol's behavior meets the Federal Circuit's definition for several forms of misleading conduct.

[2] The defense of equitable estoppel has three elements: (1) misleading conduct by the patentee causes the accused infringer infer that the patentee does not intend to enforce the patents-in-suit; (2) the accused infringer relies on the patentee's conduct; and (3) due to its reliance, the accused infringer will be materially prejudiced if patentee is allowed to proceed with its infringement suit. *ABB Robotics, Inc. v. GMF Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995). Symbol's challenge focuses solely on the first element — misleading conduct.

[3] Aruba's Answer made two specific statements, which in no way equate to the broader admission Symbol now reads into it. The Answer says Symbol never mentioned that (1) it intended to enforce the then-pending patents-in-suit, and (2) it invented the technology it now

7

categorical rule bars the defense was squarely rejected in *Hynix v. Rambus*. There, Rambus
argued Hynix was barred, as a matter of law, from asserting equitable estoppel because Hynix
failed to plead it was warned about Rambus' patents until the suit began. *Hynix*, 2006 WL
1867724 at *2. In response, Hynix argued "equitable estoppel does not necessarily require the
alleged infringer to know of the patent." *Id.* The court agreed with Hynix, explaining:

> An absolute requirement that an infringer have knowledge of the
> patent and patentee regardless of the underlying factual situation
> would in some cases defeat the purpose of the protection provided
> by equitable estoppel. For example, a patentee who misleadingly
> suggests it has no patent which covers a party's current activities
> should not be treated any differently than a patentee who
> misleadingly suggests that it will not enforce a patent against a
> party's activities.

*Id.* at *3. Aruba's allegations include exactly the scenario described in the court's example
above. Therefore, Symbol is wrong. Even if Symbol never mentioned the patents-in-suit to
Aruba, equitable estoppel can still apply if the totality of the facts supports the inference that
Symbol did not intend to press its infringement claims against Aruba. *Id.*

       The case cited by Symbol is not to the contrary. In *Altech Controls Corp. v. EIL
Instruments, Inc.*, 2001 WL 487603 (Fed. Cir. May 2, 2001), the court reversed a grant of
summary judgment in favor of equitable estoppel, finding a dispute of fact as to whether the
communication at issue actually mislead the defendant. However, this decision was limited to its
specific facts. *Id.* at *6. The case did not adopt any categorical rules about what could or could
not be misleading conduct. Rather it shows equitable estoppel depends heavily on the
communications at issue and the beliefs of the party being misled. Until the full scope of these
facts are presented, it would be wrong to assume the defense will fail.

---

accuses of infringement. Under Rule 8, Aruba had no obligation to set forth all possible facts in
its pleading, and thus did not attempt to. At this point, it would be wrong to imply any
admissions into the Answer beyond what is expressly pleaded.

### 2.    Symbol Mislead Aruba Through Silence, Inaction, And Misrepresentation

Symbol casts Aruba's allegations as narrowly asserting Symbol's only misleading conduct was its silence. Symbol then argues vigorously that "silence alone cannot form the basis of equitable estoppel." [Mot. at 9.]    Aruba's allegations are not so limited.    Aruba alleges Symbol's silence, inaction, and misrepresentations taken together mislead Aruba.

According to the Federal Circuit, misleading conduct for equitable estoppel "may include specific statements, action, inaction, or silence where there was an obligation to speak." *ABB Robotics,* 52 F.3d at 1064.    Silence can be the misleading action, "if such silence is accompanied by some other factor indicating that the silence was sufficiently misleading to amount to bad faith."    *Id.*    Similarly, "inaction, 'combined with other facts respecting the relationship or contacts between the parties" may amount to misleading inaction.    *Id.*    Each of these is present here.

