IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware corporation, and WIRELESS VALLEY COMMUNICATIONS, INC., a Delaware corporation,<br><br>Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>ARUBA NETWORKS, INC., a Delaware corporation,<br><br>Defendant/Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 07-519-JJF<br>)<br>)<br>)   **JURY DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>) |

**SYMBOL TECHNOLOGIES, INC.'S AND WIRELESS VALLEY
COMMUNICATIONS, INC.'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF THEIR JOINT MOTION (1) TO STRIKE THE FIFTH,
SIXTH, AND NINTH DEFENSES AND INTRODUCTION; AND
(2) DISMISS, IN PART, COUNT SIX OF ARUBA'S COUNTERCLAIMS**

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Dated January 22, 2008
843705 / 32106

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs and Counterclaim-
Defendants Symbol Technologies, Inc. and
Wireless Valley Communications, Inc.*

## **TABLE OF CONTENTS**

                                                                                      **Page**

Table Of Citations ..................................................................................................................... iii

INTRODUCTORY STATEMENT ............................................................................................ 1

ARGUMENT ............................................................................................................................. 2

I.     SYMBOL'S SILENCE REGARDING ITS UNISSUED PATENT APPLICATIONS CANNOT SUPPORT AN EQUITABLE ESTOPPEL DEFENSE, GIVEN ARUBA'S FAILURE TO ALLEGE A BASIS FOR A DUTY TO SPEAK ........................................ 2

II.    ARUBA FAILS TO SALVAGE A LACHES DEFENSE ............................................... 5

III.   UNDER APPLICABLE LAW AND REGULATIONS, UNENFORCEABILITY CANNOT BE BASED ON A REFERENCE THAT THE EXAMINER CONSIDERED DURING PROSECUTION ......................... 8

IV.   ARUBA PROVIDES NO JUSTIFICATION FOR ITS IRRELEVANT AND PREJUDICIAL "INTRODUCTION AND SUMMARY" ............................................................................ 12

CONCLUSION ........................................................................................................................ 13

Case 1:07-cv-00519-JJF   Document 18   Filed 01/22/2008   Page 3 of 18

## TABLE OF CITATIONS

### Cases

Pages

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
    960 F.2d 1020 (Fed. Cir. 1992)......................................................................4, 6

*Altech Controls Corp. v. EIL Instruments, Inc.*
    No. 00-1216, 2001 WL 487603 (Fed. Cir. May 2, 2001)..........................4

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000).................................................................9

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    No. CV-00-20905 RMW, 2006 WL 1867724 (N.D. Cal. July 6, 2006)...............3, 4

*Intuitive Surgical, Inc. v. Computer Motion, Inc.*,
    C.A. No. 01-203-SLR, 2002 WL 31833867 (D. Del. Dec. 10, 2002).......6

*Litton Sys., Inc. v. Honeywell, Inc.*,
    87 F.3d 1559 (Fed. Cir. 1996)...................................................................9

*Meyers v. Brooks Shoe Inc.*,
    912 F.2d 1459 (Fed. Cir. 1990) (*overruled on other grounds*)................6

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995).........................................................9, 10, 11

*Ricoh Co., Ltd. v. Nashua Corp.*,
    No. 97-1344, 1999 WL 88969 (Fed. Cir. Feb. 19, 1999).........................5

*Scholle Corp. v. Blackhawk Molding Co., Inc.*,
    133 F.3d 1469 (Fed. Cir. 1988).................................................................4

*Scripps Clinic and Research Foundation v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991)................................................................10

*Stambler v. RSA Security, Inc.*,
    243 F. Supp. 2d 74 (D. Del. 2002).............................................................7

*Symbol Technologies, Inc. v. Lemelson Medical*,
    277 F.3d 1361 (Fed. Cir. 2002)..............................................................6, 7

## Statutes, Rules, And Regulations

Fed. R. Civ. P. 12(f) ..................................................................................................12

Pub. L. No. 103-465, § 532, 108 Stat. 4809 .............................................................7

35 U.S.C. § 154(a)(2) ................................................................................................7

35 U.S.C. § 154(b) ....................................................................................................8

37 C.F.R. § 1.97(h) ...................................................................................................9

37 C.F.R. § 1.98 (a)(3)(i) ........................................................................................11

## Other Sources

Manual of Patent Examining Procedure
    Chapter 600 § 609 (Rev. 2, May 2004) ..........................................................10

