## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SYMBOL TECHNOLOGIES, INC., and
WIRELESS VALLEY COMMUNICATIONS,
INC.,

           Plaintiffs,

     v.

ARUBA NETWORKS, INC.,

           Defendant.

C.A. No. 07-519-JJF

## OPENING BRIEF IN SUPPORT OF DEFENDANT ARUBA NETWORKS, INC.'S
## MOTION TO STAY PENDING REEXAMINATION OF THE PATENTS-IN-SUIT

Of Counsel:

Matthew D. Powers
Brandon D. Conard
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802.3000

Nicholas Groombridge
Paul E. Torchia
Etai Lahav
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310.8000

Frederick L. Cottrell, III (# 2555)
Cottrell@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Defendant ARUBA
NETWORKS, INC.*

Dated: April 4, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ..........................................................................1

SUMMARY OF THE ARGUMENT ................................................................................................2

STATEMENT OF FACTS ..............................................................................................................3

ARGUMENT ................................................................................................................................5

    A.    The PTO's Reexamination Of The Asserted Patents Is Grounds
           For A Stay ...................................................................................................................5

    B.    Traditional Factors All Favor Granting A Stay ...........................................................7

           1.    A Stay Will Narrow The Issues And Conserve Judicial Resources ...................7

           2.    The Early Stage Of This Proceeding Strongly Supports Granting
                The Stay During Reexamination ...................................................................10

           3.    A Stay Will Not Prejudice Plaintiffs ...............................................................11

CONCLUSION ............................................................................................................................14

i

# TABLE OF AUTHORITIES

## CASES

*Abbott Diabetes Care Inc. v. DexCom, Inc.*,
2007 WL 2892707 (D. Del. Sept. 30, 2007)..........................................................................6

*ASCII Corp. v. STD Entm't USA, Inc.*,
844 F. Supp. 1378 (N.D. Cal. 1994) ...............................................................................6, 11

*Alloc, Inc. v. Unilin Décor N. V.*,
No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) ..................7, 10

*Canady v. Erbe Elektromedizin GmbH*,
271 F. Supp. 2d 64 (D.D.C. 2002)......................................................................................5

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
734 F. Supp. 656 (D. Del. 1990).........................................................................................7

*Essex Group, Inc. v. Southwire Co.*,
No. C-85-1923-A, 1986 U.S. Dist. LEXIS 29761 (N.D. Ga. Jan. 31, 1986).......................7

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)..........................................................................................6

*GPAC Inc. v. D.W.W. Enters, Inc.*,
23 U.S.P.Q. 2d 1129 (D.N.J. 1992) ...................................................................................6

*Gould v. Control Laser Corp.*,
705 F.2d 1340 (Fed. Cir. 1983)........................................................................................10

*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*,
48 U.S.P.Q. 2d 1058 (C.D. Cal. 1998).........................................................................6, 10

*KLA-Tencor Corp. v. Nanometrics, Inc.*,
No. C 05-03 116 JSW, 2006 U.S. Dist. LEXIS 15754 (N.D. Cal. Mar. 16, 2006) ...........12

*KSR Int'l Co. v. Teleflex Inc.*,
127 S. Ct. 1727 (2007)........................................................................................................4

*Lear, Inc. v. Adkins*,
395 U.S. 653 (1969)..........................................................................................................13

*Lentek Int'l, Inc. v. Sharper Image Corp.*,
169 F. Supp. 2d 1360 (M.D. Fla. 2001).............................................................................6

*Patlex Corp. v. Mossinghoff,*
758 F.2d 594 (Fed. Cir. 1985), *rev'd in non-pertinent part*, 771 F.2d 480
(Fed. Cir. 1985) ................................................................................................................5, 6

*Pegasus Dev. Corp. v. DirecTV, Inc.,*
No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003) ........................8

*Robert H. Harris Co. v. Metal Mfg. Co.,*
No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086 (E.D. Ark. June 20, 1991) .......................7

*Sabert Corp. v. Waddington N. Am., Inc.,*
No. 06-5423 (JAG), 2007 U.S. Dist. LEXIS 68092 (D.N.J. Sept. 14, 2007) ...............11, 12

*Tap Pharm. Prods. Inc. v. Atrix Labs., Inc.,*
70 U.S.P.Q. 2d 1319 (N.D. Ill. 2004) ..........................................................................8, 10

