**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware corporation, and WIRELESS VALLEY COMMUNICATIONS, INC., a Delaware corporation, | ) ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | C.A. No. 07-519-JJF |
| v. | ) ) ) | **JURY DEMANDED** |
| ARUBA NETWORKS, INC., a Delaware corporation, | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

**SYMBOL TECHNOLOGIES, INC.'S AND WIRELESS VALLEY
COMMUNICATIONS, INC.'S MEMORANDUM IN
OPPOSITION TO DEFENDANT ARUBA NETWORKS, INC.'S
MOTION TO STAY PENDING RE-EXAMINATION OF THE PATENTS-IN-SUIT**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
OF COUNSEL
P. O. Box 951
Wilmington, Delaware 19801
Eric J. Lobenfeld
Tel: (302) 984-6000
Ira J. Schaefer
rhorwitz@potteranderson.com
Lawrence Brocchini
dmoore@potteranderson.com
Arun Chandra
HOGAN & HARTSON L.L.P.
*Attorneys for Plaintiffs*
875 Third Avenue
*Symbol Technologies, Inc. and Wireless Valley*
New York, New York 10022
*Communications, Inc.*
(212) 918-3000

Dated April 21, 2008
861133 / 32106

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ......................................................................5

    I.    Initial Pleadings ...............................................................................................5

    II.    Plaintiffs' Efforts to Seek a Scheduling Order ...............................................6

SUMMARY OF ARGUMENT ...................................................................................................6

STATEMENT OF FACTS .........................................................................................................7

    I.    Symbol And Its '922 And '923 Patents ..........................................................7

    II.    Wireless Valley And Its '454 And '622 Patents ...........................................8

    III.    Aruba's Infringing Sale Of Wireless Communication Devices .....................8

    IV.    Aruba's Re-examinations .................................................................................8

        A.    U.S. Patent No. 7,173,922 ....................................................................8

        B.    U.S. Patent No. 6,625,454 ....................................................................9

        C.    U.S. Patent No. 7,173,923 ..................................................................10

ARGUMENT .........................................................................................................................11

    I.    ARUBA'S MOTION TO STAY SHOULD BE DENIED .........................................11

        A.    Legal Standards ...................................................................................11

        B.    A Stay Would Be Unduly Prejudicial To Symbol And Wireless
            Valley..................................................................................................12

            1.    The Four Re-Examinations Are Likely To Be Lengthy
                Proceedings..............................................................................12

            2.    Aruba's Continuing Infringement Is Harming Symbol and
                Wireless Valley In The Market Place ......................................13

            3.    Aruba's Depleting Resources Will Likely Result In No
                Recovery For Symbol and Wireless Valley If This Case Is
                Stayed......................................................................................14

II.    REEXAMINATION OF THE FOUR PATENTS IN SUIT WILL NOT
       SIMPLIFY THIS CASE:  ARUBA'S CHANCE OF SUCCESS IS LOW ................16

       A.    PTO Statistics .................................................................................................16

       B.    Aruba's Filed Re-Examinations Rely On Previously Cited Prior Art,
             And, Therefore, Are Not Likely To Be Successful .......................................17

CONCLUSION ..............................................................................................................................20

## TABLE OF AUTHORITIES

Page

**CASES**

Agar Corp. v. Multi-Fluid, Inc.,
    983 F. Supp. 1126 (S.D. Tex. 1997) .................................................................17

Akzenta Paneele ± Profile GmbH v. Unilin Flooring N.C. LLC,
    464 F. Supp. 2d 481 (D. Md. 2006) .........................................................16, 19

Arthrocare Corp. v. Smith & Nephew, Inc.,
    310 F. Supp. 2d 638 (D. Del. 2004) ...............................................................16

Cognex Corp. v. National Instruments Corp.,
    C.A. No. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) ...........11, 12

Cooper Technologies Co. v. Thomas & Betts Corp.,
    No. 2:06-CV-242, 2008 WL 906315 (E.D. Tex. Mar. 31, 2008) ...............14, 19

CTF Hotel Holdings, Inc. v. Marriot Intern., Inc.,
    381 F.3d 131 (3d Cir. 2004) ...........................................................................11

Dentsply Intl., Inc. v. Kerr Mfg Co.,
    734 F. Supp. 656 (D. Del. 1990)......................................................................11

George Kessel Intern. Inc. v. Classic Wholesales, Inc.,
    C.A. No. CV-07-323-PHX-SMM, 2008 WL 465302 (D. Ariz. Feb. 15, 2008) ...........4, 14

Landis v. North Am. Co.,
    299 U.S. 248 (1936)................................................................................11, 12

Lectrolarm Custom Services, Inc. v. Vicon Industries, Inc.,
    No. 03-2330 MA/A, 2005 WL 2175436 (W.D. Tenn. Sept. 1, 2005) ...............19

Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.,
    No. 2:97-0660, 1998 WL 1037920 (M.D. N.C. Dec. 17, 1998) ........... 14-15, 16

Rosenthal Mfg. Co., Inc. v. Thermal Equipment, Inc.,
    No. A85-2630-S, 1988 WL 383034 (D. Kan. Oct. 12, 1988) ...........................17

Telemac Corp. v. Teledigital, Inc.,
    450 F. Supp. 2d 1107 (N.D. Cal. 2006) ..........................................................14

