**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

SYMBOL TECHNOLOGIES, INC., and
WIRELESS VALLEY COMMUNICATIONS,
INC.,

               Plaintiffs,

    v.

ARUBA NETWORKS, INC.,

               Defendant.

C.A. No. 07-519-JJF

---

**REPLY BRIEF IN SUPPORT OF DEFENDANT ARUBA NETWORKS, INC. MOTION
TO STAY PENDING REEXAMINATION OF THE PATENTS-IN-SUIT**

Of Counsel:

Matthew D. Powers
Brandon D. Conard
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802.3000

Nicholas Groombridge
Paul E. Torchia
Etai Lahav
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310.8000


Dated: May 1, 2008

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700

*Attorneys for Defendant and Counter-Claimant
ARUBA NETWORKS, INC.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

I.     INTRODUCTION .......................................................................................................... 1

II.    ARUBA'S REEXAMINATION REQUESTS ARE BASED ON MATERIAL
       PRIOR ART THAT WAS NEVER DISCLOSED TO OR CONSIDERED BY
       THE PTO ......................................................................................................................... 2

       A.    The '454 Reexamination Corrects Patentee's Failure To Disclose The
             SitePlanner 3.0 Manual ....................................................................................... 3

       B.    The '622 Reexamination Corrects The Patentee's Misleading Submission
             Of An Incomplete SitePlanner Manual ............................................................... 5

       C.    The '922 Reexamination Relies Upon Several References That Were Not
             Before The Examiner ........................................................................................... 6

       D.    The '923 Reexamination Relies Upon An 802.11 Manual That Was Not
             Before The Examiner ........................................................................................... 8

III.   A STAY PENDING REEXAMINATION WILL SIMPLIFY THE CASE AND
       AVOID WASTEFUL LITIGATION COSTS ............................................................... 8

IV.    THE BALANCE OF POTENTIAL PREJUDICE TIPS SHARPLY IN ARUBA'S
       FAVOR ......................................................................................................................... 11

       A.    Aruba Faces Clear Hardship And Inequity From Proceeding With
             Unnecessary And Costly Litigation ................................................................... 11

       B.    Plaintiffs Will Not Be Prejudiced By A Stay .................................................... 12

             1.    Plaintiffs Will Not Suffer Prejudice From Aruba's Presence
                   In The Market ......................................................................................... 12

             2.    Plaintiffs Will Not Suffer Prejudice Due To An Inability To
                   Collect Money Damages ......................................................................... 13

       C.    A Stay Pending Reexaminations Does Not Impose An Unreasonable Or
             Undefined Delay ................................................................................................. 15

             1.    Aruba Moved Promptly And In Good Faith To Get These
                   Reexaminations On File .......................................................................... 15

             2.    Reexaminations Typically Impose A 24-Month Delay ............................ 16

V.     CONCLUSION ............................................................................................................ 17

i

## TABLE OF AUTHORITIES

### CASES

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
   No. 06-514, 2007 WL 2892707 (D. Del. Sept. 30, 2007)...................................... 10, 12

*Donnelly Corp. v. Guardina Industrial Corp.*,
   No. 05-74444, 2007 WL 3104794 (E.D. Mich. Oct. 22, 2007)................................ 16

*Emhart Industrial, Inc. v. Sankyo Seiki Manufacturing Co., Ltd.*,
   No. 85 C 7565, 1987 WL 6314 (N.D. Ill. Feb. 2, 1987)....................................... 11, 13

*KSR International v. Teleflex Inc.*,
   127 S. Ct. 1727 (2007)................................................................................. 7

*Laitram Corp. v. NEC Corp.*,
   952 F.2d 1357 (Fed. Cir. 1991)....................................................................... 3, 9

*In re Laughlin Products Inc.*,
   265 F. Supp. 2d 525 (E.D. Pa. 2003)............................................................... 9, 12

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*,
   No. C06-2252, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007)................................... 12

*Pegasus Development Corp. v. DirecTV, Inc.*,
   No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003)............................ 15

*Pfizer, Inc. v. Apotex, Inc.*,
   480 F.3d 1348 (Fed. Cir. 2007)....................................................................... 7

*Photoflex Products, Inc. v. Circa 3 LLC*,
   No. C04-03715, 2006 WL 1440363 (N.D. Cal. May 24, 2006)............................... 16

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995)........................................................................ 13

*Stryker Trauma S.A. v. Synthes*,
   No. 01-3879, 2008 WL 877848 (D. N.J. Mar. 28, 2008)...................................... 16

