**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SYMBOL TECHNOLOGIES, INC., ) | |
| a Delaware corporation, and WIRELESS ) | |
| VALLEY COMMUNICATIONS, INC., ) | C.A. No. 07-519-JJF |
| a Delaware corporation, ) | |
| ) | |
|     Plaintiffs and Counterclaim Defendants, ) | |
| ) | |
|        v. ) | |
| ) | |
| ARUBA NETWORKS, INC., ) | |
| a Delaware corporation, ) | |
| ) | |
|     Defendant and Counterclaimant. ) | |

**STIPULATION AND ORDER REGARDING (1) FILING OF**
**FIRST AMENDED ANSWER AND COUNTERCLAIMS AND**
**(2) PLAINTIFFS' PENDING MOTION TO DISMISS AND TO STRIKE**

IT IS HEREBY STIPULATED AND AGREED, by the undersigned attorneys for

Plaintiffs Symbol Technologies, Inc. and Wireless Valley Communications, Inc. (collectively,

"Plaintiffs") and Defendant Aruba Networks, Inc. ("Aruba"), that, pursuant to Fed. R. Civ. P.

15(a) and Local Rule 15.1, Aruba may file its First Amended Answer and Counterclaims,

annexed hereto at Tab A;

IT IS FURTHER STIPULATED AND AGREED that Plaintiffs, by entering into this

stipulation, do not admit any of the allegations in the proposed First Amended Answer and

Counterclaims, and they further reserve all rights to respond in any way they deem appropriate in

response to the proposed First Amended Answer and Counterclaims;

RLF1-3288897-1

IT IS FURTHER STIPULATED AND AGREED that the filing of the proposed First Amended Answer and Counterclaims does not affect Plaintiffs' pending Motion to Dismiss and to Strike (D.I. 13), and that the Court may decide said Motion on the papers already submitted;

IT IS FURTHER STIPULATED AND AGREED that the proposed First Amended Answer and Counterclaims shall be deemed filed, and served on Plaintiffs, on the date this Stipulation is "so ordered" by the Court, and that Plaintiffs shall have 30 days from that date to reply, move or otherwise respond to the First Amended Answer and Counterclaims.


POTTER ANDERSON & CORROON LLP

By:  /s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs and Counterclaim Defendants Symbol Technologies, Inc. and Wireless Valley Communications, Inc.*


RICHARDS, LAYTON & FINGER, P.A.

By:  /s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
cottrell@rlf.com

*Attorneys for Defendant and Counterclaimant Aruba Networks, Inc.*


SO ORDERED this _____ day of June, 2008.


_____
United States District Judge

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware Corporation, and WIRELESS VALLEY COMMUNICATIONS, INC., a Delaware Corporation,<br><br>               Plaintiffs and Counter-<br>               Defendants,<br><br>     v.<br><br>ARUBA NETWORKS, INC., a Delaware corporation,<br><br>               Defendant and Counter-<br>               Claimant. | C. A. No. 07-519-JJF<br><br>DEMAND FOR JURY TRIAL |

## FIRST AMENDED ANSWER AND COUNTERCLAIMS

### INTRODUCTION AND SUMMARY

Sometimes, when companies are losing in the marketplace, they sue – hoping that they can persuade jurors to overrule the verdict of the market. This lawsuit, filed by Symbol Technologies, Inc., and Wireless Valley Communications, Inc. (both wholly owned subsidiaries of global behemoth Motorola, Inc.), is that type of case.

Aruba Networks, Inc., was founded in 2002. In early 2003, it announced major advancements in wireless LAN technologies. Aruba's advancements allowed corporations and other enterprises to lock the air against intruders, enable high-speed mobile firewalls that follow users, and construct self-calibrating Wi-Fi networks. Aruba's innovations were met with widespread acclaim – and, almost immediately, Symbol's strong interest.

Recognizing the superiority of Aruba's technologies, Symbol tried to get access to them by buying Aruba. Throughout the first half of 2003, in the course of discussions initiated by Symbol, Aruba gave Symbol essentially unfettered access to Aruba's products – the way they were designed, built, tested, and made – and to Aruba's business and marketing strategies and

plans. Although Symbol was very interested in acquiring Aruba and its technologies, ultimately the parties were not able to agree on the complete terms of a transaction.

In the years since Symbol's close inspection of Aruba, Aruba has continued to receive widespread recognition as a fast-growing technology innovator. In 2003, Aruba won the prestigious Comdex Best in Show Award. In 2005, it won the Techworld.com Wireless Security Product of the Year Award. In 2007, Aruba won the Best Wireless Broadband Security Innovation Award at the Wireless Broadband Innovations Awards, as well as the Best of Interop 2007: Wireless & Mobility Category. These are just a few of the many awards it has won since its founding in 2002.