The "Introduction And Summary" in the Answer explains that Aruba has a complex and protracted history with Symbol.    It entered into lengthy merger negotiations, preceded by confidentiality agreements.  During these negotiations, the parties exchanged confidential communications about the accused technology, intellectual property, business assets, and future business relationships.  When viewed against this backdrop, it is easy to envision a set of facts whereby Symbol had a duty to disclose information about its pending patent applications, thereby making its silence or inaction misleading.  *See ABB Robotics,* 52 F.3d at 1064; *see also Scholle Corp. v. Blackhawk Molding Co.,* 133 F.3d 1469, (Fed. Cir. 1998) (inaction in light of course of dealing gave rise to equitable estoppel).    These circumstances certainly lay the foundation for a viable equitable estoppel defense, particularly in light of the flexibility with which the equitable defense is meant to be applied.    *A.C. Aukerman*, 960 F.2d at 1041.

C. **INEQUITABLE CONDUCT INCLUDES DECEPTIVELY "BURYING" A MATERIAL REFERENCE IN A VOLUMINOUS SUBMISSION TO THE PTO**

Wireless Valley moves to strike Aruba's inequitable conduct defense and counterclaim against the '622 patent. The '622 is assigned to Wireless Valley. Aruba alleges Wireless Valley committed inequitable conduct by "burying" a highly material reference in the middle of 156 other references so that the patent examiner would not actually review it. Wireless Valley argues that even if it buried the reference with an intent to deceive the examiner, it cannot be inequitable conduct because the reference was technically cited to the examiner. [Mot. at 14.] Wireless Valley is wrong. The Federal Circuit declared "'burying' a particular material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995).

1. **Burying A Reference With Intent To Deceive Can Be Inequitable Conduct**

Wireless Valley contends that in *Molins* the Federal Circuit rejected the view that obscuring the significance of a reference by submitting it with numerous other items could consitute inequitable conduct. [Mot. at 15.] That assertion is clearly wrong. In *Molins*, the Federal Circuit simply found insufficient evidence that the patent attorneys in question possessed the requisite intent to deceive. *Id.* at 1184. The *Molins* court cited several facts showing the patent attorney had acted with honest intentions, affirmatively attempting to cure past withholdings of prior art. *Id.* Yet, *Molins* also went to great length to show how obscuring a reference in this manner could be inequitable conduct, if there was an intent. The court listed at least two rules from the Manual of Patent Examining Procedure against burying a reference:

> "[1] MPEP § 2002.03 (4th ed., rev. 2, Apr. 1980) (failure to comment on the relevance of prior art submitted or failure to identify an especially relevant passage buried in an otherwise less or nonrelevant text may constitute a failure to comply with the duty of disclosure);
>
> * * *

10

> [2] MPEP § 2004, Item 13 (4th ed., rev. 5, Jan. 1981) ("Don't submit long lists of prior art if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative prior art. If a long list is submitted, highlight those references which may be of most significance.")."

*Molins*, 48 F.3d at 1184 (ordinals added). It is important to note, it appears Wireless Valley violated both of these rules and more when citing prior art to the examiner of the '622 patent. *Cf. Fiskars, Inc. v. Hunt Mfgr. Co.*, 221 F.3d 1318, 1327 n.2 (Fed. Cir. 2000) (finding no inequitable conduct, but reserving judgment for situations involving violations of regulations – "we do not address the status of a reference that was submitted to the PTO without satisfying 37 C.F.R. §1.97 and §1.98").

For purposes of this motion, Wireless Valley admits it effectively buried a highly material reference amid more than 150 other less relevant references. Thus, to survive this motion, Aruba need only show that there is a possible set of facts which could prove Wireless Valley did so with an intent to deceive. Any number of facts could show this deceptive intent. Therefore, Aruba's inequitable conduct claim against the '622 patent should not be stricken.

**D.    ARUBA'S "INTRODUCTION AND SUMMARY" IS MATERIAL TO ITS ANSWER**

Symbol's motion to strike the "Introduction and Summary" of Aruba's Answer and Counterclaims must be denied. Rule 12(f) only permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Aruba's "Introduction And Summary" section provides important background to Aruba's claims and defenses, which causes no prejudice to Symbol. As such, Symbol's attack should be rejected.