Manual of Patent Examining Procedure,
    Chapter 2000 § 2001.04 (Rev. Aug. 2001). ..............................................11, 12

Manual of Patent Examining Procedure
    Chapter 2000 § 2002.03[1] (4th ed., rev. 2, Apr. 1980) ..................................10

Manual of Patent Examining Procedure,
    Chapter 2000 § 2004 (Rev. Aug. 2001) ..........................................................11

http://www.uspto.gov/web/offices/pac/mpep/indexold.htm ..................................11

Plaintiffs Symbol[1] and Wireless Valley submit this reply memorandum of law in further support of their joint motion (D.I. 13) to strike certain of Aruba's defenses and the Introduction to Aruba's Answer and Counterclaims. (D.I. 8.)

**INTRODUCTORY STATEMENT**

In response to motions to dismiss, parties typically followed the usual tactic of repeating their allegations, asserting that they must be accepted as true, and hoping that will save the day. In its opposition memorandum ("Opposition Memorandum" or "Opp. Mem." (D.I. 17)), Aruba makes this plaintive plea in several instances, albeit unconvincingly. But, because Aruba's otherwise highly detailed Answer and Counterclaims wholly omits necessary allegations, Aruba is forced to go even further to promise vaguely that *it could* fill in these critical gaps in its case, if that were necessary. Because Aruba improperly believes that it has no obligation to allege the factual predicates for it defenses, however, Plaintiffs and the Court are left to their imaginations and to accept Aruba's word. That, of course, cannot cure the fatal legal deficiencies, summarized below, to Aruba's defenses:

- o Aruba has alleged no basis for establishing a duty for Symbol to speak about unissued patent applications, and Symbol's silence, therefore, as a matter of law, cannot give rise to equitable estoppel;

- o Aruba has not explained (nor could it) how a seven month period between the issuance of Symbol's '922 and '923 Patents and the filing of this action could be an unreasonable delay prejudicing Aruba and constituting laches; and Aruba's effort to breath new life into that defense by recasting it as "prosecution laches" (a wholly separate concept not even pleaded in the Answer and Counterclaims) should similarly be rejected;

---

[1] Capitalized terms herein are used as defined in Symbol Technologies, Inc.'s And Wireless Valley Communications, Inc.'s Memorandum Of Points And Authorities In Support Of Their Joint Motion (1) To Strike the Fifth, Sixth, And Ninth Defenses And Introduction; And (2) Dismiss, In Part, Count Six Of Aruba's Counterclaims, dated December 10, 2007 (D.I. 14) ("Mov. Mem." or "Moving Memorandum").

- o Aruba provides no allegations as to how Wireless Valley unreasonably delayed asserting its two patents to Aruba's prejudice, and thus its laches defenses to Wireless Valley's patents fail; and

- o Aruba's reliance on *dicta* and *obsolete PTO* regulations – while ignoring controlling Federal Circuit law that inequitable conduct cannot be established by a reference disclosed to the PTO – also requires the dismissal of its inequitable conduct defense regarding the '622 Patent.

## ARGUMENT

### I.

### SYMBOL'S SILENCE REGARDING ITS UNISSUED PATENT APPLICATIONS CANNOT SUPPORT AN EQUITABLE ESTOPPEL DEFENSE, GIVEN ARUBA'S FAILURE TO ALLEGE A BASIS FOR A DUTY TO SPEAK

Aruba alleges in its Fifth Defense that Symbol is equitably estopped from asserting its '922 and '923 Patents because Aruba allegedly took business discussions during 2003 between Aruba and Symbol to mean that Symbol did not intend to assert any rights in its not yet issued patents against Aruba. (Ans. and Counterclaims, Fifth Defense, ¶¶ 42-49.) Plaintiffs demonstrated in their Moving Memorandum that Aruba has not alleged any duty to speak on Symbol's part, which most typically arises when a patentee *threatens vigorous enforcement* of its patent rights and then falls silent, lulling the infringer into a false sense of security. Symbol's complete silence about pending patent applications simply cannot support an inference that it did not intend to enforce those applications if they ripened into patents. (Mov. Mem. at 7-10.)