*Target Therapeutics Inc. v. SciMed Life Systems Inc.,*
33 U.S.P.Q. 2d 2022 (N.D. Cal. 1995) ..............................................................................12

*United Sweetener USA, Inc. v. Nutrasweet Co.,*
766 F. Supp. 212 (D. Del. 1991) .........................................................................................7

*Vitronics Corp. v. Conceptronic, Inc.,*
36 F. Supp. 2d 440 (D.N.H. 1997) ......................................................................................9

## STATUTES

35 U.S.C. § 102(b) ...............................................................................................................3

35 U.S.C. §§ 301-307 ...........................................................................................................5

35 U.S.C. § 305 .....................................................................................................................5

## OTHER AUTHORITIES

M.P.E.P. § 2261 ..............................................................................................................5, 12

M.P.E.P. § 2286 (I.) .......................................................................................................5, 12

## NATURE AND STAGE OF THE PROCEEDINGS

On August 27, 2007, Plaintiffs Symbol Technologies, Inc. ("Symbol") and Wireless Valley Communications, Inc. ("Wireless Valley") (collectively "Plaintiffs") filed this action against Defendant Aruba Networks, Inc. ("Aruba"), asserting infringement of four patents: United States Patent Nos. 7,173,922 ("'922 patent"), 7,173,923 ("'923 patent"), 6,625,454 ("'454 patent"), and 6,973,622 ("'622 patent") (collectively "Patents-In-Suit"). Symbol claims to own the '922 and '923 patents. Wireless Valley claims to own the '454 and '622 patents. Both Symbol and Wireless Valley are subsidiaries of Motorola, Inc.

To date, very little has happened in this litigation. Aruba filed an Answer on October 17, 2007. Symbol filed a motion to strike portions of the Answer and dismiss some of Aruba's counterclaims on December 10, 2007, which has now been fully briefed. Aruba filed an *inter-partes* reexamination request against the '922 patent on February 25, 2008. Aruba filed a second reexamination request against the '454 patent on March 28, 2008. Aruba filed a third reexamination request for the '923 patent on April 3, 2008.[1] Aruba will have the final reexamination request for the '622 patent on file within the month.

The Court has not entered a scheduling order or set a trial date. No discovery has taken place. The initial case management conference, pursuant to Federal Rule of Civil

---

[1] A copy of the *inter-partes* reexamination request for the '922 patent is attached as Exhibit 1 to the Declaration of Etai Lahav (hereinafter "Lahav Decl., Exh. X"), filed herewith. The *ex-parte* reexamination request for the '454 patent is attached as Lahav Decl., Exh. 2. The *ex-parte* reexamination request for the '923 patent is attached as Lahav Decl., Exh. 3.

Procedure 16(b), is not set to occur until May 7, 2008. The parties have not yet exchanged the information required by Federal Rule of Civil Procedure 26(a)(1) and District of Delaware Local Rule 16.2.

## SUMMARY OF THE ARGUMENT

Aruba has filed with the United States Patent and Trademark Office ("PTO") requests for reexamination of Symbol's '922 and '923 patents and Wireless Valley's '454 patent. Aruba will have a reexamination request for the remaining Patent-In-Suit, the '622 patent, on file with the PTO by the end of April 2008. In view of these requests, Aruba now respectfully moves to stay these proceedings until the requests are either denied or until reexamination of the Patents-In-Suit is concluded.[2] The Court should enter the requested stay for the following reasons:

1.    There is a substantial likelihood that the PTO will cancel or significantly alter the claims of the Patents-In-Suit. A stay will permit proceedings before the PTO to resolve or narrow the issues in the case. A stay will also prevent any waste in judicial resources that would be occasioned by litigation over claims that are subsequently amended or cancelled by the PTO during reexamination proceedings.

2.    Aruba has made this request for a stay before any substantive proceedings in this action – before the Court has entered a discovery and/or trial schedule; before the parties have taken or even requested any discovery; and before the initial case

---

[2] Alternatively, the Court in its discretion could dismiss the case without prejudice pending the reexaminations. In order to keep the Court apprised of the status of the reexaminations, the parties could provide the Court with a status report at regular intervals.

2

management conference. Thus, granting the stay will avoid wastage of any judicial resources that would otherwise be expended on prosecution of this action.

3. Plaintiffs will not be prejudiced by the entry of a stay pending the outcome of the reexamination proceedings. This is purely a patent infringement case, with all patents having substantial remaining life before their expiration. The case does not involve any claims requiring a trial that are not linked to the patent infringement claims.