Viskase Corp. v. Am. Nat'l Can Co.,
    261 F.3d 1316 (Fed. Cir. 2001)......................................................................11

*Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*,
    C.A. No. 07-226-JJF, 2008 WL 874311 (D. Del. Mar. 31, 2008) ........................4, 11, 19

*Zoetics, Inc. v. Yahoo!, Inc.*,
    C.A. No. 06-108-JJF, 2006 WL 1876912 (D. Del. July 6, 2006).......................................11

## STATUTES

35 U.S.C. § 314.................................................................................................................3

35 U.S.C. § 315.............................................................................................................3, 13

35 U.S.C. § 315(c) ...........................................................................................................3

## OTHER AUTHORITIES

ANSI/IEEE Standard 802.11 (1999ed.).............................................................9, 10, 17

**INTRODUCTION**

Plaintiffs, Symbol Technologies, Inc. ("Symbol") and Wireless Valley Communications ("Wireless Valley") (collectively, "Plaintiffs"), submit this memorandum of law in opposition to Aruba Networks, Inc.'s ("Aruba") Motion to Stay Pending Re-Examination of the patents-in-suit. (D.I. 24.)

Plaintiffs are two of the leading innovators in wireless local area network (WLAN) technology. Aruba is a relatively new technology upstart. Aruba is improperly capitalizing on Symbol's and Wireless Valley's innovations; indeed, Aruba's own press releases brag that it is continuing to expand its market share at the expense of both Symbol and Wireless Valley. Given that Aruba, using Symbol's and Wireless Valley's patented inventions, is negatively impacting the market share of Symbol and Wireless Valley in the short term, the undue prejudice that would result to Plaintiffs, should this case be stayed, is evident. Even if Plaintiffs are ultimately awarded damages for past infringement and Aruba is enjoined, Plaintiffs will not be able to regain goodwill and market share lost to Aruba (and, possibly, others in the market place) during the period of delay.

At the same time it has been expanding its market share at Plaintiffs' expense, Aruba has not had a single profitable quarter since its IPO in March 2007, posting operational losses in the millions of dollars. In fact, two notable Wall Street firms recently downgraded Aruba's stock and noted Aruba's weak financial position. The downgrades resulted in big drops in Aruba's stock price and market capitalization. Thus, Plaintiffs will continue to lose market share to Aruba in the short term, and then, when they ultimately get their day in Court, Aruba could be out of business before paying for Plaintiffs' resulting damages. There is, thus, a strong likelihood that Plaintiffs will suffer irreparable injury if the Court grants a stay.

By way of background, Symbol has had a long history of pioneering innovation in a range of technologies. In fact, in recognition of Symbol's contributions to technology, in 1999, Symbol was awarded the nation's highest honor for technology innovation, the National Medal of Technology for, *inter alia*, "technology innovation and practical application of . . . wireless local area network technologies" (Declaration of Arun Chandra, dated April 21, 2008 ("Chandra Decl.") Exs. 3-4); until then, only eleven other corporations had received this honor, including Bell Laboratories, Merck, 3M, Corning and DuPont.[1] Symbol introduced the market's first modern wireless switch architecture, a breakthrough WLAN architecture that significantly lowers the cost of deploying network infrastructure and drives down the cost of managing, maintaining and upgrading wireless systems. Wireless Valley was also at the forefront of WLAN technology, having invented the breakthrough concept of using a predictive design approach, a three dimensional representation of an environment, and site specific information in the design, implementation and management of wireless networks.

To forestall its day of reckoning, Aruba seeks to stay this litigation pending the re-examinations it has only recently filed, months after this case was commenced. But, a stay of this suit would unduly prejudice Symbol and Wireless Valley, result in needless delay, and frustrate judicial economy. Indeed, Aruba's piecemeal filing of petitions for re-examinations – one *inter partes* and two *ex parte* – makes its strategy apparent: delay, especially since its petitions rely on prior art that was largely considered by the Examiner during the original prosecution or is cumulative thereof. Although this suit has been pending since August 27, 2007,

---

[1] In 2005, Motorola Inc., the parent company of both Symbol and Wireless Valley, was the recipient of the National Medal of Technology. Motorola was recognized for "over 75 years of technological achievement and leadership in the development of innovative electronic solutions, which have enabled portable and mobile communications to become the standard across society." (Chandra Decl. Ex. 5.)

Aruba waited more than five months (until February 25, 2008) to file its first petition for *inter partes* re-examination for U.S. Patent No. 7,173,922; it did so without any prior notice to Symbol or Wireless Valley, and only after Plaintiffs had indicated their intent to seek a Scheduling Order from the Court. Thereafter, Aruba proceeded *seriatim* to file petitions for *ex parte* re-examinations[2] – not *inter partes* re-examination – in a lethargic fashion.[3] Moreover, up to now, Aruba has not filed any petition for a re-examination of U.S. Patent No. 6,973,622, but instead notes that it will do so by the end of April 2008.