*Tap Pharm Products Inc. v. Atrix Laboratoriess, Inc.*,
   70 U.S.P.Q. 2d 1319 (N.D. Ill. 2004)............................................................... 9

*Tomco 2 Equip. Co. v. Southeastern Agri-Systems, Inc.*,
   No. 1:06-CV-2559, 2008 WL 489005 (N.D. Ga. Feb. 19, 2008).......................... 12, 13

*Tse v. Apple, Inc.*,
   No. C06-06573, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007)................................. 9

*Wireless Spectrum Tech. Inc. v. Motorola Corp.*,
   57 U.S.P.Q. 2d 1662 (N.D. Ill. 2001)............................................................... 10

### STATUTES

35 U.S.C. § 102(b)....................................................................................... 4

## FEDERAL REGULATIONS

37 C.F.R. § 1.97 ........................................................................................................... 4, 6, 8

37 C.F.R. § 1.98 ........................................................................................................ 4, 5, 6, 8

## OTHER AUTHORITY

M.P.E.P. § 609.04 ......................................................................................................... 4, 6, 8

M.P.E.P. § 609.06 ................................................................................................................ 8

## I.    INTRODUCTION

In its motion, Aruba showed that all of the equitable factors favoring a stay of proceedings apply with particular force in this case. In their response, Plaintiffs attempt to cast every imaginable aspersion at Aruba, but in the end concede the fundamental facts supporting Aruba's motion.

Each of the patents-in-suit faces a significant new challenge to its validity on reexamination before the United States Patent and Trademark Office ("PTO").[1] Plaintiffs cannot and do not dispute that the prior art Aruba uncovered is highly material to the patentability of their claims. Instead, Plaintiffs attempt to dismiss this art with the incorrect and unsupported assertion that it is "the same" as the prior art already before the examiner. These arguments are belied by Plaintiffs own actions in the PTO, which clearly show that Plaintiffs knew that this art was not only highly pertinent but also non-cumulative. In fact, these prior art references directly contradict many of the arguments that Plaintiffs made to the PTO in order to gain allowance of the claims. As a result, to borrow their phrase, Plaintiffs have their own "day of reckoning" coming, at the PTO.

Plaintiffs also concede that the claims will likely change during reexamination proceedings. The very statistics Plaintiffs cite in their brief show that over 75% of reexamination proceedings result in a modification to the claim language. In this case, where all four patents are exposed to particularly serious new questions of patentability, it is highly likely that the PTO will at the very least force significant, substantive narrowing of many of the claims

---

[1] Aruba filed the fourth and final re-examination request, relating to the '622 patent, on April 25, 2008, attached as Exhibit A to the Second Declaration of Etai Lahav (hereinafter "Second Lahav Decl., Exh. X"), filed herewith. As a result, all four patents asserted in the case are now the subject of reexamination requests.

1

at issue. Even Plaintiffs' own numbers show that proceeding now will likely necessitate the wasteful re-litigation of issues that the Court would decide.

Finally, Plaintiffs' own brief establishes that the balance of the hardships in this case strongly favors Aruba. Plaintiffs take particular glee in noting, on page after page, that Aruba has relatively little cash, compared to a giant like Motorola, to pay for this litigation. Plaintiffs even make the incorrect and irresponsible claim that Aruba will soon go out of business. That message, clearly inconsistent with Plaintiffs' claim of prejudice, is little more than a veiled message to the market that Plaintiffs intend to bury Aruba with litigation costs. Congress created the reexamination procedure precisely to stop this type of abuse. Because the burden to Aruba from prematurely pressing forward with this case far outweighs any supposed prejudice to Plaintiffs, Aruba's motion should be granted.

## II.    ARUBA'S REEXAMINATION REQUESTS ARE BASED ON MATERIAL PRIOR ART THAT WAS NEVER DISCLOSED TO OR CONSIDERED BY THE PTO

Plaintiffs' opposition to the motion to stay is premised largely on the argument that "Aruba's filed reexaminations rely on previously cited prior art, and, therefore, are not likely to be successful." (Opp. at 17). (D.I. 28) This assertion is demonstrably incorrect. Each reexamination request relies upon a number of references that were not considered by the PTO, along with some that were. Plaintiffs contend that, because some of the referenced art was already before the patent office, the reexaminations will not affect the claims. That argument is also wrong. There is nothing unusual with submitting a reexamination request based in part on art that the office previously considered (especially where the art relates to features covered only in dependent claims). The older references provide valuable context to the arguments that the Plaintiffs initially made to the PTO to have their claims allowed. The new references show, with particular force in this case, that had the PTO had all the pertinent art before it, Plaintiffs

2

would not have been able to make their arguments and consequently would have had to further narrow their claims or abandon their applications altogether. The combinations of prior art that Aruba has presented result in serious invalidity questions, for all four patents, that will likely result in the cancellation or further narrowing of the claims.