Aruba's technological innovations have paralleled its success in the marketplace. For example, according to a published report by Dell'Oro Group, Aruba's share of the enterprise wireless LAN market rose to greater than 10% in the second quarter of 2007 from roughly 5% in the same period of 2005. During the same period, Motorola's Symbol unit lost market share, and Aruba displaced Motorola/Symbol as the world's second largest enterprise wireless LAN supplier.

On the eve of Aruba's quarterly earnings announcement a month or so ago, in which Aruba announced a significant increase in revenue, Motorola's subsidiaries, Symbol and Wireless Valley, filed this lawsuit – on patents that began issuing in 2003. The next morning, coincident with Aruba's earnings release and only hours in advance of Aruba's conference call, Motorola issued a press release announcing the filing of the suit. The complaint fails to explain why the plaintiffs:

- waited for four years after Symbol's close inspection of Aruba's technology and business to sue;
- sued with no prior notice to Aruba; and
- chose to bring this lawsuit on the eve of Aruba's earnings announcement.

That explanation can be found in Aruba's success in the marketplace.

2

## PARTIES

1.    Aruba admits that in Securities and Exchange Commission filings Motorola, Inc., has described Symbol as a wholly owned subsidiary.    Aruba is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 of the Complaint and therefore denies those allegations.

2.    Aruba admits that in Securities and Exchange Commission filings Motorola, Inc., has described Wireless Valley as a wholly owned subsidiary.    Aruba is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 2 of the Complaint and therefore denies those allegations.

3.    Aruba admits that it is a Delaware corporation with a principal place of business at 1344 Crossman Avenue, Sunnyvale, CA 94089-1113, and that, for purposes of this action, The Corporation Trust Company is its registered agent for service of process in Delaware.    The Complaint does not make clear what plaintiffs mean in the third sentence of Paragraph 3 of the Complaint, and Aruba therefore denies those allegations.

## JURISDICTION AND VENUE

4.    Aruba admits that this action purports to arise under the Patent Laws of the United States, Title 35, United States Code, but denies any wrongdoing or liability.    Aruba further admits that this Court has subject matter jurisdiction over the allegations in the Complaint under 28 U.S.C. §§ 1331 and 1338(a).

5.    Aruba does not dispute that for purposes of this action venue is proper in this judicial district.

6.    Aruba admits that it is subject to personal jurisdiction in this judicial district because Aruba is a Delaware corporation with an agent for service of process in Delaware. Except as expressly admitted, Aruba denies the allegations of Paragraph 6 of the Complaint.

3

## THE ASSERTED PATENTS – DENIAL OF INFRINGEMENT

7.     Aruba admits that U.S. Patent No. 7,173,922 ("the '922 patent"), entitled "Multiple Wireless Local Area Networks Occupying Overlapping Physical Spaces," purports to have issued on February 6, 2007, but denies that this patent was duly and legally issued. Aruba admits that a document that purports to be a copy of the '922 patent is attached to the Complaint as Exhibit A, but Aruba lacks knowledge that it is a true and correct copy and therefore denies the remaining allegations of Paragraph 7 of the Complaint.

8.     Aruba admits that U.S. Patent No. 7,173,923 ("the '923 patent"), entitled "Security In Multiple Wireless Local Area Networks," purports to have issued on February 6, 2007, but denies that this patent was duly and legally issued. Aruba admits that a document that purports to be a copy of the '923 patent is attached to the Complaint as Exhibit B, but Aruba lacks knowledge that it is a true and correct copy and therefore denies the remaining allegations of Paragraph 8 of the Complaint.

9.     Aruba is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Complaint and therefore denies those allegations.

10.     Aruba admits that U.S. Patent No. 6,625,454 ("the '454 patent"), entitled "Method and System for Designing or Deploying a Communications Network Which Considers Frequency Dependent Effects," purports to have issued on September 23, 2003, but denies that this patent was duly and legally issued. Aruba admits that a document that purports to be a copy of the '454 patent is attached to the Complaint as Exhibit C, but Aruba lacks knowledge that it is a true and correct copy and therefore denies the remaining allegations of Paragraph 10 of the Complaint.

11.     Aruba admits that U.S. Patent No. 6,973,622 ("the '622 patent"), entitled "System and Method for Design, Tracking, Measurement, Prediction and Optimization of Data Communication Networks," purports to have issued on December 6, 2005, but denies that this patent was duly and legally issued. Aruba admits that a document that purports to be a copy of the '622 patent is attached to the Complaint as Exhibit D, but Aruba lacks knowledge that it is a

4

true and correct copy and therefore denies the remaining allegations of Paragraph 11 of the Complaint.