**1.    "Introduction And Summary" Describes The History Of The Relationship Underpinning Aruba Defenses**

Symbol appears to contend that the "Introduction and Summary" is immaterial or impertinent.[4]    It is neither.    The "Introduction and Summary" describes the history,

---

[4] Symbol characterizes Aruba's allegations as "not responsive" and "beside the point legally," neither of which appear in Rule 12(f). [Mot. at 19]. Aruba assumes Symbol intended to invoke either the "immaterial" or "impertinent" language of the Rule.

communications, and commercial dynamics of the two parties. As shown above, this background is critical to Aruba's equitable defenses. The "Introduction and Summary" also puts the relative value of the patent versus the accused technology into perspective, which will be important in rebutting Symbol's claim for damages. Finally, when the Court is called upon to make determinations of credibility or equity, understanding Symbol's behavior outside the courtroom and its motivations for bringing this suit will be helpful.

### 2.    Symbol Is Not Prejudiced By The "Introduction And Summary"

Many courts have recognized that background material should not be stricken from pleadings "unless the presence of the surplusage will prejudice the adverse party." *Schwarzkopf Techs. Corp. v. Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 154 (D. Del. 1992) (quoting *Puma v. Mariott*, 294 F. Supp. 1116, 1122 (D. Del. 1969)); *see also Daulo v. Commonwealth Edison*, 892 F. Supp. 1088, 1095 (N.D. Ill. 1995); *Tin Pan Apple, Inc. v. Miller Brewing Co.*, 737 F. Supp. 826, 839 (S.D.N.Y. 1990). Symbol has not articulated any prejudice arising from the background material in Aruba's "Introduction and Summary." The allegations will not expand the scope or issues relevant to discovery. It appears that this portion of Aruba's Answer and Counterclaim has touched a raw nerve inasmuch as Symbol characterizes it as a "gratuitous, self-serving, irrelevant, and factually inaccurate public-relations piece" (Mot. at 2). As set forth above, this is clearly wrong and the averments of the Introduction and Summary are relevant to many claims and defenses in this case.[5] Moreover they are neither scandalous nor impertinent, and thus do not constitute material that can be stricken. In short, Symbol has not and will not be harmed by this information staying in Aruba's Answer.

Rule 12(f) is "a drastic remedy to be resorted to only when required for the interests of justice." *Poole v. Taylor*, 466 F. Supp. 2d 578, 583 (D. Del. 2006) (quoting *Plaum v.*

---

[5] It certainly was not Aruba's intention to begin this litigation acrimoniously. In fact, Aruba suggested a compromise whereby it would refile the Answer and Counterclaim with the "Introduction and Summary" section removed if Symbol would withdraw its motion. Symbol declined to accept the proposed compromise.

*Jefferson Pilot Fin. Ins. Co.*, No. 04-4597, 2004 U.S. Dist. LEXIS 28968, at *6 (E.D. Pa. Dec. 22, 2004)).  The pertinence of the material in the "Introduction and Summary" coupled with the absence of prejudice to plaintiffs demonstrate that the interests of justice do not weigh in favor of granting plaintiffs' motion, and thus, it should be denied.

## VII.

## CONCLUSION

For the foregoing reasons, Aruba respectfully requests Symbol's motion to strike be denied.  In the alternative, if the Court grants any part of Symbol's motion, Aruba asks for leave to amend its Answer.

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 658-6541

Of Counsel:

MATTHEW D. POWERS
BRANDON D. CONARD
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802.3000

*Attorneys for Defendant and Counter-Claimant*
*ARUBA NETWORKS, INC.*

NICHOLAS GROOMBRIDGE
PAUL E. TORCHIA
ETAI LAHAV
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310.8000

Dated: January 7, 2008

13

### CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

#### BY HAND

Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

I hereby certify that on January 7, 2008 I transmitted the document by Federal Express to the following non-registered participant:

#### VIA FEDERAL EXPRESS

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022

_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com