In response, Aruba first contends that its allegations that "at no point…did Symbol advise or suggest that if Aruba did not agree to a transaction, Symbol would later assert those pending patents against it" and that "[a]t no point…did Symbol advise or suggest that Symbol had already invented the technology that Aruba had," are not an admission that Symbol did not communicate with Aruba during 2003 about the then-pending patent applications. (*See* Opp. Mem. at 7 n. 3, citing Ans. and Counterclaim ¶ 46.) Aruba explains that its admissions should

2

not be read as admissions because Aruba has "no obligation to set forth all possible facts in its pleading, and thus did not attempt to." (*Id.* at 7 n.3; *see also id.* at 7 n.1.) Although Aruba might not be required to set forth *all possible facts*, it does have an obligation to set forth facts demonstrating a viable claim. It is not enough for Aruba to now postulate, as it does, that given the alleged "complex and protracted" history between the parties, somehow "it is easy to envision a set of facts whereby Symbol had a duty to disclose information about its pending patent applications, thereby making its silence or inaction misleading." (Opp. Mem. at 9.) If Symbol said or did something during the business discussion in 2003 that could give rise to a legal duty to speak, Aruba was required to allege those facts, rather than asking the Court to imagine a possible scenario. Aruba's actual allegations – and what it failed to allege – lead only to the conclusion that Symbol did not mention those applications or do anything else to give rise to a duty to speak further about them.

Next, Aruba contends that, under exactly the scenario it alleges, *Hynix Semiconductor, Inc. v. Rambus Inc.*, No. CV-00-20905 RMW, 2006 WL 1867724 (N.D. Cal. July 6, 2006), recognizes that there can be equitable estoppel even where the alleged infringer does not know about the patent. (Opp. Mem. at 8) Aruba has it wrong on several grounds. First, it misunderstands Symbol's argument, which does not turn on Aruba's knowledge of the patent applications (which, in fact, would have been public in 2003 based on their filing in 2001). Rather, because there was no discussion of the patent applications by Symbol, Aruba must allege facts giving rise to a duty to speak in order to support an equitable estoppel defense based on Symbol's silence. Aruba has utterly failed to do so.[2]

---

[2] In any event, to the extent that *Hynix* sustained an estoppel defense based on patents or applications about which the alleged infringer was not aware, that is directly contrary to the Federal Circuit's requirement that "[i]t is clear, thus, that for equitable estoppel the alleged

3

Second, contrary to Aruba's assertions, the factual scenario in *Hynix* bears no likeness to that alleged by Aruba. There the counterclaim defendant had alleged the following facts, not present here, which the district court found established a duty for the counterclaim plaintiff to speak up: (1) counterclaim plaintiff, as a member of an industry standards-setting group (JEDEC), had an obligation under that group's policy to disclose its patents and applications; (2) counterclaim plaintiff had disclosed one of its patents, but not other pertinent ones, as required; and (3) counterclaim plaintiff and counterclaim defendant had negotiated a license agreement covering certain of plaintiff's technology, but counterclaim plaintiff had not demanded a royalty under a provision of that agreement pertaining to other technology covered by the newly-asserted patents.[3] 2006 WL 1867724, at **1, 4.

The circumstances giving rise to a duty to speak – the industry-group policy; misleading disclosure under that policy; and the failure to demand royalty payments – are completely absent here. Rather, in this case, and taking Aruba's allegations as true, the discussion of technology in the context of a potential business arrangement – *in which Symbol is not alleged to have threatened future infringement* – cannot be the basis for an equitable estoppel defense. *See Altech Controls Corp. v. EIL Instruments, Inc.* No. 00-1216, 2001 WL 487603, at **2 (Fed. Cir. May 2, 2001) (finding no estoppel where, during merger discussions between plaintiff and

---

infringer cannot be unaware – as is possible under laches – of the patentee and/or its patent." *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (*en banc*).

[3] The *Hynix* Court relied on the Federal Circuit's holding in *Scholle Corp. v. Blackhawk Molding Co. Inc.*, 133 F.3d 1469, 1472 (Fed. Cir. 1988), a case which also – unlike here – included allegations supporting a duty to speak. Specifically, the defendant and plaintiff had previously been in litigation regarding one of defendant's products; thereafter, the defendant notified plaintiff that it intended to market a design-around product; and the plaintiff never suggested that it intended to enforce its patent against the design-around product. *Id.* at 1472. That, of course, is vastly different from Aruba's allegations here.