## STATEMENT OF FACTS

All four patents-in-suit suffer from similar infirmities. As Aruba's reexamination requests explain, during the initial examination of the Patents-In-Suit, the PTO was not given critical prior art that clearly shows each patent is invalid. Accordingly, Aruba not only expects the PTO to grant all four reexamination requests, but to ultimately narrow or invalidate the claims of the Patents-In-Suit.

The Wireless Valley patents, the '454 and '622 patents, are both invalid over a prior art reference published by Wireless Valley itself, the so-called "Siteplanner 3.0 manual." The Wireless Valley patents cover a software tool that uses prediction models to provide a computerized model representing a physical environment in which a communications network is or will be installed. During prosecution of the '454 and '622 patents, the applicant never disclosed that the named inventors had created, and were selling, a program called SitePlanner 3.0 that did the same thing. The SitePlanner 3.0 product is critical prior art against the Wireless Valley patents because it was in use more than a year before either patent was filed. *See* 35 U.S.C. § 102(b). As Aruba's reexamination request for the '454 patent shows, the User Manual for SitePlanner 3.0 anticipates five out of fourteen claims in the patent, and the SitePlanner 3.0 User Manual

3

plus one other reference renders obvious the remaining claims. Aruba's reexamination request for the '622 patent will make a similar showing. Wireless Valley did not disclose either the SitePlanner 3.0 product or the user manual to the PTO during the original prosecution of the '454 and '622 patents.

The Symbol patents are the '922 and '923 patents. The '922 patent discusses "a method for operating multiple overlapping wireless local area subnetworks" that utilizes "a plurality of RF [*i.e.*, radio frequency] ports" coupled to "a common cell controller." The '923 patent is a continuation of the '922 patent, but includes the limitation of associating a security status with an RF port. Initially, the examiner rejected the '922 patent as anticipated by the prior art. In order to overcome this rejection, Symbol added two further limitations to the claims of the '922 patent, and the claims were ultimately allowed. However, the patent examiner was not given key prior art showing that the added limitations do not in fact differentiate the alleged invention from what was already known. Aruba's reexamination request for the '922 patent cites several references showing each of the two limitations Symbol added were well known in the art. Aruba's reexamination request for the '923 patent shows these same references also disclose the security status limitation that was added to the '923 patent. When any of these references are viewed in combination with each other, it is apparent that the claims of both the '922 and '923 patents are merely obvious combinations of known elements, and thus invalid. *See KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).

In light of this strong showing, the claims of the Symbol and Wireless Valley patents are likely to be substantially narrowed or cancelled altogether in the reexamination process.

4

## ARGUMENT

### A.    The PTO's Reexamination Of The Asserted Patents Is Grounds For A Stay

By statute, the PTO provides the reexamination as a means to review the validity of issued patents based upon prior art patents and printed publications. The purpose of reexamination is to reduce the burden on an already overly burdened judiciary. *See* 35 U.S.C. §§ 301-307. Additionally, the PTO is bound by statute to resolve reexamination requests "with special dispatch." 35 U.S.C. § 305.[3]

The legislative purpose underlying the patent reexamination statute is to avoid the potentially unnecessary and wasted expenditure of resources in a concurrent district court patent infringement proceeding. PTO reexaminations offer an opportunity to resolve validity disputes more quickly and less expensively than traditional patent litigation. *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985) (reexamination "could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases"), *rev'd in non-pertinent part*, 771 F.2d 480 (Fed. Cir. 1985); *see also Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) (finding that Congress specifically "instituted the reexamination process to shift the burden o[f] reexamination of patent validity from the courts to the PTO.").

---

[3] Further, the PTO is sensitive to the urgency of a request related to patents presently in litigation. The PTO examination guidelines state: "Any cases involved in litigation, whether they are reexamination proceedings or reissue applications, will have priority over all other cases." Manual of Patent Examining Procedure ("M.P.E.P.") § 2261 (8th ed., rev. 5, Aug. 2006 (emphasis added). In addition, where a litigation involving a patent being reexamined has been stayed, the PTO will expedite the reexamination. M.P.E.P. § 2286 (I.). Aruba stated in its reexamination requests that the patents are involved in this litigation.