A stay pending the completion of all the re-examinations Aruba has initiated would undoubtedly last years. Aruba's *inter partes* re-examination, like the vast majority of such requests, will be stuck inordinately at the U.S. Patent and Trademark Office ("PTO"). Aruba's *ex parte* re-examination will likely fare no better. Indeed, the PTO has not yet decided whether to grant any of the filed petitions, let alone act on them substantively. Furthermore, Aruba's petitions merely repackage the arguments regarding prior art already considered by the PTO during the original prosecution. After the PTO decides whether to grant re-examinations, it will take at least a couple of years before the PTO can issue a re-examination certificate. And then,

---

[2] An *ex parte* re-examination differs from an *inter partes* re-examination. One primary difference is that while an *ex parte* re-examination can be initiated by a third party requestor, that third party has no further involvement in the re-examination proceedings. In contrast, in an *inter partes* re-examination, the third party requester remains intimately involved with the re-examination proceedings and can file written comments addressing issues raised by the PTO's action on the merits and patentee's responses thereto. 35 U.S.C. §§ 314 and 315. Furthermore, because of the third party requestor's involvement in the *inter partes* re-examination proceedings, the third party requester is estopped from asserting at a later time, in any civil action, the invalidity of any of the claims based on any ground which the third party requester raised or *could have* raised during the proceeding if the PTO issues a reexamination certificate confirming the patentability of the claims. 35 U.S.C. § 315(c). Regardless of the type of re-examination, the prejudice to Plaintiffs is the same – severe.

[3] Aruba filed a petition for an *ex parte* re-examination of U.S. Patent No. 6,625,454 on March 28, 2008 and of U.S. Patent No. 7,173,923 on April 3, 2008.

Aruba may further delay the proceeding by appealing to the PTO Board of Patent Appeals and Interferences and then to the Federal Circuit. Such delay would be highly prejudicial to Plaintiffs, especially where wireless technology continues to evolve at a fast pace.

In a very recent case, this Court declined to stay the litigation of a patent suit pending re-examination where the lawsuit was initiated on April 27, 2007, even though defendant filed re-examination requests with the PTO four months later (on August 24, 2007), "alleging that newly discovered prior art raises substantial new questions regarding the patentability of the patents in suit." *Voith Paper GMBH & Co. KG v. Johnsonfoils, Inc.*, C.A. No. 07-226-JJF, 2008 WL 874311, *1 (D. Del. Mar. 31, 2008); *see also George Kessel Intern. Inc. v. Classic Wholesales, Inc.*, C.A. No. CV-07-323-PHX-SMM, 2008 WL 465302, *2 (D. Ariz. Feb. 15, 2008) (noting that "[a]lthough this case is in its early stages, the Court is reluctant to issue a stay of indefinite length. Defendants assert that the PTO must decide whether to grant or deny the reexamination within three months of the request, but the delay could be significant if the request is granted."). The issues implicated by *Voith* and *George Kessel* are similar to the ones here. First, Symbol and Wireless Valley would be unduly prejudiced in not being able to have their patent rights adjudicated in a timely manner. Second, there is little likelihood that the pending re-examination proceedings will do much to simplify the issues that ultimately need to be tried in this case.

Therefore, as explained in more detail below, the Court should deny Aruba's Motion to Stay Pending Re-Examination of the Patents-In-Suit.

## NATURE AND STAGE OF THE PROCEEDINGS

## I.    INITIAL PLEADINGS

Plaintiffs commenced this action on August 27, 2007 by filing their Complaint against

Aruba. (Complaint, dated August 27, 2007 ("Compl."), D.I. 1, attached as Chandra Decl. Ex. 1.[4])

Symbol contends that Aruba infringes Symbol's U.S. Patent No. 7,173,922, entitled "Multiple

Wireless Local Area Networks Occupying Overlapping Physical Spaces" and No. 7,173,923,

entitled "Security In Multiple Wireless Local Area Networks" (the "'922 patent" and "'923

patent," respectively; collectively "Symbol Patents") through its manufacture, use, sale, and/or

offers for sale of certain of Aruba's wireless mobility controllers, access points and related

equipment. (Compl., Counts 3 and 4.)  Wireless Valley asserts that Aruba infringes U.S. Patent

No. 6,625,454 (the "'454 patent"), entitled "Method and System for Designing or Deploying a

Communications Network Which Considers Frequency Dependent Effects" and No. 6,973,622

(the "'622 patent"), entitled "System and Method for Design, Tracking, Measurement, Prediction

and Optimization of Data Communications Networks" (collectively, the "WV Patents") in

connection with the manufacture, use, sale, and/or offers for sale of certain systems and

components, including computer software, for the design, planning, configuring, monitoring,

managing, and optimizing of WLANs. (Compl., Counts 1 and 2.)

On October 17, 2007, Aruba served its Answer and Counterclaims.  (Answer and

Counterclaim of Aruba Networks, Inc. ("Ans."), D.I. 8, attached at Chandra Decl. Ex. 2.)

Aruba's Answer and Counterclaims denied infringement, and purported to set forth affirmative

defenses and declaratory judgment counterclaims.

---

[4]  The patents-in-suit are attached as Exhibits A-D to the Complaint.

On December 10, 2007, along with their Reply to Aruba's Answer and Counterclaims (D.I. 12.), Symbol and Wireless Valley filed a joint motion to strike certain of Aruba's defenses as well as Aruba's so-called "Introduction" to its Answer and Counterclaims as being a gratuitous press release statement that was barred by existing law. (D.I. 13.) Aruba filed its Opposition on January 7, 2008 (D.I. 17), and Plaintiffs filed their Reply on January 22, 2008. (D.I. 18.) The motion is fully briefed.