### A.    The '454 Reexamination Corrects Patentee's Failure To Disclose The SitePlanner 3.0 Manual

The prosecution leading to the '454 patent provides a textbook example of when a reexamination can be the most effective. Congress created the reexamination process as a low-cost means for the PTO to correct mistakes in patent claims and reconsider patent validity in light of those mistakes. *See Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1360 (Fed. Cir. 1991). Aruba's '454 reexamination request seeks to correct just such a mistake—an omission of critical prior art from the patent file that Wireless Valley knew was material and non-cumulative.

Aruba has asked the PTO to reassess the validity of the '454 patent in light of the SitePlanner 3.0 User Manual. (Declaration of Etai Lahav, Exh. 2 (hereinafter "Lahav Decl., Exh. X"), filed with Aruba's Motion to Stay). (D.I. 27). This manual was never given to the examiner. The SitePlanner 3.0 Manual, dated 1998, describes a commercial embodiment of the patented technology that Wireless Valley had on sale at least two years before the '454 patent was filed. *Id.* Plaintiffs do not dispute that the SitePlanner 3.0 Manual is highly material prior art that Plaintiffs were duty-bound to disclose to the examiner. Instead, Plaintiffs argue that Wireless Valley satisfied this obligation by mentioning a later, incomplete version, of a different product manual, called SitePlanner 3.16, in the patent's specification. (Opp. at 18). This excuse fails for multiple reasons.

Plaintiffs argue that mentioning "SitePlanner 3.16 [dated 1999]" in the patent's specification was enough to put the SitePlanner 3.0 Manual before the examiner. Even if these

3

manuals were identical, as Plaintiffs contend, that argument is incorrect as a matter of law. (Opp. at 10). To be considered by the examiner, the prior art must be disclosed in an Information Disclosure Statement ("IDS"), and a copy of each non-patent reference must be given to the examiner. *See e.g.*, 37 C.F.R. §§ 1.97(i), 1.98, and M.P.E.P. § 609.04(a) (list of material prior art "may not be incorporated into the specification . . . but must be submitted in a separate paper.") Mere mention of a prior art reference in the specification is wholly insufficient, and Plaintiffs do not dispute that they never gave a copy of this reference to the examiner.

Moreover, in this case, the citation in the specification referring to the SitePlanner 3.16 manual does not even convey to the examiner that the reference is prior art. The patent merely states in the "Detailed Description of a Preferred Embodiment of the Invention" that: "SitePlanner 3.16 For Windows . . . (Wireless Valley Communications, Inc. 1999) [is] hereby incorporated by reference." '454 patent, col. 7:32-34. It does not identify SitePlanner 3.16 as prior art. As a result, the examiner may have viewed the SitePlanner 3.16 product not as prior art, but as something released by the patentee later in 1999, within the one-year grace period for prior uses by the inventor. *See* 35 U.S.C. § 102(b). The SitePlannner 3.0 Manual that Wireless Valley failed to disclose, on the other hand, is dated 1998 and is therefore indisputably prior art. (Second Lahav Decl., Exh. B).

Wireless Valley's actions before the PTO further demonstrate that it understood the import of failing to disclose the SitePlanner Manual when obligated to do so. After the claims were allowed, Wireless Valley tried to slip the Manual into the record by including a 9-page excerpt of it in an untimely IDS, along with 154 other references. (Second Lahav Decl., Exhs. D, E). This tactic failed to erase the mistake because the PTO properly refused to consider the

4

untimely submission. The PTO sent a letter stating:

> "The information disclosure statement . . . has been placed in the application file, **but the information referred to therein has not been considered.**"

(Second Lahav Decl., Exh. F at 2). The only thing that Wireless Valley accomplished through this submission is to make it absolutely clear that it knew the earlier SitePlanner 3.0 Manual, which it contends contains the same disclosure, was material and should have been considered. *See* Opp. at 10.

Responsible patent prosecution practice would dictate that a patentee in Wireless Valley's situation should either petition to withdraw the patent from issue and submit a request for continued examination, or file its own request for reexamination to have this art considered. Wireless Valley refused to do either. Instead, it chose to assert the patent against Aruba. As a result, Aruba is now burdened with the task of fixing a serious omission that Wireless Valley should have fixed on its own. Aruba has asked the PTO to reconsider the validity of the '454 patent in light of the SitePlanner 3.0 Manual, a reference that Plaintiffs' own conduct shows should have been disclosed and considered years ago.[2]  (Lahav Decl., Exh. 2). Any prejudice or delay caused by this reexamination is Wireless Valley's own making.