12.     Aruba is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint and therefore denies those allegations.

### FIRST ASSERTED CLAIM – '922 PATENT

13.     Aruba incorporates its responses to the allegations of Paragraphs 1-12 of the Complaint here.

14.     Aruba denies the allegations of Paragraph 14 of the Complaint.

15.     Aruba denies the allegations of Paragraph 15 of the Complaint.

16.     Aruba denies the allegations of Paragraph 16 of the Complaint.

17.     Aruba denies the allegations of Paragraph 17 of the Complaint.

18.     Aruba denies the allegations of Paragraph 18 of the Complaint.

### SECOND ASSERTED CLAIM – '923 PATENT

19.     Aruba incorporates its responses to the allegations of Paragraphs 1-12 of the Complaint here.

20.     Aruba denies the allegations of Paragraph 20 of the Complaint.

21.     Aruba denies the allegations of Paragraph 21 of the Complaint.

22.     Aruba denies the allegations of Paragraph 22 of the Complaint.

23.     Aruba denies the allegations of Paragraph 23 of the Complaint.

24.     Aruba denies the allegations of Paragraph 24 of the Complaint.

### THIRD ASSERTED CLAIM – '454 PATENT

25.     Aruba incorporates its responses to the allegations of Paragraphs 1-12 of the Complaint here.

26.     Aruba denies the allegations of Paragraph 26 of the Complaint.

27.     Aruba denies the allegations of Paragraph 27 of the Complaint.

28.     Aruba denies the allegations of Paragraph 28 of the Complaint.

29.     Aruba denies the allegations of Paragraph 29 of the Complaint.

30.    Aruba denies the allegations of Paragraph 30 of the Complaint.

### FOURTH ASSERTED CLAIM – '622 PATENT

31.    Aruba incorporates its responses to the allegations of Paragraphs 1-12 of the Complaint here.

32.    Aruba denies the allegations of Paragraph 32 of the Complaint.

33.    Aruba denies the allegations of Paragraph 33 of the Complaint.

34.    Aruba denies the allegations of Paragraph 34 of the Complaint.

35.    Aruba denies the allegations of Paragraph 35 of the Complaint.

36.    Aruba denies the allegations of Paragraph 36 of the Complaint.

### SEPARATE DEFENSES

37.    In addition to the defenses described below, Aruba expressly reserves the right to allege additional defenses as they become known through the course of discovery.

### FIRST DEFENSE – NON-INFRINGEMENT

38.    Aruba has not infringed, directly or indirectly, any valid asserted claim of the '922, '923, '454, or '622 patents (collectively "patents-in-suit").

### SECOND DEFENSE – INVALIDITY UNDER §§ 102 AND 103

39.    Aruba is informed and believes, and on that basis alleges, that each of asserted claims of each of the patents-in-suit is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C. §§ 102 and 103, because the alleged inventions thereof are anticipated by, taught by, suggested by, and/or obvious in view of the prior art, and no claim of any of the patents-in-suit can be validly construed to cover any Aruba product or method.

### THIRD DEFENSE – INVALIDITY UNDER § 112

40.    Aruba is informed and believes, and on that basis alleges, that each of the asserted claims of each of the patents-in-suit are invalid for failure to comply with 35 U.S.C. § 112.

6

## FOURTH DEFENSE – INVALIDITY UNDER § 101

41.    Aruba is informed and believes, and on that basis alleges, that each of the asserted process claims of each of the patents-in-suit are invalid for failure to comply with 35 U.S.C. § 101.

## FIFTH DEFENSE – EQUITABLE ESTOPPEL

42.    The relief sought by Symbol is barred in whole or in part by the doctrine of equitable estoppel.

43.    Without limiting the generality of the above allegations, Symbol asserts infringement because "Aruba designs, manufactures, and sells in the United States wireless switches (which it calls mobility controllers), access points, management servers, and related software for use in connection with WLANs, as well as software for designing, planning, configuring, monitoring, managing, and optimizing WLANs." (Complaint ¶ 3.)

44.    Symbol has known this since at least early 2003, when it told Aruba that it (Symbol) wanted to purchase Aruba and spent months trying to convince Aruba to allow Symbol to purchase it. In the course of those efforts, Symbol sent senior engineers – *including the individual named as the inventor on the '922 and '923 patents-in-suit* – to Aruba to learn, in copious detail, about Aruba's products. Those discussions lasted for several months. During them, Aruba provided Symbol with extensive access to information about Aruba's products, the way they were designed and built, the way they worked, Aruba's plans for manufacturing and selling them, and Aruba's plans for future products.

45.    Although Symbol was very interested in acquiring Aruba and its technologies, ultimately the parties were not able to agree on the complete terms of a transaction.