4

defendant, plaintiff complained about a third company copying its products, but made no reference to its patents or to potential litigation with the defendant to enforce its patent rights).

Moreover, and in any event, Aruba "fails to apprehend the difference between inaction in light of an issued patent ... and inaction in light of a pending application, as is the case here." *Ricoh Co., Ltd. v. Nashua Corp.*, No. 97-1344, 1999 WL 88969, at **4 (Fed. Cir. Feb. 18, 1999) (Unpublished). In *Ricoh*, a case which *does present circumstances very similar to those here*, the defendant allegedly had disclosed a design to plaintiff before plaintiff's patent issued. *Id.* The Federal Circuit affirmed a rejection of an equitable estoppel defense relating to that unissued patent application, finding that the plaintiff could not be estopped from failing to speak about an unissued patent because it had no right – based on a mere application – to object to the defendant's design. *Id.* Similarly here, during the business discussions in 2003, Symbol had no right to object to Aruba's products based on its unissued application (as it clearly then had no right to exclude Aruba from practicing the inventions disclosed in the unissued applications), and its silence therefore cannot, as a matter of law, be a basis for equitable estoppel.

## II.

## ARUBA FAILS TO SALVAGE A LACHES DEFENSE

Plaintiffs' Moving Memorandum showed that Aruba failed to articulate a laches defense to any of the four separate patents – Aruba does not dispute that each patent must be analyzed separately – asserted by the two Plaintiffs. (*See* Mov. Mem. at 10-13.)

**Symbol Patents.** As to Symbol's two patents, the '922 and '923 Patents, an interval of *at most seven months* from the time those patents issued in February 2007 – which the Federal

Circuit has said is the earliest a laches period can begin[4] – to the time this case was filed, cannot be an unreasonable delay or laches as a matter of law. (*Id.* at 11-12.) While Aruba cannot bring itself to expressly acknowledge this obvious conclusion, it tacitly does so by offering no explanation otherwise.

Instead, Aruba attempts to seek refuge in a limited doctrine which it has not pled and which is totally inapposite here – prosecution laches. (*See* Opp. Mem. at 6). Specifically, Aruba *now* asserts that in some as yet unidentified way, Symbol improperly, unreasonably, and inexplicably delayed the prosecution of the '922 and '923 Patent applications, such that Symbol should now be estopped from asserting those patents. (*Id.*)

In support of this position, Aruba relies on *Symbol Technologies, Inc. v. Lemelson Medical*, 277 F.3d 1361 (Fed. Cir. 2002) (cited by Aruba), a case bearing little resemblance to this one (beyond being a patent case in which Symbol was a party). In that case, the Federal Circuit recognized that under very egregious cases a patent applicant who was in technical compliance with the prosecution rules for filing continuing patent applications may nonetheless be charged with the equitable doctrine of prosecution laches. *Lemelson* and subsequent decisions make clear, however, that such a claim is available only in extraordinary situations where a patent applicant has manipulated the rules in a manner that – while technically in compliance – has, through gamesmanship, extended the life of his patent well beyond the term envisioned by our patent system. *See Intuitive Surgical, Inc. v. Computer Motion, Inc.*, C.A. No. 01-203-SLR, 2002 WL 31833867, *3 (D. Del. Dec. 10, 2002) (recognizing that prosecution laches is an equitable tool "which has been used sparingly in only the most egregious of cases"; finding no

---

[4] *See, e.g., Aukerman*, 960 F.2d at 1032; *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1462, 1464 (Fed. Cir. 1990) (*overruled on other grounds*). In cases involving multiple patents, the period of delay for each patent is determined independently, and for each patent delay cannot possibly begin to happen until that patent has issued. *E.g., Brooks Shoe*, 912 F.2d at 1462.

6

prosecution estoppel based on nine year period from original filing to issuance); *Stambler v. RSA Security, Inc.*, 243 F. Supp. 2d 74, 76 (D. Del. 2003) (same; seven year interval). In *Lemelson*, the patent applications that well-known inventor Lemelson claimed benefit to were filed in 1954 and 1956, but the earliest asserted patent did not issue until 1978. Thus, the earliest asserted Lemelson patent did not expire until 1995 - *41 years from the earliest application to which priority was claimed.* 277 F.3d at 1363.