5

Consistent with the legislative purpose of avoiding expense and wasted resources, courts have recognized "a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination . . . proceedings." *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *see also Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness Inc.*, 48 U.S.P.Q.2d 1058 (C.D. Cal. 1998) ("There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings."); *GPAC Inc. v. D.W.W. Enters. Inc.*, 23 U.S.P.Q.2d 1129, 1131 (D.N.J. 1992) ("Congress noted its approval of district courts liberally granting stays . . . ."); *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F. Supp. 2d 1360, 1362 (M.D. Fla. 2001) ("[T]he sponsors of the patent reexamination legislation clearly favored the liberal grant of stays by the district courts when patents are submitted for reexamination as a mechanism for settling disputes quickly and less expensively and for providing the district courts with the expertise of the patent office.").

Moreover, the Federal Circuit has affirmed district court decisions to stay further proceedings pending the PTO's reexamination of patents. *See, e.g., Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings . . . , including the authority to order a stay pending a conclusion of PTO reexamination."); *Patlex*, 758 F.2d at 606 ("The stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation.").

Indeed, many courts have issued stay orders, like the one requested here, before the PTO has granted the request for reexamination. *See, e.g., Abbott Diabetes Care Inc. v. DexCom, Inc.*, 2007 WL 2892707 (D. Del. Sept. 30, 2007) (Sleet, J.) (stay granted

6

pending reexamination by PTO); *Robert H. Harris Co. v. Metal Mfg. Co.*, No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at **5-10 (E.D. Ark. June 20, 1991) (stay issued pending the PTO's response to a reexamination request); *Essex Group, Inc. v. Southwire Co.*, No. C-85-1923-A, 1986 U.S. Dist. LEXIS 29761, at *3 (N.D. Ga. Jan. 31, 1986) (same).

**B.    Traditional Factors All Favor Granting A Stay**

The decision to grant a stay is within the district court's broad range of discretionary powers. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990). In weighing the competing interests of the parties and attempting to maintain an even balance, courts generally evaluate a number of factors, including: (1) whether a stay will simplify the issues raised by the parties; (2) whether discovery is complete and a trial date has been set; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-movant. *See Alloc, Inc. v. Unilin Décor N. V.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *5 (D. Del. July 11, 2003) (granting motion for stay); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) (granting motion for stay).

As explained below, all of the factors traditionally considered in deciding a motion to stay weigh greatly in favor of granting Aruba's request.

**1.    A Stay Will Narrow The Issues And Conserve Judicial Resources**

A stay in this case pending reexamination will conserve judicial resources by streamlining the issues for discovery and at trial. The reexamination proceedings are likely to result in the cancellation or amendment of the Plaintiffs' patent claims. In the process, the PTO will address many of Aruba's key invalidity arguments. Staying the

7

case now would permit the Court to focus on any claims and arguments that may survive

reexamination, and would prevent the duplication of efforts by the PTO and the Court.

As courts have observed, a stay pending reexamination contributes to narrowing

the issues and streamlining the litigation process (if it proceeds) in numerous ways:

> (1) many discovery problems relating to the prior art may
> be alleviated; (2) the record of the reexamination likely
> would be entered at trial, reducing complexity and length of
> the litigation; (3) the issues, defenses, and evidence will be
> more easily limited in pre-trial conferences following a
> reexamination; (4) the outcome of the reexamination
> process may encourage a settlement without further
> involvement of the court; and (5) if the patent is declared
> invalid, the suit likely will be dismissed as to that patent.
> These efficiencies will result in a reduced cost of litigation
> for the parties and more effective utilization of the limited
> resources of the court.

*Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at

\*\*5-6 (D. Del. May 14, 2003) (internal citations omitted); *see also Tap Pharm. Prods.*

*Inc. v. Atrix Labs., Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004) (granting stay and

noting "a very real possibility that the parties will waste their resources litigating over

issues that will ultimately be rendered moot by the PTO's findings."). Each of these

points applies here.

The reexamination process may eliminate or streamline the issues for litigation by

allowing the PTO to first evaluate whether the claims should be invalidated or at least

narrowed. Aruba has provided the PTO with significant prior art that invalidates all four

Patents-In-Suit. A skilled patent examiner will now review that prior art, consider the

reasons presented by Aruba for why the patent claims are not patentable, and make

determinations as to the validity of each claim in the Patents-In-Suit. At the end of that

8

process, the Court and the parties will know what the final version of the patent claims are, and will have the benefit of the PTO's opinion on critical invalidity arguments. The result is that many of the issues that the parties would normally raise with the Court will drop away in light of the PTO's decision.