## II.     PLAINTIFFS' EFFORTS TO SEEK A SCHEDULING ORDER

On February 22, 2008, Plaintiffs approached Aruba with a proposed scheduling order and seeking its comments, but got no response. (Chandra, Decl. Ex. 6.) On February 26, Symbol's counsel again inquired of Aruba's counsel concerning a schedule and asked for a response. (Chandra, Decl. Ex. 7.) There was none. Meanwhile, on February 25, 2008, Aruba filed its petition for *inter partes* re-examination for the '922 patent; Plaintiffs' counsel learned about this petition a few days later. Ultimately, following through on their earlier proposals, Plaintiffs submitted their proposed scheduling order to the Court on March 5. (Chandra, Decl. Ex. 8.) A few days later, Aruba responded, stating its intent to seek a stay of this action in light of its filed re-examination petition and to seek re-examinations of the remaining three patents-in-suit. (Chandra, Decl. Ex. 9.)

## SUMMARY OF ARGUMENT

A stay of this action pending the final outcome of all re-examinations that Aruba has initiated (or plans to initiate) would indefinitely delay this action, and still not result in any benefit to the Court.

1.     The undue prejudice to Symbol and Wireless Valley from waiting until all four re-examinations are complete is likely to be severe. Both Aruba and Plaintiffs are competitors in the same market space of WLAN technology, namely thin access points and wireless switches.

In that space, Aruba openly admits that it has been expanding market share at the expense of Plaintiffs. If Aruba can delay Plaintiffs' day in court while continuing to use their patented inventions, the undue prejudice to Plaintiffs would be extreme. Even if Plaintiffs ultimately prevail, they would not regain goodwill and market share lost to Aruba (and other competitors) during the period of delay. Additionally, evidence shows that Aruba continues to deplete its financial resources at a steady rate. Thus, if there is a stay of this action pending re-examination, there is a serious risk that Aruba may not be around by the time Symbol and Wireless Valley manage to finally get their day in Court.

2.     Moreover, Aruba is seeking re-examination based largely on prior art that was considered by the Examiner during the original prosecution, or is merely cumulative thereof. Thus, the likelihood of Aruba succeeding in the re-examinations is not very high, and the Court will not benefit from the re-examination proceedings since they will not simplify any issues that need to ultimately be considered by the Court.

## STATEMENT OF FACTS

### I.     SYMBOL AND ITS '922 AND '923 PATENTS

Symbol is a Delaware corporation with its principal place of business in Holtsville, New York. (Compl. ¶ 1; Ans. ¶ 70.) Symbol, a wholly-owned subsidiary of Motorola since January 2007, is the owner by assignment of the '922 patent and the '923 patent.

Both Symbol Patents relate to wireless communications, including through WLANs, between mobile units and access ports (sometimes called base stations or RF Ports) using a wireless protocol and what the Symbol Patents call cell controllers (sometimes called switches) that are common to a plurality of access ports. (*See, e.g.*, '922 patent, Claim 1; '923 patent, Claim 1.)

## II.    WIRELESS VALLEY AND ITS '454 AND '622 PATENTS

Wireless Valley is a Delaware corporation with its principal place of business in Austin, Texas. Wireless Valley owns by assignment the '454 patent and the '622 patent. The Wireless Valley Patents pertain generally to methods and systems for designing, planning, configuring, monitoring, managing and optimizing wireless communications networks. (*See, e.g.*, '454 patent, Claim 1 ("A method for designing or deploying a communications network. . . ."); '622 patent, Claim 1 ("A method for analyzing and adjusting a wireless communication network. . . .").)

## III.    ARUBA'S INFRINGING SALE OF WIRELESS COMMUNICATION DEVICES

Founded in 2002, Aruba is a Delaware corporation, with its principal place of business in Sunnyvale, California. Aruba designs, manufactures and sells in the United States wireless switches (which it calls mobility controllers), access points, management servers, and related software for use in connection with WLANs, as well as software for designing, planning, configuring, monitoring, managing, and optimizing WLANs. (Comp. ¶ 3.) In this respect, Aruba directly competes with Symbol and Wireless Valley.

## IV.    ARUBA'S RE-EXAMINATIONS

### A.    U.S. Patent No. 7,173,922

On or about February 25, 2008, Aruba filed its first petition for *inter partes* re-examination of the '922 patent. While purporting to raise five new questions of patentability, the petition relies on prior art that is either the same as or merely cumulative of prior art before the Examiner of the '922 application during prosecution. Specifically, two of the primary references submitted by Aruba, namely U.S. Patent No. 6,665,536 to Ronald L. Mahany (the "Mahany patent", attached as Chandra Decl. Ex. 12) and U.S. Patent No. 6,421,714 to Girish Rai *et al.* (the

"Rai '714 patent" , attached as Chandra Decl. Ex. 13)[5] were already considered by the Examiner

in the USPTO (Chandra Decl. Ex. 10); indeed, the Mahany patent was the main reference

applied by the Examiner during prosecution, and the patent was allowed over that reference.

(Chandra Decl. Ex. 10.)  With respect to the ANSI/IEEE Standard 802.11 (1999 ed.), it is far

from "new" and actually is referenced in the '922 patent.  (*See* "Background of Invention," at

column 1, lines 15-20.)  Again, the Examiner was fully aware of this standard during prosecution.