**B.    The '622 Reexamination Corrects The Patentee's Misleading Submission Of An Incomplete SitePlanner Manual**

On April 24, 2008, Aruba filed a reexamination request against the '622 Patent. (Second

---

[2]  Wireless Valley also argues that it could somehow escape its obligation to disclose the SitePlanner 3.0 Manual by mentioning SitePlanner 3.16 to a *different* examiner in connection with the prosecution of a *different* patent.  (Opp. at 18).  That argument is wrong as a matter of law.  Under 37 C.F.R. § 1.98(d)(1), a new copy of each prior art reference must be given to the examiner, even when a copy was already sent with an earlier pending application, unless the patentee is relying upon that other application for an earlier effective filing date.  That is not the case here.  The '454 patent mentions the application leading to the '679 patent as a related application, but does not rely upon the '679 for an earlier effective filing date.  '454 Patent at col. 1:8-22.  Accordingly, Wireless Valley was required to provide a copy of the SitePlanner Manual to the '454 examiner, yet failed to do so.

Lahav Decl., Exh. A).   Similar to the '454 reexamination request, the '622 request asks the PTO to assess the validity of the patent in light of the SitePlanner 3.0 Manual.   In contrast to the '454 patent, Wireless Valley chose to disclose the SitePlanner 3.16 Manual to the PTO while prosecuting the '622 patent.   Again, however, it failed to do this in a forthright way.   It submitted only a woefully inadequate excerpt containing 9 pages from the 200+ page manual. (Second Lahav Decl., Exhs. C, G).   Significantly, those 9 pages did not contain the relevant material that should have been provided to the examiner as Aruba's reexamination request makes clear.   It cites dozens of pages from the 3.0 manual, virtually none of which correspond to the pages in the 3.16 excerpt.[3]   (Second Lahav Decl., Exh. A at 52-212).

Failure to disclose the earlier SitePlanner 3.0 Manual was a mistake.   Failure to provide a complete copy of either version of the SitePlanner Manual was an even bigger mistake.   Once again, Wireless Valley had several options for correcting those mistakes that it did not pursue. Consequently, Aruba was compelled to fix the mistakes itself, since the improperly granted patent is being asserted against it.   Aruba did so by filing the '622 reexamination.

### C.    The '922 Reexamination Relies Upon Several References That Were Not Before The Examiner

Plaintiffs attempt to disparage the '922 reexamination by arguing that it cites cumulative references, and seeks to combine those references with ones the examiner previously considered. (Opp. at 17).   As a threshold matter, this is simply wrong.   As but one example, Aruba's third combination (referred to as SNQ #3) relies upon two references that were never considered by the examiner—the Fong patent and the 802.11 Standards Manual.   (Lahav Decl., Exh. 1 at 3). Neither reference was cited in an IDS nor provided to the examiner.   See 37 C.F.R. §§ 1.97-

---

[3] Plaintiffs state that the 3.0 version "is, in all material respects, the same as the 3.16 version." (Opp. at 10).   The 9 pages of the SitePlanner 3.16 manual submitted to the PTO correspond to pages 108-112 of the SitePlanner 3.0 Manual.

6

1.98; *see also* MPEP § 609.04(a).

However, even where Aruba relies upon a combination of new and old prior art, Plaintiffs' argument falls flat. Combinations of new art with previously cited art frequently form a compelling basis for an obviousness rejection. *See, e.g., Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1372 (Fed. Cir. 2007) (finding obviousness based in part on a reference before the PTO). These combinations are even more powerful in reexaminations such as this, where the patent issued before the Supreme Court dramatically lowered the burden for combining references to find an invention obvious. *See KSR Int'l v. Teleflex Inc.*, 127 S.Ct. 1727, 1741 (2007).

Here, the newly cited art refutes assertions the patentee made to the PTO to overcome a rejection from an earlier reference. Originally, the PTO rejected the '922 patent as entirely anticipated by the Mahany reference. In response, Symbol amended the claims of the '922 to add three new limitations. At the same it amended those claims, Symbol argued that none of the art before the PTO disclosed a device with those three limitations:

> It is respectfully submitted that each of the references of record, individually or in any combination, do not teach, disclose or suggest the Applicant's invention as defined by the amended claims. Accordingly, it is respectfully submitted that independent claims 1, 15, 18, 19, 23, 27, 31, and 33 are not anticipated nor rendered obvious in view of the references of record.