46.    At the time that Symbol was trying to convince Aruba to be purchased, Symbol's '922 and '923 patent applications were no longer confidential – they had been published two years earlier, in 2001. Although those Symbol patent applications were no longer confidential, at no point during Symbol's efforts to convince Aruba did Symbol advise or suggest that if Aruba did not agree to a transaction, Symbol would later assert those pending patents against it.

7

At no point during Symbol's efforts to convince Aruba did Symbol advise or suggest that Symbol had already invented the technology that Aruba had. In fact, quite the contrary: Symbol was very impressed with Aruba's technologies, and told Aruba that it (Symbol) thought those technologies to be superior to, and different from, Symbol's.

47.     Symbol's failures and omissions were particularly egregious given that the putative named inventor on those patent applications was an integral part of the senior engineering team that was handpicked by Symbol to learn about Aruba's products – the products that Symbol now says infringes the '922 and '923 patents, and have (according to Symbol) done so since 2003.

48.     Symbol's failures and omissions led Aruba reasonably to infer that Symbol did not intend to enforce any patent rights, including the then-pending '922 and '923 patent applications if they issued as patents, against Aruba. As far as Aruba understood from Symbol's conduct and silence, the parties were going to go compete in the market and let the marketplace decide which technologies and businesses were superior.

49.     Since its discussions with Symbol ended in 2003, Aruba has successfully continued its efforts to invest and to innovate. It has established customer relationships based on the products that it disclosed to Symbol during the discussions in 2003. It has spent tens of millions of dollars growing its business based on the products that it disclosed to Symbol in 2003. It has attracted key executive, engineering, finance, and sales personnel based on the success of the products that it disclosed to Symbol in 2003. In these and other ways, it would materially prejudice Aruba for Symbol to be allowed to proceed with its claims.

## SIXTH DEFENSE – LACHES

50.     The relief sought by Symbol and Wireless Valley is barred in whole or in part by the doctrine of laches. Aruba incorporates the allegations of Paragraphs 43 through 49 here.

51.     Without limiting the generality of the above allegations, as noted above, Symbol and Wireless Valley assert infringement because "Aruba designs, manufactures, and sells in the United States wireless switches (which it calls mobility controllers), access points, management

servers, and related software for use in connection with WLANs, as well as software for designing, planning, configuring, monitoring, managing, and optimizing WLANs." (Complaint ¶ 3.) Even leaving aside the 2003 discussions between Symbol and Aruba, Symbol and Wireless Valley have known of Aruba and its activities for years.

52.     In May 2003, for example, industry press reported, in an article that quotes both Aruba and Symbol officials, that "Start-ups and old timers in the networking and wireless worlds are flocking to the wireless switching market. The list includes . . . Aruba Wireless Networks, . . . Symbol Technologies, [and others]." There are many other such press and other such examples. Accordingly, Symbol and Wireless Valley knew or reasonably should have known of the activities now alleged by Symbol and Wireless Valley to infringe the patents-in-suit long ago.

53.     In fact, this is true *even according to Symbol and Wireless Valley*. In an August 2007 industry article about this lawsuit, Symbol's current General Counsel is described as stating that "[a]ll of Aruba's WLAN switch, site planning and radio-frequency management and monitoring products infringe the patents, *and they have since the company began selling its first products*." Nevertheless, Symbol and Wireless Valley delayed in bringing this suit until August 2007, on patents that first started issuing in September 2003 – waiting while Aruba invested tens of millions of dollars in designing and testing its products, developing customer relationships, and building its business. Symbol's and Wireless Valley's delay was unreasonable, inexcusable, and prejudicial to Aruba, and Symbol's and Wireless Valley's claims are barred as a result.

### SEVENTH DEFENSE – INEQUITABLE CONDUCT ('922 AND '923 PATENTS)

54.     Aruba is informed and believes, and on that basis alleges, that individuals charged with a duty of candor on behalf of Symbol failed, with an intent to deceive, to properly disclose to the U.S. Patent and Trademark Office information material to the patentablity of the '922 and '923 patents and failed to follow the requirements of the Manual of Patent Examiners Procedure necessary to have this information considered by the U.S. Patent and Trademark Office.

9

55.    This information includes, but is not limited to, the existence of co-pending U.S. application no. 09/457,624 (the "'624 application"), filed on December 8, 1999. At the time of filing, the '624 application was purportedly owned by Proxim, Inc., and described and claimed subject matter that, to a reasonable patent examiner, would have been material to the patentability of the '922 and '923 patents. On or before October 1, 2004, Proxim assigned its rights in the '624 application to Symbol, so Symbol had knowledge of the contents of the '624 application at least as of the date of the assignment and likely before that. Despite knowing of the highly material contents of the '624 application, individuals charged with a duty of candor on behalf of Symbol failed to disclose the existence of the '624 application to the patent examiner responsible for the examination of the applications that resulted in the '922 and '923 patents. The patent examiner responsible for those applications would have found the 624 application material because, among other things, the examiner would have then been able to determine whether to issue a provisional obviousness-type double patenting rejection.