Aruba has not even attempted to allege (nor could it) the type of egregious conduct necessary to establish prosecution laches. In fact, Aruba's laches allegations appear to try (but fail) to set out a garden variety laches defense resulting from alleged "delay[] in bringing this suit until August 2007, on patents that first started issuing in September 2003." (Ans. and Counterclaims ¶ 53.) There is no allegation (nor could there be) of unreasonable and unexplained delay by Symbol during the patent prosecution.

Indeed, under post-*Lemelson* changes to the way patent terms are calculated, Symbol, unlike Lemelson, had no incentive, but rather a disincentive, to delay its patent application, something Aruba never even addresses. Prior to those amendments, a patent term ran for 17 years from the date on which a patent issued, irrespective of the filing date. Thus, as in *Lemelson*, a patentee could extend the effective date of a patent by delaying the issuance of a patent. The December 1994 amendments to the patent laws, Pub. L. No. 103-465, § 532, 108 Stat. 4809 (codified as amended at 35 U.S.C. § 154 (a)(2) (1994)) changed the term of the patent grant from 17 years from the date a patent is issued, to 20 years from the effective filing date of the application. *See* 35 U.S.C. § 154(a)(2). Thus a delay in prosecution now harms the applicant

by diminishing the patent term.[5] Aruba not only fails to allege that Symbol delayed prosecution or that the delay was unreasonable and unexplained, it also fails to explain any incentive Symbol had to reduce the term of its own patents.

**Wireless Valley Patents.** With respect to the Wireless Valley Patents, there are simply no allegations of undue delay by Wireless Valley resulting in prejudice to Aruba – the two elements necessary for a laches defense, and, therefore, its laches defense should be stricken. (Mov. Mem. at 12-13.) Aruba's response is limited to erroneously asserting that Plaintiffs "ignore[] the fact that the other two [Wireless Valley] patents it has asserted issued years before this lawsuit was filed." (Opp. Mem. at 2.) Not true. Plaintiffs expressly addressed those patents, pointing out that Aruba's Answer and Counterclaims does not provide Wireless Valley with any fair notice of the factual basis on which it might predicate a laches defense, including how Wireless Valley unreasonably delayed or how Aruba materially changed its position based on that delay. (Mov. Mem. at 12-13.) It is Aruba which has ignored that challenge and its pleading requirements by failing to provide the factual basis, if any, for its defense against Wireless Valley's infringement claims. Thus, that defense should be stricken.

### III.

### UNDER APPLICABLE LAW AND REGULATIONS, UNENFORCEABILITY CANNOT BE BASED ON A REFERENCE THAT THE EXAMINER CONSIDERED DURING PROSECUTION

Plaintiffs' motion also seeks to strike Aruba's defense and counterclaim of inequitable conduct with respect to Wireless Valley's '622 Patent. Aruba alleged that Wireless Valley

---

[5]   Section 154(b) of the Patent Laws recognizes that delay now harms the patentee by providing guarantees of prompt PTO action on applications and adjustments of the patent term when applications are delayed by PTO and other actions not attributable to the patentee. 35 U.S.C. § 154(b). In fact, the PTO extended the terms of the '922 and '923 Patents, respectively, 704 and 833 days, respectively, under section 154(b). (*See* '922 Patent, at 1; '923 Patent, at 1.)

8

intended to deceive the PTO purportedly by (1) "burying" an allegedly material prior art reference (the '045 Patent) in a long list of references; and (2) expressly "disclaiming" the relevance of that reference. (Ans. and Counterclaim, Ninth Defense, ¶ 61; Counterclaim Count 6.)

Taking the latter point first, the challenged disclaimer language – which was a general statement, and not as Aruba suggests (*id.* ¶ 61), a statement about the '045 Patent reference in particular – closely tracked the PTO's own regulation providing that disclosure of a reference does not constitute an admission of relevance. (Mov. Mem at 17-18, citing 37 C.F.R. § 1.97(h)). Plaintiffs also showed that Aruba's own Information Disclosure Statements ("IDS") contain essentially the same language "disclaiming" the relevance of its citations, a point Aruba does not dispute. (*Id.*) That apparently was enough to convince Aruba that Wireless Valley's statement regarding relevance was proper and not probative of deceptive intent, as Aruba sheepishly avoids that argument in its Opposition Memorandum, thereby conceding the point.