Conversely, if the case is not stayed, the reexamination proceedings may require the Court and the parties to re-do or discard much of the work done during litigation. For example, if a stay is not granted, the Court would have to construe as many as <u>111 patent claims</u> while the scope of those claims are under review at the PTO. If any claims are cancelled or amended by the PTO, the time and effort invested by both the Court and the parties in such a claim construction process would be either moot or would have to be repeated with respect to the amended claims. *See Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997). Similarly, the parties' invalidity and infringement contentions will have to be re-done if the claims change during reexamination.

The PTO's own statistics show there is a significant chance that the claims of the Patents-In-Suit will be cancelled or amended. According to the PTO, 92% of ex parte reexamination requests are granted. (*See* Lahav Decl., Exh. 4.) Further, in at least 74% of these situations where reexamination is granted, the PTO cancels or amends at least some of the claims. (*Id.* at 2.) In about 10% of reexamination proceedings, all of the claims of a patent are cancelled. (*Id.*) In light of the high costs to the parties and the strain on judicial resources, the case should be stayed to prevent wasted effort on behalf of the Court for claims likely to be cancelled or amended.

Finally, even if some patent claims survive the reexamination process and the litigation proceeds, the record of the reexamination proceedings will be relevant to and assist the Court and jury in resolving the case, particularly where highly technical subject matter is at issue. The trial can be facilitated by having the focused view of the PTO as to those claims. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). For example, with respect to the Wireless Valley patents, if the case goes forward, Aruba expects to amend its pleadings to assert a defense of inequitable conduct based on Wireless Valley's failure to disclose the SitePlanner 3.0 reference. The views of the PTO regarding this reference and its impact on patentability may be of key importance in establishing materiality. Moreover, with respect to all the Patents-In-Suit, the record of the reexamination proceedings will, in itself, be relevant to the construction of any claims that may survive reexamination (whether such claims are amended or not). Thus, it is in both the Court's and the parties' interest to stay this litigation pending the outcome of the PTO's reexamination in order to eliminate and/or narrow the issues while conserving judicial resources.

## 2. The Early Stage Of This Proceeding Strongly Supports Granting The Stay During Reexamination

The fact that this lawsuit is in its earliest stages is another factor that weighs heavily in favor of staying this case. Indeed, district courts routinely grant stays deferring to PTO reexamination when there has been no discovery taken and no trial date set. *See, e.g., Tap Pharm.*, 70 U.S.P.Q.2d at 1320 (staying litigation pending reexamination because litigation was at an "early stage"); *Alloc*, 2003 U.S. Dist. LEXIS 11917, at *8 (staying litigation pending reexamination in part because discovery had not yet begun and the court had not set a trial date); *Guthy-Renker*, 48 U.S.P.Q.2d at 1060 ("First, this case

10

is in its incipient stages."); *ASCII*, 844 F. Supp. at 1381 (stay granted in part because "the parties are in the initial stages of the lawsuit and have undertaken little or no discovery. Moreover, the case has not been set for trial."). A stay granted at an early stage of a case, like the one requested here, conserves the maximum amount of resources:

> Pausing for a stay, at this point, is more advantageous than a later respite because the issues may be narrowed before discovery begins, allowing the parties to curtail their discovery activities. Requesting a stay early also decreases the likelihood of prejudice to the nonmoving party.

*Sabert Corp. v. Waddington N. Am., Inc.*, No. 06-5423 (JAG), 2007 U.S. Dist. LEXIS 68092, at *21 (D.N.J. Sept. 14, 2007).

A stay is particularly appropriate for this matter. To date, no party has served discovery requests, produced any documents, or taken (or even requested) any depositions. The Court has not yet set a schedule or trial date, and has not had even a single case management conference. As in most complex patent cases, a large portion of the trial evidence is likely to involve experts on numerous technical and economic issues, requiring the parties to invest significant amounts of time and resources to prepare for trial. There is no escaping the reality that a trial in this case will be lengthy and costly, and will likely consume considerable federal resources. To the extent that the PTO's actions will limit or eliminate the parties' and/or the Court's need to address any of the issues currently implicated by the allegations of the Complaint, a stay will undoubtedly conserve valuable time and resources.