Finally, Aruba's own re-examination petition recognizes that U.S. Patent No. 7,149,193 to Mo-

Han Fong et al. (the "Fong patent") is cumulative of the Mahany patent and Rai '714 patent,

since it contains duplicate entries in the claim charts submitted to the PTO.[6]  (*Compare*

Declaration of Etai Lahav, dated Apr. 4, 2008 ("Lahav Decl.") Ex. 1: Request for Ex Parte Re-

examination of the '922 patent, pp. 23-31 *with* Lahav Decl. Ex. 1, pp. 178-187, D.I. 27**.**)

###### B.    U.S. Patent No. 6,625,454

On March 28, 2008, Aruba filed a petition for an *ex parte* – not *inter partes* – re-

examination of the '454 patent, which purports to raise five new questions of patentability.  But

all the questions of patentability essentially depend on Aruba's submitted "SitePlanner 3.0

User's Manual" (1998) ("the SitePlanner reference") to teach all limitations of the independent

claims.  Aruba asserts that this reference was not before the Examiner during prosecution.  Once

again, Aruba does not tell the Court the whole story.  The '454 patent, at column 6, lines 17-27,

---

[5]  To convey the impression that they are relying on "new" prior art that was not before the PTO
originally, Aruba does not tell the Court (nor the PTO in its re-examination petition) that U.S.
Patent No. 6,414,950 to Girish Rai *et al.*, which has the identical disclosure as the Rai '714
patent, was before the Examiner during prosecution of the '922 patent.  (*Compare* Chandra Decl.
Ex. 11, Figures 1-37 *with* Chandra Decl. Ex. 13, Figures 1-37.)  Thus, the Examiner had the
disclosure of the Rai '714 patent in front of him during the original prosecution.

[6]  The remaining pieces of prior art cited by Aruba were applied only against dependent claims,
not the broad independent claims that Symbol is asserting.

states that the invention is designed specifically for use with the SitePlanner suite of products and, at column 7, lines 31-36, incorporates by reference "SitePlanner 3.16 for Windows 95/98/NY User's Manual" (Wireless Valley Communications, Inc. 1999). The 3.0 version, relied on by Aruba, is, in all material respects, the same as the 3.16 version referenced in the '454 patent. Additionally, the Examiner had before him another Wireless Valley patent, U.S. Patent No. 6,493,679 (which issued from Application No. 09/318,842 (Chandra Decl. Ex. 14)), which describes the SitePlanner product (*see* U.S. Patent No. 6,973,622, column 9, lines 24-30 (noting that Wireless Valley's SitePlanner is described in, *inter alia*, Application No. 09/318,842), attached at Chandra Decl. Ex. 29.)

### C.    U.S. Patent No. 7,173,923

Finally, on April 3, 2008, Aruba filed yet another petition for an *ex parte* re-examination, directed to the '923 patent, purporting to raise three new questions of patentability. Here, all of the prior art cited by Aruba was before the Examiner of the '923 application during prosecution. Aruba has again applied the Rai '714 patent without revealing that it has the same disclosure as U.S. Patent No. 6,414,950 to Rai that was before the Examiner during prosecution. Aruba also claims to apply the ANSI/IEEE Standard 802.11 (1999 ed.) as a new reference; however, the '923 patent, like the '922 patent, specifically references this standard in the "Background of Invention." Accordingly, the Examiner was aware of this standard during prosecution and allowed the claims.[7]

---

[7] The remaining pieces of prior art cited by Aruba were applied only against dependent claims, not the broad independent claims that Symbol is asserting.

## ARGUMENT

**I.    ARUBA'S MOTION TO STAY SHOULD BE DENIED**

### A.    Legal Standards

A "court is not required to stay judicial resolution in view of the reexaminations," *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001). "The decision to grant or deny a stay is within the court's broad range of discretionary powers." *Voith Paper*, 2008 WL 874311, *2; *accord Zoetics, Inc. v. Yahoo!, Inc.*, C.A. No. 06-108-JJF, 2006 WL 1876912, *1 (D. Del. July 6, 2006); *Cognex Corp. v. National Instruments Corp.*, C.A. No. 00-442-JJF, 2001 WL 34368283, *1 (D. Del. June 29, 2001).

Further, "[j]udicial efficiency does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceedings in an alternative forum." *CTF Hotel Holdings, Inc. v. Marriot Intern., Inc.*, 381 F.3d 131, 139 (3d Cir. 2004). "The [party seeking a] stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936); *see also Dentsply Intl., Inc. v. Kerr Mfg Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).

Whether to grant a stay depends on several factors, including "(1) whether a stay would unduly prejudice or present a clear tactical advantage to the non-movant; (2) whether a stay will simplify the issues raised by the parties; and (3) whether discovery is complete and a trial date has been set." *Cognex Corp.*, 2001 WL 34368283, *1. Nonetheless, "[i]n determining whether a stay is appropriate, the court should 'weigh the competing interests of the parties and attempt to maintain an even balance.'" *Id.* (quoting *Dentsply*, 734 F. Supp. at 658).

**B.    A Stay Would Be Unduly Prejudicial To Symbol And Wireless Valley**

The Supreme Court has noted that "undue prejudice" is the most important factor to be

considered by a court in deciding whether to issue a stay. *See Landis*, 299 U.S. at 255. Indeed,

if there is "a fair possibility" of prejudice to the party opposing a stay, a court must balance that

prejudice against the moving party's claims of harm. *See Cognex Corp.*, 2001 WL 34368283, *1.