(Second Lahav Decl., Exh. J at 16).

Aruba's reexamination points out that the Fong patent in combination with the 802.11 Standard discloses each of the limitations Symbol added to overcome the Mahany rejection. *Id.* Had these two references been before the examiner at the same time Symbol made these arguments, the claims would properly never have been allowed. By putting the missing references in context with the patentee's arguments about Mahany, Aruba's reexamination request establishes the invalidity of the '922 patent.

7

**D.    The '923 Reexamination Relies Upon An 802.11 Manual That Was Not Before The Examiner**

Plaintiffs' opposition to the '923 reexamination also relies on the same flawed assertion that merely mentioning the name of a reference in the patent specification puts it before the PTO. (Opp. at 10).  As discussed, the regulations governing patent prosecution clearly state that a non-patent reference will not be considered unless it is cited in an IDS and a copy is provided to the examiner.  *See* 37 C.F.R. §§ 1.97-1.98; *see* also MPEP § 609.04(a).

Aruba's reexamination request for the '923 Patent relies upon the 802.11 Standards Manual to show the claimed invention is obvious.  (Lahav Decl., Exh. 3).  Plaintiffs argue this Manual was before the examiner because the '923 patent's "Background Of Invention" twice mentions the "IEEE Standard 802.11" protocol.  *See* '923 patent col 1:19-20, col. 2:31-32.  This does not save the '923 patent.  Symbol never identified the 802.11 Manual in an IDS, and never supplied the PTO with a copy of the 300+ page Manual.  As a result, the 802.11 Manual was never considered by the examiner.  *See* 37 C.F.R. §§ 1.97-1.98; M.P.E.P. § 609.04.  It is clear the examiner did not consider the 802.11 Manual because otherwise it would be listed as a "Reference Cited" on the cover of the '923 patent. *See* MPEP § 609.06 ("Information Printed On Patent" to reflect citations considered by examiner).    Notably, Plaintiffs do not dispute that the 802.11 Manual is highly material to the claims of the '923 patent.  Accordingly, by putting this Manual before the PTO now, Aruba's reexamination request establishes the '923 patent is invalid.

**III.    A STAY PENDING REEXAMINATION WILL SIMPLIFY THE CASE AND AVOID WASTEFUL LITIGATION COSTS**

Plaintiffs erroneously contend that the reexamination process can not simplify the case because the reexamination requests are unlikely to affect the claims.  As discussed above, each of Aruba's reexaminations requests raise serious doubts about the validity of Plaintiffs' patents.

8

In the great majority of reexaminations the claims in question are cancelled or modified. Thus, staying the case until the reexamination concludes will simplify the case by allowing the parties to avoid costly yet potentially irrelevant discovery. Moreover, judicial resources are spared from having to address complex technical arguments about the patents, possibly twice.

The facts show the reexaminations are highly likely to alter the claims and simplify this case. Indeed, Plaintiffs' own statistics say there is a 76% chance that the original claims will be either cancelled or substantially modified. (Chandra Decl. Exh. 28, D.I. 30). As one court put it:

> Statistically, it is quite likely that the reexamination process will alter the patent claims at issue in some respect. Ninety-one percent of requests for reexaminations are granted, and the PTO cancels all claims in approximately twelve percent of all reexaminations and changes some claims in approximately sixty-four percent.

*Tse v. Apple, Inc.*, No. C06-06573, 2007 WL 2904279, at *3 (N.D. Cal. Oct. 4, 2007) (granting stay). Pressing forward now is virtually guaranteed to result in a tremendous waste of money spent on litigating irrelevant or duplicative issues. *See Tap Pharm Prods. Inc. v. Atrix Labs, Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004) ("the parties will waste their resources litigating over issues that will ultimately be rendered moot"). By waiting for the reexamination to conclude, Aruba and the Court are spared these unnecessary expenses.

The savings that the reexamination proceedings could provide are very real and tremendous. For example, the reexamination could very well render infringement claims against Aruba's current products moot, because Plaintiffs will not be able to collect damages on them. The Federal Circuit has explained that if the claims are modified, then Plaintiffs can only collect damages for infringement occurring after the reexamination certificate issues. *See Laitram*, 925 F.2d at 1360 ("if substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the

9

reexamination certificate."); *see also In re Laughlin Prods. Inc.*, 265 F. Supp. 2d 525, 530 (E.D.

Pa. 2003) (granting stay). Consequently, if the claims are modified (and there is a 76% chance

that will happen), then all the discovery, motion practice, and pretrial litigation surrounding the

products Aruba sold before that point becomes irrelevant. In the meantime, that potentially

irrelevant discovery and related litigation will cost Aruba hundreds of thousands of dollars.