56.    In light of the above, the '922 and '923 patents are not enforceable due to inequitable conduct.

### EIGHTH DEFENSE – INEQUITABLE CONDUCT ('454 PATENT)

57.    Aruba is informed and believes, and on that basis alleges, that individuals charged with a duty of candor on behalf of Wireless Valley failed, with an intent to deceive, to properly disclose to the U.S. Patent and Trademark Office information material to the patentablity of the '454 patent and failed to follow the requirements of the Manual of Patent Examiners Procedure necessary to have this information considered by the U.S. Patent and Trademark Office.

58.    This information includes, but is not limited to, the following: (i) information and publications relating to SMT Plus, a software tool developed, at least in part, by Theodore Rappaport and Roger Skidmore, and licensed to over twenty entities more than one year prior to the filing date of the '454 patent; (ii) the following publications, which the named inventors and/or prosecuting patent attorneys knew were never considered by the U.S. Patent and Trademark Office due to Wireless Valley's late submission of an Information Disclosure

10

Statement in violation of U.S. Patent and Trademark Office rules:    R.P. Torres, et al.,
*CINDOOR: An Engineering Tool for Planning and Design of Wireless Systems in Enclosed
Spaces*, IEEE Antennas and Propagation Magazine, Vol. 41, No. 4 (Aug. 1999); M. Panjwani et
al., *Interactive Computation of Coverage Regions for Wireless Communication in Multifloored
Indoor Environments*, IEEE Journal on Selected Areas in Communications, Vol. 14, No. 3 (Apr.
1996); U.S. Patent No. 5,491,644; R. Skidmore et al., *A Comprehensive In-Building and
Microcellular Wireless Communication System Design Tool*, The Bradley Department of
Electrical Engineering, MPRG-TR-97-13 (Jun. 1997); U.S. Patent No. 5,987,328; Robert
Morrow et al., *Getting In*, Wireless Review, Vol. 17, No. 5 (Mar. 1, 2000); (iii) S. Fortune, et al.,
*WISE Design of Indoor Wireless Systems: Practical Computation and Optimization*, IEEE
Computational Science & Engineering, at pp. 58-68 (Spring, 1995), at pp. 58-68 (mentioned in
the background section of U.S. Patent No. 7,055,107, another Rappaport and Skidmore patent
filed just days before the filing date of the '454 patent by the same attorneys that filed the '454
patent); and (iv) the following additional publications authored, at least in part, by Theodore
Rappaport:  Theodore Rappaport et al., *Curriculum Innovation for Simulation and Design of
Wireless Communications Systems*, ASEE Annual Conference Proceedings (1996); Keith
Blankenship et al., *Measurements and Simulation of Radio Frequency Impulsive Noise in
Hospitals and Clinics*, Proceedings of the 47th IEEE Vehicular Technology (1997); Donna
Krizman et al., *Modeling and Simulation of Narrowband Phase from the Wideband Channel
Impulse Response*, Proceedings of the 47th IEEE Vehicular Technology (1997); Hanif Sherali et
al., *Optimal Location of Transmitters for Micro-Cellular Radio Communication System Design*,
IEEE Journal on Selected Areas in Communications, Vol. 14, No. 4 (May 1996); Lynn Abbott et
al., *Interactive Computation of Coverage Regions for Indoor Wireless Communication*,
Proceedings of SPIE - The International Society for Optical Engineering (1995); Jorgen
Andersen et al., *Propagation Measurements and Models for Wireless Communications
Channels*, IEEE Communications Magazine, Vol. 33, No. 1 (Jan. 1995); M. Panjwani et al., *An
Interactive System for Visualizing Wireless Communication Coverage within Buildings*, Wireless

11

Personal Communications, Virginia Tech's 4th Symposium (June 1-3, 1994); and Theodore Rappaport, *Sponsored Research in Radio Propagation and System Design Final Report* (Sep. 26th, 1997).

59.    Aruba is informed and believes, and on that basis alleges, that individuals charged with a duty of candor on behalf of Wireless Valley failed, with an intent to deceive, to disclose to the U.S. Patent and Trademark Office the SitePlanner 3.0 product and 1998 manual describing that product. On information and belief, Wireless Valley offered for sale and sold this product and published this manual at least two years before the '454 patent was filed. Wireless Valley has stated in motion papers filed before the Court that the SitePlanner 3.0 product is "in all material respects the same" as a later version of the same product, SitePlanner 3.16, that Wireless Valley recognized was material and attempted, unsuccessfully, to disclose to the Patent Office. Two of the three inventors of the '454 patent were listed on the SitePlanner 3.0 manual. In addition, on information and belief, the representatives of Wireless Valley who attempted to disclose the SitePlanner 3.16 product to the Patent Office knew about the SitePlanner 3.0 product and product manual. All of these individuals knew or should have known that the 3.0 product and product manual were material to patentability, and, on information and belief, withheld them from the patent office with intent to deceive.