As to Aruba's claim that Wireless Valley's purported "burying" of a reference in an IDS could be inequitable conduct, Plaintiffs cited Federal Circuit authority directly on point holding that a reference disclosed to the PTO (and even one not disclosed) and reviewed by the examiner cannot be the basis for inequitable conduct. (*See* Mov. Mem. at 14-15, *citing Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1327 (Fed. Cir. 2000) ("[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner."); *Litton Sys., Inc. v. Honeywell, Inc.*, 87 F.3d 1559, 1571 (Fed. Cir. 1996) (holding that even the failure to cite a reference reviewed by the examiner cannot support inequitable conduct); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182, 1184 (Fed. Cir. 1995) (expressly rejecting a claim like Aruba's that an applicant's had acted in bad faith by "burying" a

9

relevant reference in a long list of cited references, because there, as here, the examiner had reviewed the reference); *Scripps Clinic and Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) (rejecting argument that the applicant acted inequitably because it failed to specifically bring a particularly relevant reference to the examiner's attention because the examiner saw the reference).)

Aruba's reliance on *dicta* and inapplicable regulations – while ignoring applicable ones – to try to overcome this overwhelming authority, is completely unavailing. For example, Aruba cites *dicta* from *Molins*, that "burying" a reference in a long list may be probative of deceptive intent (Opp. Mem. at 10), but ignores the actual holding in *Molins* rejecting a "burying" argument because there could be no deceptive intent where the examiner reviewed a cite. *Molins*, 48 F.3d at 1184. In fact, notwithstanding the "burying" *dicta*, the *Molins* Court went on to reject the argument that *failure to cite another reference to the PTO* constituted inequitable conduct because the examiner independently identified and reviewed that reference. *Id.* at 1184-85. If the examiner's review of an *uncited* reference precludes deceptive intent as a matter of law, *a fortiori*, the examiner's review *of a reference actually cited by Wireless Valley*, even if in a "long list," cannot be deceptive intent.

Also, *citing an outdated 1980 version of the MPEP*, Aruba alleges that Wireless Valley violated a purported requirement that it comment on the relevance of cited references. (Opp. Mem. at 10-11, *citing* MPEP § 2002.03[1] (4th ed., rev. 2, Apr. 1980).) Aruba's charge that Wireless Valley acted deceptively by failing to comment on the '045 Patent's relevance, however, is just plain wrong, since no such requirement existed during the time of the prosecution of the '622 patent application, including when the IDS was submitted in 2003. (*See*

MPEP Chapter 2000 § 2001.04 at 2000-4[6] (Aug. 2001 Rev.) ("the new rules will actually facilitate the filing of information since the burden of submitting information to the Office has been reduced by eliminating, in most cases, the requirement for a concise statement of the relevance of each item of information listed in an information disclosure statement"); 37 C.F.R. § 1.98 (a)(3)(i) (as amended in 1992) (setting forth requirement of concise explanation of relevance only for references "not in the English language"); MPEP Chapter 600 § 609 at 600-129 (Rev. 2, May 2004) (acknowledging that the requirement of a concise statement "is limited to information that is not in the English language."); *Molins*, 48 F.3d at 1184 (comparing prior rule under 1980 version of MPEP to 1992 version of 37 C.F.R. § 1.98 under which "no explanation of relevance [is] necessary for information in the English language").

At the same time Aruba relies on obsolete regulations, it ignores current, relevant ones. For example, in charging that Wireless Valley had some obligation to submit only a short list of references, it disregards PTO directions that patentees err on the side of including references where materiality might be in question. (*See* Mov. Mem. at 17 n. 8, *citing* MPEP Chapter 2000, Section 2004 (Rev. Aug. 2001), Introductory Paragraph and ¶ 10 ("desirable and safest" to submit information).) This includes the following applicable guidance from the PTO that such a practice *will "strengthen" a patent and obviate claims of deceptive intent*:

> Presumably, applicants will continue to submit information for consideration by the Office in applications rather than making and relying on their own determinations of materiality. An incentive remains to submit the information to the Office because it will result in a strengthened patent and will avoid later questions of materiality and intent to deceive.