### 3.   A Stay Will Not Prejudice Plaintiffs

Plaintiffs will not suffer any prejudice, let alone undue prejudice, if a stay is granted in this matter. As stated above, PTO reexaminations are conducted with "special

11

dispatch," and the PTO gives further priority to patents involved in litigation. Once the PTO grants the reexamination request, it proceeds expeditiously and without delay. MPEP § 2261; MPEP § 2286 (I.).

Granting the requested stay of this litigation does not provide an unfair, tactical advantage to Aruba. Aruba is filing the requests for reexamination as early as practicable following the investigation it initiated after being served with the Complaint in this action. There has been no unreasonable or undue delay. *See KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03 116 JSW, 2006 U.S. Dist. LEXIS 15754, at **8-9 (N.D. Cal. Mar. 16, 2006) (party moving for stay did not engage in dilatory tactics where requests for reexamination and motion for stay were filed within one to three months of patents being asserted); *Target Therapeutics Inc. v. SciMed Life Systems Inc.*, 33 U.S.P.Q.2d 2022, 2023 (N.D. Cal. 1995) (accord). In fact, Aruba notified both the Plaintiffs and the Court of this anticipated motion to stay in early March 2008, just after the '922 patent reexamination request was filed. (*See* Lahav Decl., Exh. 5.) A stay cannot cause Plaintiffs undue prejudice when they have not invested substantial expense and time in the litigation. *See Sabert*, 2007 U.S. Dist. LEXIS 68092, at *21.

In addition, whatever limited delay might result from the reexamination process cannot, by itself, constitute undue prejudice to Plaintiffs. "[P]arties having protection under the patent statutory framework may not 'complain of the rights afforded to others by that same statutory framework.'" *KLA-Tencor*, 2006 U.S. Dist. LEXIS 15754, at *7 (*quoting Pegasus*, 2003 U.S. Dist. LEXIS 8052, at *8). Aruba is "legally entitled to invoke the reexamination process," and its exercise of that entitlement does not, in this case, prejudice Plaintiffs. *See id.*

12

Moreover, the burden Aruba will suffer without a stay far outweighs any potential prejudice the Plaintiffs could suffer from one. Both Symbol and Wireless Valley benefit from the vast financial resources of their corporate parent, Motorola. In 2007, Motorola had $36 billion in net revenue. (*See* Lahav Decl., Exh. 6, at 76.) Symbol alone contributed approximately $2.3 billion to this revenue. (*Id.* at 38.) There can be no legitimate argument that Motorola, and thereby the Plaintiffs, will be put in serious economic jeopardy by delaying the litigation phase of this dispute until the reexamination proceedings are concluded. In contrast, Aruba, formed in 2002, is a relatively small company. In 2007, it had total revenue of $127 million. (*See* Lahav Decl., Exh. 7, at 28.) For Aruba, the economic impact of unnecessary litigation would have a far greater proportionate impact.

The public will also benefit if this litigation is stayed to allow the PTO's reexamination to run its course. The Supreme Court has long recognized the substantial public interest in challenging invalid patents. *See, e.g., Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969) (describing "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain"). By deferring to the PTO and permitting it to reconsider its patentability determination in view of prior art the examiner did not consider during prosecution, the Court will strengthen the public's respect for the patent system by allowing the PTO to correct its earlier error in granting the Plaintiffs' patents.

13

## **CONCLUSION**

The reexaminations requested by Aruba are likely to greatly simplify, if not resolve, the issues in this case. Because this case is at the very earliest stages, a stay in this matter will likely conserve substantial time and resources, and will not prejudice Plaintiffs. Accordingly, Aruba respectfully submits that its motion to stay should be granted.

Of Counsel:

Matthew D. Powers
Brandon D. Conard
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802.3000

Nicholas Groombridge
Paul E. Torchia
Etai Lahav
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310.8000

Dated: April 4, 2008

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Defendant and Counter-Claimant ARUBA NETWORKS, INC.*

14

RLF1-3269898-1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2008,  I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and which has also been served as noted:

### VIA HAND DELIVERY

Richard L. Horowitz
David E. Moore
Potter, Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

### VIA FEDERAL EXPRESS

Eric J. Lobenfeld
Ira J. Shaefer
Lawrence Brocchini
Arun Chandra
Hogan & Hartson, L.L.P.
875 Third Avenue
New York, NY 10022

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

RLF1-3269482-1