Here, as discussed below, should the Court grant the stay, there is *more* than "a fair

possibility" that Plaintiffs will be unduly prejudiced for several reasons. First, the four re-

examinations are likely to take a long time, especially since the PTO has not yet decided whether

to grant any of the filed petitions, let alone act on them substantively. Second, Aruba continues

to increase its market share at Plaintiffs' expense, based on its continuing infringement of the

patents-in-suit. Finally, Aruba's financial condition is, to put it mildly, precarious; thus, if this

case is stayed pending re-examination, there is a strong chance that by the time this case resumes,

Aruba may not be around for Plaintiffs to recover their suffered damages. At the same time, the

erosion of Plaintiffs' prices, goodwill and market share will be difficult to replace.

**1.    The Four Re-Examinations Are Likely To Be Lengthy Proceedings**

Contrary to Aruba's self-serving assertion that the re-examination of *all four* patents-in-suit will

be "with special dispatch" (*see* Aruba's Opening Brief ("Aruba's Br.") at 5-6) that appears

unlikely. The PTO has not yet decided whether to grant any of the filed petitions, let alone act

on them substantively. Once the PTO decides to grant re-examinations, it will take at least a

couple of years before the PTO can issue a re-examination certificate. As discussed below, if the

PTO acts on the petitions substantively, Aruba's petitions are not likely to be successful since

they rely on prior art already considered by the PTO during the original prosecution. Even after

the PTO issues the re-examination certificate, the requesting party (in this case, Aruba) may

further delay the proceeding by appealing to the PTO Board of Patent Appeals and Interferences and then to the Federal Circuit. *See* 35 U.S.C. § 315.

2.    **Aruba's Continuing Infringement Is Harming Symbol and Wireless Valley In The Market Place**

There is no dispute that Aruba competes with both Symbol and Wireless Valley in the market place. In particular, Aruba manufactures and markets thin access points and wireless switches that use technology covered by two of the patents-in-suit (*i.e.*, the '922 and the '923 patents). Symbol pioneered this technology and currently manufactures and markets similar products that use technology covered by the '922 and the '923 patents. (*Compare, inter alia,* the Aruba AP-70 *with* Symbol's AP300 and *compare* Aruba's MC-2400 *with* Symbol's WS5100[8].) Similarly, both Aruba and Wireless Valley commercialize software for planning and modeling WLAN that use technology covered by the remaining two patents-in-suit (*i.e.*, the '454 and '622 patents). (*Compare, inter alia,* the Aruba Mobility Management System *with* Wireless Valley's EnterprisePlanner or LANPlanner[9].)

As Aruba's own press releases brag, it is continuing to expand its market share at the expense of both Symbol and Wireless Valley. (Chandra Decl. Ex. 22.) Based on a recent report issued by Dell Oro Group, a leading industry analyst, Aruba boasts that its share of the enterprise WLAN market increased from 5% in the second quarter of 2005 to 10% in the same time period of 2007, and during that period "Aruba displaced [Symbol and Wireless Valley] as the world's second largest enterprise wireless LAN supplier." (Chandra Decl. Ex. 22.) Given that Aruba, using Symbol's and Wireless Valley's patented inventions, is negatively impacting the market

---

[8] The datasheets for Aruba AP-70, Symbol AP300, Aruba MC-2400 and Symbol WS5100 are attached as Chandra Decl. Exs. 15 to 18, respectively.

[9] The datasheets for Aruba Mobility Management System, Wireless Valley EnterprisePlanner and Wireless Valley LANPlanner are attached as Chandra Decl. Exs. 19 to 21, respectively.

13

share of Symbol and Wireless Valley, the undue prejudice to Plaintiffs is evident. *See Cooper Technologies Co. v. Thomas & Betts Corp.*, No. 2:06-CV-242, 2008 WL 906315, *1 (E.D. Tex. Mar. 31, 2008) ("Cooper and Thomas & Betts are direct competitors. In addition, the PTO has not provided any definitive guidance on the length of time required for reexamination. Accordingly, the potential delay for an indefinite period would likely prejudice Cooper."). Indeed, in another recent news article, the Dell Oro Group explained that larger market share translates into greater future sales, because Information Technology (IT) consumers choose to invest in products of companies they perceive as more stable and more likely to provide future services. (Chandra Decl. Ex. 23.) Thus, even if Plaintiffs are ultimately awarded damages for past infringement and Aruba is enjoined, Plaintiffs may not be able to regain goodwill lost to Aruba (and other competitors) during the period of delay. *See Cooper Technologies*, 2008 WL 906315, *1; *see also George Kessel*, 2008 WL 465302, *2 ("A stay could prejudice Plaintiffs by delaying access to discovery and allowing Defendants' alleged infringement to continue in the interim."). Furthermore, Aruba's continued infringement, prolonged by a stay, will encourage others to follow in Aruba's footsteps and further erode Plaintiffs' goodwill and market share.