This fact alone, given the high likelihood of such a change to the claims occurring, strongly

favors a stay.

The drain on judicial resources from duplicative litigation would also be immense. As

discussed in the Motion at 7-8, moving forward with litigation despite the concurrent

reexamination risks multiple claim construction hearings, multiple expert reports, and multiple

rounds of discovery from people or entities involved in the prior art as the scope of the claims

keep changing. Despite arguing to the contrary now, Plaintiffs' parent, Motorola, has argued the

merits of potential simplification for stays such as this:

> Motorola also argues that a stay would conserve the Court's and
> the parties' resources, because the PTO's determination could
> render this action moot. At the very least, Motorola claims, the
> Interference could simplify the issues before the Court by
> permitting the PTO to exercise its expertise in the matters of
> priority and patentability. Finally, Motorola argues that a stay
> will not unfairly prejudice Wireless because, by the parties'
> agreement, this case has not progressed beyond the pleadings
> stage.

*Wireless Spectrum Tech. Inc. v. Motorola Corp.*, 57 U.S.P.Q.2d 1662, 1664 (N.D. Ill. 2001) (stay

granted pending interference proceedings); *see also Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,

No. 06-514, 2007 WL 2892707, at *5 (D. Del. Sept. 30, 2007) (granting stay pending

reexamination given the early stage of proceedings and ability of the PTO to simplify the issues

of the case).

10

In this case, however, Motorola seems to have little concern about the waste of duplicative proceedings. That is because it knows that these expenses will hurt Aruba far more than Plaintiffs. It is precisely for this reason that Aruba's motion should be granted.

## IV.    THE BALANCE OF POTENTIAL PREJUDICE TIPS SHARPLY IN ARUBA'S FAVOR

Plaintiffs acknowledge in their brief that the hardship that Aruba would suffer if a stay were not granted is a key consideration in the analysis of whether a stay should be granted. (Opp. at 11.) Yet they then discard the tremendous hardship and clear inequity that Aruba would suffer with one conclusory sentence—"Aruba's claim that it would suffer an economic burden in defending this lawsuit does not compare to the very real possibility of irreparable harm to Plaintiffs." (Opp. at 16). That statement is flatly at odds with the clear disparity in the parties' resources, emphasized again and again throughout Plaintiffs' own brief.

### A.    Aruba Faces Clear Hardship And Inequity From Proceeding With Unnecessary And Costly Litigation

Aruba is a successful emerging company. But, as Plaintiffs point out (repeatedly), Aruba is no corporate giant. Spending millions of dollars in patent litigation could have a serious impact on the company. In such a situation, utilizing measures such as the reexamination process to simplify, and thereby reduce the costs of, the litigation become imperative. Congress created the reexamination procedure to redress this precise issue: Congress anticipated reexaminations will "provide a *useful and necessary alternative for challengers* and for patent owners to test the validity of United States patents in an efficient and *relatively inexpensive manner.*" *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85 C 7565, 1987 WL 6314, at *2 (N.D. Ill. Feb. 2, 1987) (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4). The inequity of denying Aruba this lower cost alternative is particularly

11

acute here given that Plaintiffs obtained these patents by withholding key prior art from the PTO. In light of this clear hardship, a stay should be granted.

### B.    Plaintiffs Will Not Be Prejudiced By A Stay

Plaintiffs argue they will be unduly prejudiced by a stay for two reasons. First, they argue that they will irreparably harmed by the "short term" loss of market share due to Aruba's sales of competing products.[4]  (Opp. at 13-14). Second, Plaintiffs argue, irresponsibly and without any basis, that Aruba will go out of business and consequently be unable to satisfy a judgment for money damages if the case is stayed. (Opp. at 14-15). These arguments are inherently contradictory when taken together, and incorrect when viewed apart. More importantly, neither position supports a cognizable basis of undue prejudice warranting the denial of a stay.