60.    In light of the above, the '454 patent is not enforceable due to inequitable conduct.

## NINTH DEFENSE – INEQUITABLE CONDUCT ('622 PATENT)

61.    Aruba is informed and believes, and on that basis alleges, that individuals charged with a duty of candor on behalf of Wireless Valley failed, with an intent to deceive, to properly disclose to the U.S. Patent and Trademark Office information material to the patentablity of the '622 patent and failed to follow the requirements of the Manual of Patent Examining Procedure necessary to have this information considered by the U.S. Patent and Trademark Office, and made false and misleading statements to the U.S. Patent and Trademark Office during the prosecution of the '622 patent.

12

62.    This information includes, but is not limited to, U.S. Patent No. 6,505,045 (the "'045 patent"). At the relevant time, the Manual of Patent Examining Procedure stated that "It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. *If a long list is submitted, highlight those documents which* have been specifically brought to applicant's attention and/or *are known to be of most significance.*"    Despite the highly material disclosure of the '045 patent, individuals charged with a duty of candor on behalf of Wireless Valley cited the reference by including it as reference number 98 in an Information Disclosure Statement that included a long list of many complex separate documents, all submitted at the same time, to increase the chance that the '045 patent would be overlooked by the patent examiner, and stated that the '045 patent was "only cited as constituting related art of which the applicant is aware" and specifically disclaimed that "the references are relevant or material to the claims."

63.    Aruba is informed and believes, and on that basis alleges, that individuals charged with a duty of candor on behalf of Wireless Valley failed, with an intent to deceive, to disclose to the U.S. Patent and Trademark Office the SitePlanner 3.0 product and 1998 manual describing that product. On information and belief, Wireless Valley offered for sale and sold this product and published this manual at least two years before the earliest possible priority date for any claim of the '622 patent. Wireless Valley has stated in motion papers filed before the Court that the SitePlanner 3.0 product is "in all material respects the same" as a later version of the same product, SitePlanner 3.16, that Wireless Valley recognized was material and attempted to disclose to the Patent Office. Wireless Valley failed to provide a complete copy of the 3.16 manual to the Patent Office, however, but instead excised numerous pages of the document that contain information that the examiner would have found material to patentability of the claims. Two of the three inventors of the '622 patent were listed on the SitePlanner 3.0 manual. In addition, on information and belief, the representatives of Wireless Valley who provided the excerpts of the SitePlanner 3.16 manual to the Patent Office knew about the SitePlanner 3.0 product and product manual. All of these individuals knew or should have known that the 3.0

13

product and product manual were material to patentability, and, on information and belief, withheld them from the patent office with intent to deceive.

64.     In light of the above, the '622 patent is not enforceable due to inequitable conduct.

### TENTH DEFENSE – UNCLEAN HANDS

65.     Aruba incorporates the allegations of Paragraphs 42 through 64 here.

66.     By reason of the acts alleged above, as incorporated, each of Symbol and Wireless Valley are barred from recovery for any asserted infringement of the patents-in-suit by the equitable doctrine of unclean hands.

### ELEVENTH DEFENSE – PROSECUTION HISTORY ESTOPPEL

67.     Symbol and Wireless are estopped from construing the asserted claims of the patents-in-suit to read on Symbol's products or processes by reasons of statements made to the U.S. Patent and Trademark Office during the prosecution of the applications that led to the issuance of the patents-in-suit.

### TWELFTH DEFENSE – PLAINTIFFS' FAILURE TO GIVE NOTICE

68.     To the extent Symbol and Wireless Valley seek damages for alleged infringement prior to its giving actual or constructive notice of the patents-in-suit patent to Aruba, the relief they seek is barred by 35 U.S.C. § 287.

### DEMAND FOR A JURY TRIAL

69.     Aruba requests a trial by jury on all issues so triable.

### DENIAL OF PLAINTIFFS' PRAYER FOR RELIEF

70.     Aruba denies that Symbol or Wireless Valley are entitled to an award of any relief at all or the relief sought in their prayer for relief against Aruba.  Aruba has not infringed, directly, indirectly, contributorily or by inducement, literally or equivalently, willfully or otherwise, any of the asserted claims of the patents-in-suit.  Symbol's and Wireless Valley's prayer should be denied its entirety and with prejudice, and Symbol and Wireless Valley should take nothing.