---

[6] Referenced sections of the MPEP not previously cited by Plaintiffs are attached as Exhibit 1 to the January 22, 2008 Reply Declaration of Lawrence Brocchini ("Brocchini Reply Decl."). According to the PTO website (http://www.uspto.gov/web/offices/pac/mpep/indexold.htm), at the time Wireless Valley submitted its IDS in 2003, the applicable version of Chapter 2000 of the MPEP was the August 2001 revision, not the 1980 version; similarly the applicable version of Chapter 600 was Rev. 2, May 2004 (cited below).

MPEP Chapter 2000 § 2001.04 at 2000-4 (Rev. Aug. 2001).

Ultimately, Plaintiffs' careful analysis shows that Aruba's casual inequitable conduct charge, ignoring applicable law and regulations, is wholly without merit.

## IV.

## ARUBA PROVIDES NO JUSTIFICATION FOR ITS IRRELEVANT AND PREJUDICIAL "INTRODUCTION AND SUMMARY"

Symbol and Wireless Valley showed previously that Aruba's "Introduction and Summary" should be stricken because it is not responsive to Plaintiffs' Complaint, serves no legitimate pleading purpose, and improperly seeks to deflect attention from Aruba's infringing activities by impugning Plaintiffs' motives (*i.e.*, "overturn the verdict of the market") for seeking to rightfully and lawfully enforce their patents.[7] (Mov. Mem. at 18-19.)

In response, Aruba argues without elaboration or citation that, of course, this material is "relevant to many claims and defenses in this case." (Opp. Mem. at 12.) That unsupported claim is belied, however, by the body of Aruba's own Answer and Counterclaims, which *nowhere incorporates* the Introduction and Summary by reference. In contrast, other parts of that pleading are liberally incorporated by reference in Aruba's denials, defenses, and counterclaims. (*See, e.g.*, ¶¶ 13, 19, 25, and 31 (incorporating responses to ¶¶ 1-12); ¶ 50 (laches defense incorporating ¶¶ 43-49); ¶ 63 (unclean hands defense, incorporating ¶¶ 42-62); and ¶¶ 76, 79, 82, 86, 89, and 92 (declaratory judgment counterclaims incorporating ¶¶ 1-66 and 69-75). Not so for the Introduction and Summary, and its absence from the body of Aruba's Answer and Counterclaims demonstrates its legal irrelevance.

---

[7]  Aruba feigns a lack of understanding of what aspect of Rule 12(f) Plaintiffs are relying on. (Opp. Mem. at 11 n.4.) Plaintiffs clearly articulated that the Introduction and Summary should be stricken as "immaterial" and "impertinent" under that rule. (*See, e.g.*, Mov. Mem. at 2.)

12

Indeed, that irrelevance and impertinence is confirmed by Aruba's use of the Introduction and Summary as a bargaining chip to try to compel Plaintiffs' to withdraw its other proper challenges to Aruba's legally deficient defenses. (*See* Opp. Memo. at 12 n.5).[8] Aruba's willingness to jettison the Introduction and Summary confirms that Aruba understands that it is immaterial to its defenses, and that portion of the Answer and Defenses should be stricken.

## CONCLUSION

For the reasons set forth above and in the Moving Memorandum, Plaintiffs' motion to strike Aruba's equitable estoppel and laches defenses; its defense and counterclaim for inequitable conduct on the '622 Patent; and its "Introduction and Summary" should be granted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Dated January 22, 2008
843705 / 32106

By: */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs and Counterclaim-Defendants Symbol Technologies, Inc. and Wireless Valley Communications, Inc.*

---

[8] In fact, in response to Aruba's so-called compromise proposal offering to remove the Introduction if Symbol withdrew its motion to dismiss Aruba's legally deficient defenses and counterclaim, Plaintiffs offered to withdraw this motion if Aruba also withdrew those defenses. Aruba rejected that compromise.

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 22, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on January 22, 2008, I have Electronically Mailed the document to the following person(s):

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899
cottrell@rlf.com

Matthew D. Powers
Vernon M. Winters
Brandon C. Conard
Jason D. Kipnis
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
matthew.powers@weil.com
vernon.winters@weil.com
brandon.conard@weil.com
jason.kipnis@weil.com

Nicholas Groombridge
Paul E. Torchia
Etai Lahav
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
nicholas.groombridge@weil.com
paul.torchia@weil.com
etai.lahav@weil.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

816924 / 32106