### 3.    Aruba's Depleting Resources Will Likely Result In No Recovery For Symbol and Wireless Valley If This Case Is Stayed

Notwithstanding Aruba's expansion of market share at the expense of Plaintiffs, Aruba has not had a single profitable quarter since its IPO in March 2007, posting operational losses in the millions of dollars. If this suit is delayed, Symbol and Wireless Valley may well be unable to recover their damages from Aruba, which continues to face operating losses each quarter. *See Telemac Corp. v. Teledigital, Inc.* ,450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (denying stay in part because defendants' consistent losses in telecommunications technology business called into question their ability to ultimately pay infringement damages). *See also Remington Arms Co.,*

*Inc. v. Modern Muzzleloading, Inc.,* No. 2:97-0660, 1998 WL 1037920, at *2-3 (M.D. N.C. Dec. 17, 1998) ("since a stay for reexamination could last for years ... [Plaintiff's] prayer for relief to enjoin Modern from further infringement may no longer have value as technology or market conditions change.") (internal quotations omitted).

Seeking to cast itself as a David faced with a Goliath, Aruba notes that it was formed in 2002, is a relatively small company and had total revenues of $127 million in 2007. (Aruba Br. at 13.) The short response to this is, "So what?" More important is the rest of the story. Aruba's Initial Public Offering ("IPO") in late March 2007, at $11 per share raised $88 million for working capital and general corporate purposes. (Chandra Decl. Ex. 24.) A week later, a Wall Street analyst questioned whether Aruba could outpace its growing operational costs and become a profitable company:

> By growing its operating expenses in the ballpark of dollar for dollar, [Aruba] is not shifting close to profitability even with the increased revenue growth. This is a very competitive niche and it appears [Aruba] is plowing a substantial amount of expense money into sales and markets to compete with Cisco. The result is that [Aruba] will actually lose more money in FY '07 than in FY '06 even with the 44% revenue growth.

(Chandra Decl. Ex. 24.) Indeed, since its IPO, Aruba has not had a single profitable quarter, posting operational losses in the millions of dollars. Recently, some Wall Street analysts have recognized that Aruba's stock, trading at about $5, which is less than half the price at which it went public barely a year ago and about 80 percent lower than its high of $23.85, is nevertheless overvalued. (*See* Chandra Decl. Ex. 25 (pp. 18-20) and Ex. 26.) Notably, Goldman Sachs recently downgraded Aruba's stock from neutral to sell and J. P. Morgan downgraded Aruba's stock from neutral to underweight, resulting in big drops in Aruba's stock price and market capitalization. (Chandra Decl. Ex. 25 (pp. 18-20) and Ex. 26.) The market sentiment on Aruba is negative. (Chandra Decl. Ex. 27.)

15

Plaintiffs respectfully submit that they should not be put in the position of losing market share to an infringing competitor in the near term, who could be out of business when the Plaintiffs get their day in Court (before paying for Plaintiffs' resulting damages). Indeed, similar to the Courts' concerns in *Teledigital and Remington Arms*, there is a strong likelihood that Plaintiffs will suffer irreparable injury if the Court grants a stay and delays Plaintiffs' day in court. Aruba's claim that it would suffer an economic burden in defending this lawsuit does not compare to the very real possibility of irreparable harm to Plaintiffs.

## II.    REEXAMINATION OF THE FOUR PATENTS IN SUIT WILL NOT SIMPLIFY THIS CASE:  ARUBA'S CHANCE OF SUCCESS IS LOW

### A.    PTO Statistics

According to statistics from the PTO, the PTO confirms the original claims at least twice as often as it cancels all of the original claims. (Chandra Decl. Ex. 28.) Indeed, there is a strong likelihood that at least some of the claims of the patents-in-suit will remain after the re-examination. *See Akzenta Paneele ± Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 483 (D. Md. 2006) (noting that nearly ninety percent of re-examinations confirm patentability). In *Akzenta*, the court noted: "It has recently been observed that the PTO confirms all claims in approximately 24% of the cases, cancels all claims in approximately 12% of the cases, and changes some claims in approximately 64% of the cases." *Id.* at 483; *see also Arthrocare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 645 (D. Del. 2004) (discussing U.S. Patent No. 5,697,536, where all "sixty-four" original claims were confirmed after three and a half years of prosecution). Of course, the remaining claims will continue to relate to and cover the subject matter disclosed in the patents, which will not change during the re-examination.

16

**B.    Aruba's Filed Re-Examinations Rely On Previously Cited Prior Art, And, Therefore, Are Not Likely To Be Successful**

The likelihood that the original claims of the patents-in-suit will be confirmed after a lengthy re-examination process is great here, where Aruba's three petitions rely on prior art that was in front of the Examiners during the original prosecution. This means that the Court should proceed with this litigation, since it already has the benefit of the PTO's particular expertise in evaluating the prior art Aruba considers relevant, and Aruba says nothing to suggest a different interpretation of the prior art. *See Agar Corp. v. Multi-Fluid, Inc.,* 983 F. Supp. 1126, 1127 (S.D. Tex. 1997) (finding it unnecessary to stay the case during a re-examination where the PTO had already considered the same prior art in a prior re-examination); *accord Rosenthal Mfg. Co., Inc. v. Thermal Equipment, Inc.*, No. A85-2630-S, 1988 WL 383034, *1 (D. Kan. Oct. 12, 1988). More fundamentally, Aruba's claim that "the PTO was not given critical prior art," and that the PTO will likely invalidate the four patents-in suit is devoid of any factual basis. (*See* Aruba Br. at 3.) As laid out more fully below, the exact opposite is true.