#### 1.    Plaintiffs Will Not Suffer Prejudice From Aruba's Presence In The Market

Neither Plaintiffs' fear of competition nor loss of sales to Aruba serve as a cognizable basis of undue prejudice here. Fear of competition, while often raised in opposition to a stay request in a patent case, is typically rejected as a basis for denying the stay.  To the contrary, courts frequently grant motions to stay pending reexamination in patent cases between active competitors. *See e.g.*, *Abott Diabetes Care*, 2007 WL 2892707 (granting stay where parties are competitors in medical device industry); *In re Laughlin*, 265 F. Supp. 2d at 527 (granting stay where parties are competitors in the tanning industry); *Nanometrics, Inc. v. Nova Measuring*

---

[4] Plaintiffs' argument that Aruba will irrevocably take market share from them is inconsistent with their contention that Aruba will soon be out of business. If Aruba were truly going out of business, then there would be no danger of Aruba irrevocably taking Plaintiffs' customers, no need for a premature and expensive litigation, and no need to race to an injunction proceeding. Indeed, Plaintiffs could have sought a preliminary injunction in this case, but presumably did not do so precisely because they knew that they could make no case that Aruba is harming them irreparably.

12

*Instruments, Ltd*, No. C06-2252, 2007 WL 627920 (N.D. Cal. Feb. 26, 2007) (granting stay where parties are competitors in semiconductor control process industry); *Tomco 2 Equip. Co. v. Southeastern Agri-Systems, Inc.*, No. 1:06-CV-2559, 2008 WL 489005 (N.D. Ga. Feb. 19, 2008) (granting stay where parties are competitors in poultry processing industry). Accordingly, the competition between Aruba and Plaintiffs is not in itself a basis of undue prejudice.

Similarly, Plaintiffs are not unduly prejudiced by the fact that they are losing sales to Aruba. If Aruba's products were somehow found to infringe, then Plaintiffs' corresponding lost profits (if any) can be redressed through compensatory damages. *See, e.g., Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) (patent holder can recover lost profits from infringer). "The availability of money damages is sufficient to protect plaintiff from prejudice." *Tomco 2 Equip*, 2008 WL 48905, at *4; *see also Emhart Indus.*, 1987 WL 6314, at *2 (In granting a stay between competitors "[t]he Court notes that, notwithstanding plaintiff's argument that monetary damages will not compensate for its losses, this is a suit for money damages and plaintiff has never sought preliminary injunctive relief.").

### 2.   Plaintiffs Will Not Suffer Prejudice Due To An Inability To Collect Money Damages

Plaintiffs also argue they will be irreparably harmed by a stay because Aruba will not be capable of paying a damages award in a few years, due to its supposed economic spiral downward. This argument is both factually wrong and self-defeating.

Aruba is not going anywhere but up. Aruba may not be flush with cash like Motorola, but it is an emerging, innovative, and growing company. Aruba has experienced record-breaking new customer growth quarter-over-quarter for every year that it has been in business, and added over 450 new customers in the quarter ended January 31, 2008 alone. Its customers are unparalleled: Microsoft, Google, U.S. Air Force, SAP, Vanguard, and the University of

13

Delaware.

There is no sign of anything slowing down the market's growing adoption of Aruba's products, despite Plaintiffs efforts in both the market place and this court.   Upon Plaintiffs' filing of this suit (on the eve of Aruba's quarterly earnings call), third party market analysts commented:

> We note that tactical patent suits have become increasingly commonplace in the telecom equipment and tech sectors and this suit appears to have been timed intentionally to coincide with Aruba's earnings announcement, perhaps in an attempt to slow down Aruba's business momentum.

(Second Lahav Decl., Exh. H).

More recently, third party analysts are commenting on Aruba's ever increasing revenue opportunities:

> Competitively, however, Aruba's stance continues to solidify as the strong #2 WLAN supplier after Cisco.

(Second Lahav Decl., Exh. I).

Plaintiffs' claim that Aruba is "not profitable" is misleading.   Every quarter since its IPO in March 2007, Aruba has been profitable on a non-GAAP basis.   While Aruba is not yet profitable on a GAAP basis, this is exclusively due to its stock-based compensation.   Backing those expenses out—as most financial analysts do—reveals a healthy company.

As one analyst said "On the positive front, we believe that Aruba is gaining share from Motorola's Symbol business, given its superior software and security technology." (Chandra Decl. Exh. 25 at 19).   That same analyst estimates Aruba's revenue will be $177M in 2008, $236 in 2009, and $288M in 2010.   (*Id.* at 20).   Therefore, Plaintiffs can rest assured that, should the need arise, Aruba will be around to pay a damages award for years to come.

While Aruba is by no means on the verge of financial collapse, its relative size—its

14

current market cap is less than one fortieth that of Motorola's — illustrates exactly why forcing Aruba to incur potentially unnecessary litigation costs works such a hardship upon it. It is also the reason why Plaintiffs, funded by Motorola, are so eager to try and bury Aruba in litigation costs.