**COUNTERCLAIMS**

**THE PARTIES**

71.     Aruba is a corporation organized under the laws of the State of Delaware with its principal place of business at 1322 Crossman Avenue, Sunnyvale, California 94089-1113. Aruba was founded in 2002 and went public in 2007.   Aruba delivers an enterprise mobility solution that enables secure access to data, voice and video applications across wireless and wireline enterprise networks.  It has won many, many awards for its technology innovations.

72.     According to the Complaint, Symbol is a corporation organized under the laws of the State of Delaware, with its principal place of business at One Motorola Plaza, Holtsville New York 11742-1300.  According to filings with the U.S. Securities and Exchanges Commission, Symbol is a wholly-owned subsidiary of global behemoth Motorola, Inc., and was acquired by Motorola in September 2006.

73.     According to the Complaint, Wireless Valley is a corporation organized under the laws of the State of Delaware with its principal place of business at 4515 Seton Center Parkway, Suite 300, Austin, Texas 78759.  According to filings with the U.S. Securities and Exchanges Commission, Wireless Valley is a wholly-owned subsidiary of global behemoth Motorola, Inc., and was acquired by Motorola in December 2005.

**JURISDICTION AND VENUE**

74.     This Court has subject-matter jurisdiction over Aruba's patent counterclaims, which arise under the patent laws of the United States, pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

75.     This Court has personal jurisdiction over Symbol, at least because Symbol filed its Complaint for patent infringement in this Court, in response to which these counterclaims are filed.

76.     This Court has personal jurisdiction over Wireless Valley, at least because Wireless Valley filed its Complaint for patent infringement in this Court, in response to which these counterclaims are filed.

15

77.    Venue is established in this district pursuant to 28 U.S.C. § 1391 and 1400. Venue is also established in this Court because Symbol and Wireless Valley have consented to the propriety of venue in this Court by filing their respective claims for patent infringement in this Court, in response to which Aruba files these counterclaims.

## COUNT 1

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

## ('922 AND '923 PATENTS)

78.    Aruba incorporates Paragraphs 1 through 68 and 71 through 77 here.

79.    An actual and justiciable controversy exists between Aruba and Symbol with respect to the asserted claims of the '922 and '923 patents because Symbol has brought this action against Aruba alleging that Aruba infringes claims of the '922 and '923 patents, which allegation Aruba denies.   Absent a declaration of noninfringement, Symbol will continue wrongfully to assert claims of the '922 and '923 patents against Aruba, and thereby cause Aruba irreparable injury and damage.

80.    Aruba has not infringed, and does not infringe, the asserted claims of the '922 or '923 patents, either directly or indirectly, literally or under the doctrine of equivalents, willfully, or otherwise, and Aruba is entitled to a declaration to that effect.

## COUNT 2

## DECLARATORY JUDGMENT OF INVALIDITY

## ('922 AND '923 PATENTS)

81.    Aruba incorporates Paragraphs 1 through 68 and 71 through 77 here.

82.    An actual and justiciable controversy exists between Aruba and Symbol with respect to the asserted claims of the '922 and '923 patents because Symbol has brought this action against Aruba alleging that the asserted claims of the '922 and '923 patents are valid, which allegation Aruba denies.   Absent a declaration of invalidity, Symbol will continue wrongfully to assert claims of the '922 and '923 patents against Aruba, and thereby cause Aruba irreparable injury and damage.

16

83.     The '922 and '923 patents are invalid for failure to comply with the requirements of Title 35, United States Code, including but not limited to §§ 101, 102, 103, and/or 112, and Aruba is entitled to a declaration to that effect.

## COUNT 3

## DECLARATORY JUDGMENT OF UNENFORCEABILITY

### ('922 AND '923 PATENTS)

84.     Aruba incorporates Paragraphs 1 through 68 and 71 through 77 here.

85.     An actual and justiciable controversy exists between Aruba and Symbol with respect to the asserted claims of the '922 and '923 patents because Symbol has brought this action against Aruba alleging that the asserted claims of the '922 and '923 patents are enforceable, which allegation Aruba denies.  Absent a declaration of unenforceability, Symbol will continue wrongfully to assert claims of the '922 and '923 patents against Aruba, and thereby cause Aruba irreparable injury and damage.

86.     As set forth above, one or more people substantively involved in the prosecution of the application leading to the '922 and '923 patents were aware of information material to the patentability of the claims of the '922 and '923 patents, but withheld that information from the U.S. Patent and Trademark Office with the intent to deceive, during the prosecution of the '922 and '923 patents.