With respect to the '922 patent, Aruba relies on the Mahany patent, the Rai '714 patent, the ANSI/IEEE Standard 802.11 of 1999 and the Fong patent. The Examiner was aware of the Mahany patent, the disclosures of the Rai '714 patent and the ANSI/IEEE Standard 802.11 of 1999. The only purportedly new reference is the Fong patent, but it is cumulative of the Mahany patent and Rai '714 patent; moreover, its weakness is readily apparent from the fact that Aruba does not rely on it as a primary reference. Thus, given that the prior art cited by Aruba is simply a rehash of references already considered by the Examiner, it is unlikely that these references will have any patentable effect on the claims. Similarly, with respect to the '923 patent, Aruba is again rehashing references that were considered by the Examiner during prosecution, and, therefore, it is unlikely that these references will have any patentable effect on the claims.

With respect to the '454 patent, all questions of patentability depend on the SitePlanner reference. Though Aruba claims that the SitePlanner reference was not before the Examiner, that is not fully accurate. The '454 patent incorporates by reference version 3.16 of SitePlanner reference at column 6, lines 17-27 and column 7, lines 31-36, and the Examiner had U.S. Patent No. 6,493,679 that issued from Application No. 09/318,842 (Chandra Decl. Ex. 14) before him which describes the SitePlanner product. (*See* Chandra Decl. Ex.29: U.S. Patent No. 6,973,622, column 9, lines 24-26 (mentioning that the SitePlanner product is described in, *inter alia*, Application No. 09/318,842).) Moreover, as stated in the '454 patent, the invention of the '454 patent was intended to be an improve on the then-existing SitePlanner program. *See* '454 patent, column 6, lines 17-27 and column 7, lines 31-36. For example, one improvement is the running of prediction models using frequency dependent characteristics of system components in calculations that predict the performance characteristics of a communications network. (*See* '454 patent, column 1, lines 38-44; column 3, line 61 to column 4, line 1; column 5, lines 11-19; column 18, lines 8-37; claims 1-2.) To attempt to shoehorn this limitation into the SitePlanner reference, Aruba simply plucks a few irrelevant paragraphs from the SitePlanner manual that relate to "channels," (Lahav Decl. Ex. 2: Request for Ex Parte Re-examination of the '454 patent, pp. 10-12, D.I. 27), when the '454 patent disclosure makes it clear that channels have nothing to do with this limitation.

Plaintiffs submit that in light of the weakness of Aruba's chosen prior art references, the likelihood of success on its re-examination petitions is low. Further, with respect to the *ex parte* re-examinations, even if the PTO were to rule in favor of Symbol and Wireless Valley, Aruba would still be free to reargue to the Court the very same points contained in its re-examination petitions to the PTO. Therefore, the Court will not benefit as there will not be any simplification

18

of issues. *See Cooper Technologies*, 2008 WL 906315, *2. Indeed, our case is very similar to

*Cooper Technologies*, where the court noted:

> If the court stays the '791 proceedings, Thomas & Betts will be
> estopped from making the same invalidity arguments in this case
> that it makes to the PTO during the reexamination proceeding. 35
> U.S.C. § 315(c). This estoppel will usually simplify the issues in
> the case. However, in this action, the '103 patent and the '791
> patent share a written description, and the claims of both patents
> are directed to closely-related subject matter. Because the '103
> patent is subject to *ex parte* reexamination, Thomas & Betts will
> not be estopped from urging invalidity arguments in this case
> against the '103 patent that are similar to the invalidity arguments
> it makes against the '791 patent during reexamination. The related
> nature of the patents-in-suit, combined with the *ex parte*
> reexamination of the '103 patent, counteract the effects of the *inter
> partes* reexamination proceeding. As such, this factor weighs
> against staying this case.

*Id.*; *see also Voith Paper*, 2008 WL 874311, *2; *Akzenta Paneele*, 464 F. Supp. 2d at 486 ("It is

more likely, . . . that the claims will not be totally cancelled, given the statistics cited above. As

a result, even after reexamination, invalidity will continue to be an issue so a stay would not

preserve many resources."); *Lectrolarm Custom Services, Inc. v. Vicon Industries, Inc.*, No. 03-

2330 MA/A, 2005 WL 2175436, *3 (W.D. Tenn. Sept. 1, 2005) (denying a stay and among the

reasons, noting, *inter alia*, that "reexamination only deals with invalidity from printed prior art.

Unless all claims were invalidated, a result that has a one-in-ten probability, this court would still

need to deal with issues concerning other types of prior art, liability, and damages."). Thus,

there is no reason to delay Symbol and Wireless Valley's day in court.

## CONCLUSION

For the foregoing reasons, Aruba's Motion to Stay Pending Re-Examination of the

Patents-In-Suit should be denied.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York  10022
(212) 918-3000

Dated  April 21, 2008
861133 / 32106

By: */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P. O. Box 951
    Wilmington, Delaware  19801
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiffs*
*Symbol Technologies, Inc. and Wireless Valley*
*Communications, Inc.*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on April 21, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on April 21, 2008, I have Electronically Mailed the document to the

following person(s):

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899
cottrell@rlf.com

Matthew D. Powers
Vernon M. Winters
Brandon C. Conard
Jason D. Kipnis
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
matthew.powers@weil.com
vernon.winters@weil.com
brandon.conard@weil.com
jason.kipnis@weil.com

Nicholas Groombridge
Paul E. Torchia
Etai Lahav
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
nicholas.groombridge@weil.com
paul.torchia@weil.com
etai.lahav@weil.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

816924 / 32106