### C.    A Stay Pending Reexaminations Does Not Impose An Unreasonable Or Undefined Delay

Plaintiffs raise the specter that Aruba was somehow dilatory in pursuing these reexaminations. Further, Plaintiffs argue the reexaminations will be mired in the PTO for some untold number of years. Neither is true.

### 1.    Aruba Moved Promptly And In Good Faith To Get These Reexaminations On File

Plaintiffs cannot dispute that Aruba sought this stay in the earliest stage of the litigation. Nevertheless, Plaintiffs disingenuously try to characterize Aruba's decision to file the reexaminations in "seriatim" as intentional delay. (Opp. at 3). Having themselves filed a reexamination request (and a motion to stay pending its resolution) in the *Tessera v. Motorola* case, Plaintiffs know that drafting a reexamination request takes considerable effort. (Lahav Decl., Exh. 6 at 32). As the *Pegasus* court observed: "It is presumed that such an effort requires an enormous expenditure of time and other resources; and thus the timing of Thomson's reexamination request does not, necessarily, reflect undue delay." *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 WL 21105073, at *3 (D. Del. May 14, 2003). This was certainly the case for Aruba as well. Each of Aruba's four reexamination requests contain over 100 pages of narrative as well as claim charts analyzing hundreds of pages more of technical material. Once one was completed, Aruba promptly turned to the next. There was no delay.

Plaintiffs also suggest that Aruba was dilatory by allegedly refusing to confer with them concerning a proposed trial schedule. (Opp. at 6). This is patently untrue. As Aruba

15

explained in its letter to the Court dated March 7, 2008, it conferred with Plaintiffs on multiple occasions concerning a schedule. (*See* Chandra Decl., Exh. 9, D.I. 29).

### 2.     Reexaminations Typically Impose A 24-Month Delay

Contrary to Plaintiffs' assertions, a stay pending reexamination will not unduly prejudice them by casting off their "day in court" indefinitely.   Both the PTO and the courts have agreed that reexamination proceedings typically take less than 2 years. *See, e.g., Stryker Trauma S.A. v. Synthes*, No. 01-3879, 2008 WL 877848, at *3 (D. N.J. Mar. 28, 2008) (taking judicial notice that average reexaminations take "22.1 months or 22.8 months"); (Chandra Decl. Exh. 28).   In fact, as one court noted, "the USPTO has implemented a policy of concluding all reexaminations in less than 2 years." *Donnelly Corp. v. Guardina Indus. Corp.*, No. 05-74444, 2007 WL 3104794, at *2 (E.D. Mich. Oct. 22, 2007).[5]   Moreover, "the delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *Photoflex Prods., Inc. v. Circa 3 LLC*, No. C04-03715, 2006 WL 1440363, at *2 (N.D. Cal. May 24, 2006) (granting stay).

Under this framework, the pending reexaminations will likely conclude in the first half of 2010.   Under the circumstances there would be nothing unfair in imposing this modicum of delay, so that Aruba can utilize the cost-effective alternative Congress set up to help businesses avoid the tremendous expense of unnecessary litigation.

---

[5] *See* J. Dudas Statement To Congress at Sept. 8, 2005 "USPTO Oversight Hearing" ("the USPTO will set a defined time period for all future *ex parte* reexamination proceedings to be completed before the examiner, and the period will be less than the two years achieved in fiscal year 2005.   A similar clean-up effort is being conducted for all *inter partes* reexamination proceedings     now     pending     before     the     USPTO.")     available     at http://www.uspto.gov/web/offices/com/speeches/2005sep08.pdf.

16

## V.  CONCLUSION

The reexaminations requested by Aruba are likely to greatly simplify, if not resolve, the issues in this case. Because this case is at the very earliest stages, a stay in this matter will likely conserve substantial time and resources, and will not prejudice Plaintiffs. Further, Aruba faces clear hardship and inequity from proceeding with unnecessary and costly litigation. Accordingly, Aruba respectfully submits that its motion to stay should be granted.

Of Counsel:

Matthew D. Powers
Brandon D. Conard
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802.3000

Nicholas Groombridge
Paul E. Torchia
Etai Lahav
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY  10153-0119
Telephone:  (212) 310.8000


Dated: May 1, 2008

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE   19899
(302) 651-7700

*Attorneys for Defendant and Counter-Claimant*
*ARUBA NETWORKS, INC.*

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### VIA HAND DELIVERY

Richard L. Horwitz
David E. Moore
Potter, Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801

### VIA E-MAIL

Eric J. Lobenfeld
Ira J. Shaefer
Lawrence Brocchini
Arun Chandra
Hogan & Hartson, L.L.P.
875 Third Avenue
New York, NY 10022

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com