87.     In light of the above, the '922 and '923 patents are not enforceable due to inequitable conduct.

## COUNT 4

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

### ('454 AND '622 PATENTS)

88.     Aruba incorporates Paragraphs 1 through 68 and 71 through 77 here.

89.     An actual and justiciable controversy exists between Aruba and Wireless Valley with respect to the asserted claims of the '454 and '622 patents because Wireless Valley has brought this action against Aruba alleging that Aruba infringes claims of the '454 and '622

17

patents, which allegation Aruba denies. Absent a declaration of noninfringement, Wireless Valley will continue wrongfully to assert claims of the '454 and '622 patents against Aruba, and thereby cause Aruba irreparable injury and damage.

90.    Aruba has not infringed, and does not infringe, the asserted claims of the '454 and '622 patents, either directly or indirectly, literally or under the doctrine of equivalents, willfully, or otherwise, and Aruba is entitled to a declaration to that effect.

## COUNT 5

## DECLARATORY JUDGMENT OF INVALIDITY

## ('454 AND '622 PATENTS)

91.    Aruba incorporates Paragraphs 1 through 68 and 71 through 77 here.

92.    An actual and justiciable controversy exists between Aruba and Wireless Valley with respect to the asserted claims of the '454 and '622 patents because Wireless Valley has brought this action against Aruba alleging that the asserted claims of the '454 and '622 patents are valid, which allegation Aruba denies. Absent a declaration of invalidity, Wireless Valley will continue wrongfully to assert claims of the '454 and '622 patents against Aruba, and thereby cause Aruba irreparable injury and damage.

93.    The '454 and '622 patents are invalid for failure to comply with the requirements of Title 35, United States Code, including but not limited to §§ 101, 102, 103, and/or 112, and Aruba is entitled to a declaration to that effect.

## COUNT 6

## DECLARATORY JUDGMENT OF UNENFORCEABILITY

## ('454 AND '622 PATENTS)

94.    Aruba incorporates Paragraphs 1 through 68 and 71 through 77 here.

95.    An actual and justiciable controversy exists between Aruba and Wireless Valley with respect to the asserted claims of the '454 and '622 patents because Wireless Valley has brought this action against Aruba alleging that the asserted claims of the '454 and '622 patents are enforceable, which allegation Aruba denies. Absent a declaration of unenforceability,

18

Wireless Valley will continue wrongfully to assert claims of the '454 and '622 patents against Aruba, and thereby cause Aruba irreparable injury and damage.

96.     As set forth above, one or more people substantively involved in the prosecution of the application leading to the '454 and '622 patents were aware of information material to the patentability of the claims of the '454 and '622 patents, but withheld that information from the U.S. Patent and Trademark Office with the intent to deceive, during the prosecution of the '454 and '622 patents.  In addition, with respect to the '622 patent, and as set forth above, Aruba is informed and believes, and on that basis alleges, that individuals charged with a duty of candor on behalf of Wireless Valley made false and misleading statements to the U.S. Patent and Trademark Office during the prosecution of the '622 patent.

97.     In light of the above, the '454 and '622 patents are not enforceable due to inequitable conduct.

### DEMAND FOR A JURY TRIAL

98.     Aruba requests a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Aruba prays the Court as follows:

A.     That the Court enter judgment for Aruba against each of Symbol and Wireless Valley on their Complaint;

B.     That each of Symbol and Wireless Valley take nothing by their Complaint;

C.     That the Court dismiss each of Symbol's and Wireless Valley's claims with prejudice;

D.     That the Court declare each and every asserted claim of the '922, '923, '454 and '622 patents to be (a) not infringed by Aruba, (b) invalid, and (c) unenforceable;

E.     That, under 35 U.S.C. § 285, the Court deem this to be an exceptional case based on the conduct of each of Symbol and Wireless Valley in commencing and pursuing this action, and that the Court award Aruba its "reasonable attorney fees" against each of Symbol and Wireless Valley;

F.    That the Court award Aruba its costs of suit; and

G.    That the Court award Aruba such other and additional relief as this Court deems just and proper.

Of Counsel:

MATTHEW D. POWERS
VERNON M. WINTERS
BRANDON C. CONARD
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

PAUL E. TORCHIA
ETAI LAHAV
WEIL, GOTSHAL & MANGES LLP
New York Office
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000

Dated: June 3, 2008

_____
Frederick L. Cottrell, III (#2555)
Richards, Layton & Finger
One Rodney Square
920 North King Street
P. O. Box 551
Wilmington, DE  19899
Telephone: (302) 651-7700

*Attorneys for Defendant and Counter-Claimant
ARUBA NETWORKS, INC.*

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2008,  I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and which has also been served as noted:


### VIA HAND DELIVERY

Richard L. Horwitz
David E. Moore
Potter, Anderson & Corroon, LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801


### VIA E-MAIL

Eric J. Lobenfeld
Ira J. Shaefer
Lawrence Brocchini
Arun Chandra
Hogan & Hartson, L.L.P.
875 Third Avenue
New York, NY 10022

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
