# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SYMBOL TECHNOLOGIES, INC.,  )
a Delaware corporation, and WIRELESS  )
VALLEY COMMUNICATIONS, INC.,  )
a Delaware corporation,  )
                                                                 )          C.A. No. 07-519-JJF
Plaintiffs/Counterclaim Defendants,  )
  )
v.  )          **JURY TRIAL DEMANDED**
  )
ARUBA NETWORKS, INC.,  )
a Delaware corporation,  )
  )
Defendant/Counterclaim Plaintiff.  )

## SYMBOL'S AND WIRELESS VALLEY'S
## MEMORANDUM IN OPPOSITION TO ARUBA NETWORKS, INC.'S
## MOTION FOR LEAVE TO AMEND ITS ANSWER AND FOR LEAVE TO
## SERVE COUNTERCLAIMS ON MOTOROLA, INC.

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Dated August 4, 2008
877084 / 32106

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, Delaware 19801
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiffs*
*Symbol Technologies, Inc. and Wireless Valley*
*Communications, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ......................................2

SUMMARY OF ARGUMENT ..................................................................5

STATEMENT OF FACTS ........................................................................6

    I.       Symbol And Its '922 And '923 Patents............................................6

    II.     Wireless Valley And Its '454 And '622 Patents ..............................6

    III.    The New Aruba Patents .................................................................7

ARGUMENT...........................................................................................8

    I.       ARUBA'S MOTION FOR LEAVE TO AMEND SHOULD BE
           DENIED ........................................................................................8

           A.     Legal Standards ..................................................................8

           B.     Aruba's Proposed Amendment Would Result in Undue
                 Prejudice to Plaintiffs...........................................................9

                1.     Aruba's Proposed Amendment Is Unrelated To The
                      Existing Case And Should Be Rejected...............................9

                2.     The Proposed Amendment Would Result In Undue
                      Delay................................................................................10

                3.     Denial Will Not Prejudice Aruba Since It Is Free To
                      Commence A New Suit On Its Patents...................................12

CONCLUSION.........................................................................................13

## TABLE OF AUTHORITIES

*A.H. Guretzmacher & Co. v. Massey-Ferguson, Inc.,*
   512 F. Supp. 194 (N.D. Ill. 1981) ................................................................. 9

*Adams v. Gould, Inc.,*
   739 F.2d 858 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985) ............................. 8

*All West Pet Supply Co. v. Hill's Pet Products Division,*
   152 F.R.D. 202 (D. Kan. 1993) ................................................................. 9

*Cornell & Co. v. Occupational Safety & Health Review Comm'n,*
   573 F.2d 820 (3d Cir. 1978) ................................................................. 8

*Foman v. Davis,*
   371 U.S. 178 (1962) ................................................................. 8

*Fraser v. Nationwide Mut. Ins. Co.,*
   352 F.3d 107 (3d Cir. 2003) ................................................................. 8

*Galan v. Gegenheimer,*
   1992 WL 301383 (E.D. La. Oct. 14, 1992) ................................................................. 9

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg.,*
   1995 WL 552168 (N.D. Cal. Aug. 30, 1995) ................................................................. 9

*Lorenz v. CSX Corp.,*
   1 F.3d 1406 (3d Cir. 1993) ................................................................. 8

*Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.,*
   No. 99 CIV 4677 (WK), 2001 WL 1702151 (S.D.N.Y. Jan. 11, 2002) ................................... 9

## INTRODUCTION

Plaintiffs Symbol Technologies, Inc. ("Symbol") and Wireless Valley Communications ("Wireless Valley") (collectively, "Plaintiffs") submit this memorandum of law in opposition to Aruba Networks, Inc.'s ("Aruba") Motion for Leave to Amend its Answer[1] and for Leave to Serve Counterclaims on Motorola, Inc.[2] (D.I. 52.)

Although styled as a "Motion to Amend" its Answer, Aruba's motion is no such thing. Rather, it is an effort to initiate an entirely new patent infringement case (including adding a new "party") that is wholly unrelated to this case, and which would delay the resolution of this case by many months, if not more. While leave to amend is, generally, "freely granted", that proposition, and the cases applying it, necessarily assume that the proposed amendment has some relationship to the claims asserted in the existing case. Aruba's proposed "amendment" does not.

This action was commenced nearly a year ago. (Complaint, dated Aug. 27, 2007 ("Compl."), D.I. 1.[3]) Since then, Aruba has done virtually everything to delay this litigation, and to divert focus from its continuing infringement of the Plaintiffs' patents. First, Aruba resisted Plaintiffs' efforts to have the Court set up a scheduling conference. Second, Aruba filed petitions to seek re-examination of each asserted patent with the U.S. Patent and Trademark Office ("PTO") and moved to stay the action. Next, after its stay motion was denied by this

---

[1]  Aruba's proposed Second Amended Answer and Counterclaims does not include its previously plead "Introduction and Summary" which was, *inter alia*, the subject of Plaintiffs' Motion to Strike and to Dismiss. (D.I. 13.) Aruba's omission of the "Introduction and Summary" supports Plaintiffs' motion that this portion of Aruba's Answer was a "gratuitous, self-serving, irrelevant, and factually inaccurate public-relations piece," which "does nothing to help frame the issues in this case."

[2]  As set forth herein, Symbol and Wireless Valley believe Aruba's new infringement claims should be asserted in a new, separately-filed case. Hence, we do not address herein Aruba's desire to include Motorola as a defendant in such a new case.

[3]  The patents-in-suit are attached as Exhibits A-D to the Complaint.

Court, Aruba sought a prolonged discovery schedule, arguing that it had not even started its document collection process despite the case being pending for eight months; the Court declined to enter Aruba's extended schedule and, instead, adopted the schedule proposed by Plaintiffs. (D.I. 37.)  Then, a little over a month later (and less than two months before the close of document production), Aruba approached Plaintiffs to seek an extension of the discovery deadlines, arguing that it was somehow *caught by surprise* by Plaintiffs' assertion of infringement against products manufactured and sold by an Aruba subsidiary; in the spirit of cooperation Plaintiffs agreed to Aruba's request, despite the fact that Plaintiffs did not need such an extension.  Now, Aruba seeks to amend its Answer, for a second time in two months, to assert two patents against Plaintiffs, in an effort to complicate and delay this case.  *While Aruba has done everything to delay this litigation, it has not produced a single document.*

As explained below, the Court should deny Aruba's Motion for Leave to Amend its Answer, because it will result in unnecessary delay and unduly prejudice Plaintiffs.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs commenced this action on August 27, 2007 by filing their Complaint against Aruba. (D.I. 1.)  On October 17, 2007, Aruba served its Answer and Counterclaims.  (Answer, dated Oct. 17, 2007 ("Ans.") D.I. 8.)  Aruba's Answer and Counterclaims denied infringement, and purported to set forth affirmative defenses and declaratory judgment counterclaims.

On December 10, 2007, along with their Reply to Aruba's Answer and Counterclaims (D.I. 12.), Symbol and Wireless Valley filed a joint motion to strike certain of Aruba's defenses as well as Aruba's so-called "Introduction and Summary" to its Answer and Counterclaims as being a gratuitous press release statement that was barred by existing law.  (D.I. 13.)  Aruba filed

2

its Opposition on January 7, 2008 (D.I. 17), and Plaintiffs filed their Reply on January 22, 2008. (D.I. 18.) The motion is fully briefed.

On February 22, 2008, Plaintiffs approached Aruba with a proposed scheduling order and sought Aruba's comments, but got no response. (Declaration of Arun Chandra, dated Aug. 4, 2008 ("Chandra Decl.") Ex. 1, filed contemporaneously herewith.) On February 26, Symbol's counsel again inquired of Aruba's counsel concerning a schedule and asked for a response. (Chandra Decl. Ex. 2.) There was none. Meanwhile, on February 25, 2008, Aruba filed its petition for *inter partes* re-examination for the '922 patent; Plaintiffs' counsel learned about this petition a few days later. Ultimately, following through on their earlier proposals, Plaintiffs submitted their proposed scheduling order to the Court on March 5. (Chandra Decl. Ex. 3.) A few days later, Aruba responded, stating its intent to seek a stay of this action in light of its filed re-examination petition and to seek re-examinations of the remaining three patents-in-suit. (Chandra Decl. Ex. 4.) Eventually, Aruba filed re-examination petitions directed at each remaining patent-in-suit. Noting the inevitable delay entailed by such a stay, and the injury to Plaintiff's business while Aruba, a principal competitor, continued its infringement unabated, the Court denied the Motion to Stay. (D.I. 38.) The Court observed: "a stay of this matter will unduly prejudice Plaintiffs in pursuing enforcement of their patents and Plaintiffs corresponding business interests." (*Id.*)

On May 7, 2008, the Court held a Rule 16 status and scheduling conference. (D.I. 36.) At the hearing, the Court asked Aruba's counsel if Aruba had intellectual property covering its technology. (Transcript of Hearing, dated May 7, 2008, D.I. 36 at 11-12.) Aruba's counsel could not identify any patents, issued or allowed. However, at the time, one of the two patents Aruba now seeks to assert already had issued and was owned by Aruba, and the other patent had

3

been allowed by the PTO, to issue in a short time. Aruba did not think it worthwhile to mention either patent to the Court. (*Id.*) Aruba's counsel also acknowledged that Aruba had not started its document collection, and, therefore, desired an extended discovery schedule, despite the pendency of the case for almost eight months. (*Id.* at 7-9.)

On May 9, 2008, the Court issued a Scheduling Order for this case. (D.I. 37.) The Court rejected Aruba's proposal and adopted Plaintiffs' proposed schedule.

On June 20, 2008, Aruba approached Plaintiffs to seek an extension of the discovery schedule. Aruba contended that it was caught by surprise by Plaintiffs' interrogatory responses, alleging infringement by products manufactured and sold by an Aruba subsidiary. (Chandra Decl. Ex. 5.) Aruba claimed it needed additional time to collect documents for production. Reluctantly, Plaintiffs agreed to a two-month extension of discovery, thus extending the document production deadline from August 15 to October 15, so as not to burden the Court with motion practice. (D.I. 49.)

On July 16, 2008, about three months from the (new) document production deadline and a month after filing its First Amended Answer and Counterclaims (D.I. 46), Aruba moved for permission to file a Second Amended Answer and Counterclaims, the subject of the instant motion. (D.I. 52.) Aruba's proposed Second Amended Answer and Counterclaims seeks to assert two wholly-unrelated patents against Plaintiffs (collectively, "Aruba's patents") and their corporate parent, Motorola, Inc. The first patent, U.S. Patent No. 7,295,524, entitled "Methods, Apparatuses and Systems Facilitating Management of Airspace in Wireless Computer Network Environments," issued on November 13, 2007 and was acquired by Aruba in March 2008 (the "'524 patent"). The second patent, U.S. Patent No. 7,376,113, entitled "Mechanism for Securely Extending A Private Network," issued on May 20, 2008 (the "'113 patent"); however, the PTO

issued a Notice of Allowance on January 30, 2008, and, therefore, Aruba was aware of this patent's impending issuance, at least, as of that date.

In the meantime, the parties negotiated a document production protocol. The parties have also negotiated and submitted a Protective Order to the Court, which includes the parties' agreements on all aspects, except the method of source code production. (D.I. 57, 58.)

Finally, having been diligent in collecting documents, Plaintiffs are close to being done with their document collection efforts, and are busy with the document review process. Plaintiffs have also begun producing documents to Aruba, and have already produced nearly 102,000 pages of documents. (Chandra Decl. Ex. 6.) To date, Aruba has not produced a single document, a fact which now seems deliberately calculated to aid its Motion to Amend by allowing Aruba to suggest that serious discovery has not commenced in this case.

## SUMMARY OF ARGUMENT

Aruba's Motion should be denied, as it would severely prejudice Plaintiffs in their efforts to obtain redress for Aruba's infringement of their patents. Granting Aruba's motion to amend would unnecessarily complicate this action by inserting two new patents into it, which would require additional written discovery, document production and depositions of additional witnesses such as the six inventors and the patent attorneys for Aruba's patents. It would require Plaintiffs to do prior art searches on patents that had never been brought to their attention, all in a highly compressed period of time. This would delay the action on Plaintiffs' patents that has been pending for a year, and would unduly prejudice Plaintiffs. To be sure, Plaintiffs do not contest Aruba's right to assert its patents in a separate litigation, but the existing litigation is not the proper one for such claims.

## STATEMENT OF FACTS

### I.       Symbol And Its '922 And '923 Patents

Symbol is a Delaware corporation with its principal place of business in Holtsville, New York. (Compl. ¶ 1; Ans. ¶ 70.) Symbol, a wholly-owned subsidiary of Motorola since January 2007, is the owner by assignment of U.S. Patent No. 7,173,922, entitled "Multiple Wireless Local Area Networks Occupying Overlapping Physical Spaces" and No. 7,173,923, entitled "Security In Multiple Wireless Local Area Networks" (collectively, "Symbol Patents"). Both Symbol Patents relate to features of a wireless local area networks (WLANs), specifically to a particular configuration for an access point (the device that takes the radio communications from a mobile wireless device and sends them to a wired network) which is called a thin access point or access port and the controller (or switch) that controls it. These two patents solve the problem of providing lower cost access points, without giving up the information processing speed of the WLAN.

### II.      Wireless Valley And Its '454 And '622 Patents

Wireless Valley is a Delaware corporation with its principal place of business in Austin, Texas. Wireless Valley owns by assignment U.S. Patent No. 6,625,454 (the "'454 patent"), entitled "Method and System for Designing or Deploying a Communications Network Which Considers Frequency Dependent Effects" and No. 6,973,622 (the "'622 patent"), entitled "System and Method for Design, Tracking, Measurement, Prediction and Optimization of Data Communications Networks" (collectively, the "WV Patents"). The WV Patents pertain specifically to the software for using a computer to design and plan a WLAN, and for optimizing the WLAN after it has been designed and installed. These two patents deal with the initial planning of the layout of a wireless network (*i.e.*, where to mount the access points in the

network), and the adjustments necessary to an operating wireless network (by modifying placement of access points) so as to increase its efficiency.

### III.    The New Aruba Patents

Founded in 2002, Aruba is a Delaware corporation, with its principal place of business in Sunnyvale, California. Aruba designs, manufactures and sells in the United States wireless switches (which it calls mobility controllers), thin access points, management servers, and related software for use in connection with WLANs, as well as software for designing, planning, configuring, monitoring, managing, and optimizing WLANs. (Comp. ¶ 3.)

Although the patents Aruba now seeks to assert relate generally to WLANs, that is where the similarity to Plaintiffs' patents ends. Aruba's '524 patent relates to detector hardware and software in the switch for automatically detecting the presence of a "rogue" access point that may be seeking to "attack" the WLAN. This patent solves the problem of detecting a hacker trying to steal data from a wireless network by placing a bogus access point into the network (akin to tapping someone's phone). The Aruba '113 patent relates to software in a switch for a WLAN to securely extend a private network to a remote access point by employing a particular scheme for encrypting the data that travels between the access point and the switch. This patent purports to solve the problem of ensuring that an access point that is outside a company building can safely communicate with the network in the building by using encryption.

7

## ARGUMENT

### I.    ARUBA'S MOTION FOR LEAVE TO AMEND SHOULD BE   DENIED

#### A.    Legal Standards

While "leave [to amend pleadings] shall be freely given *when justice so requires*," Fed. R. Civ. P. 15(a) (emphasis added), courts must evaluate a number of factors to determine whether such leave is proper. *See Foman v. Davis*, 371 U.S. 178, 182 (1962. "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court. . . ." *Id.* A court may deny a motion for leave to amend if "(1) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).

The Third Circuit has explained that "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122 (1985). In considering a motion for leave to amend, a court weighs the prejudice to the non-moving party against the harm to the movant if leave is not granted. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) ("[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978))); *see also* 3 James Wm. Moore et al., Moore's Federal Practice § 15.15. "Prejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery." *Id.*

A court should also consider judicial economy and the effect an amendment to the complaint would have on the court's management of the case. *Id.* Another factor is "whether a

party previously amended or had the opportunity to amend the pleading." *Id.*

Finally, "where a counterclaim does not arise from the same transaction or occurrence as the plaintiffs' claims and is therefore not particularly relevant, a court may properly conclude that such a claim should be asserted in an independent proceeding, especially if it is advanced at a late date in the proceeding." *Tommy Hilfiger Licensing, Inc. v. Bradlees, Inc.*, No. 99 CIV 4677 (WK), 2001 WL 1702151, at *6 (S.D.N.Y. Jan. 11, 2002; *see also Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg.*, 1995 WL 552168, at *5 (N.D. Cal. Aug. 30, 1995 ("It is well within the court's discretion to deny leave to amend where the proposed counterclaim presents a cause of action unrelated to the pending action"); *All West Pet Supply Co. v. Hill's Pet Prods. Div.*, 152 F.R.D. 202, 204 (D. Kan. 1993; *Galan v. Gegenheimer*, 1992 WL 301383, at *2 (E.D. La. Oct. 14, 1992; *A.H. Guretzmacher & Co. v. Massey-Ferguson, Inc.*, 512 F. Supp. 194, 201 (N.D. Ill. 1981) (denying leave to file additional unrelated counterclaims where they involved new parties and new issues and could be brought as an independent action).

### B.  Aruba's Proposed Amendment Would Result in Undue Prejudice to Plaintiffs

#### 1.  Aruba's Proposed Amendment Is Unrelated To The Existing Case And Should Be Rejected

As a threshold matter, Aruba's motion should be denied because the new patent infringement claims it seeks to add do "not arise from the same transaction or occurrence" as the existing claims. *Tommy Hilfiger Licensing*, 2001 WL 1702151, at *6. Although the general subject matter of the various patents is WLANs, the technologies that are the subject of Plaintiffs' patents are entirely separate and distinct from those of the Aruba patents, as explained above. The Aruba patents involve different inventors and will require different experts to study different hardware and software. The focus of the existing case is Aruba's products; the focus of Aruba's proposed amended claims is Plaintiffs' products. The proposed action relating to the

Aruba patents is an entirely new, separate case.

In short, the mere fact that the Aruba patents relate generally to WLAN's is their only similarity to the subject matter of the original action. If Aruba were allowed to proceed on its patents, it would effectively introduce a second lawsuit to this action. Aruba's argument is akin to saying that patents concerning an automobile transmission somehow arise from the same occurrences as, and are therefore appropriate to inject into, an existing case concerning patents for a fuel pump assembly, simply because all of the patents relate to features of automobiles. Such an oversimplification is disingenuous and will, when the lack of overlap of the patents becomes clear, result in significant delays in the pending action, which is what Plaintiffs believe to be Aruba's real intent.

### 2.    The Proposed Amendment Would Result In Undue Delay

If the Court were to grant Aruba's motion, the instant litigation would become protracted and unduly prejudice Plaintiffs. It is significant that because the Plaintiffs' patents and Aruba's patents claim different technologies, the underlying software that perform the relevant functions in the accused products, and the highly technical source code therefor, are entirely different. Because proving infringement *will* require evaluating the relevant software modules, extensive additional discovery will be necessitated by Aruba's patents.

First, there would be need for additional written discovery with respect to the Aruba patents. This would be in addition to the interrogatories and document requests that have already been served and responded to by the parties, because of the different subject matters of the patents and the different accused products. In particular, Plaintiffs would need to propound interrogatories regarding, *inter alia*, (1) the conception and reduction to practice for the technology covered by the Aruba patents, (2) Aruba's infringement claim charts showing its infringement contentions, (3) identities of persons with knowledge regarding the preparation and

10

prosecution of these patents, and (4) identification of Plaintiffs' products allegedly infringed by these patents. Plaintiffs would also need to serve additional document requests directed to these patents.

Second, Plaintiffs would need time for evaluating Aruba's patents, the scope of the claims as well as potential defenses. Aruba's suggestion that the parties can complete written discovery and document production regarding these two new patents by October 15, 2008 is nonsensical, especially since a little over two months remain to complete all document production in the existing case. Ironically, Aruba itself told the Court that it needed more time to produce documents in the existing case (even though this case had already been pending for at least eight months) than it is proposing Plaintiffs have for document production with two additional patents. Forcing Plaintiffs to deal with the numerous issues related to these new patents in such a short period would be excessively prejudicial. Moreover, Aruba's patents include six inventors and at least two prosecuting attorneys; thus, Plaintiffs would need to take at least eight additional depositions with respect to Aruba's patents. Aruba would likewise want to depose Symbol and Wireless Valley personnel whose testimony is not required in the existing case. The relevant prior art to the new Aruba Patents is entirely different from what is relevant to the existing patents-in-suit, requiring significant additional discovery, documents, etc.

Third, Plaintiffs have been diligently interviewing potential witnesses and collecting and reviewing relevant documents for production to Aruba since this lawsuit was commenced.[4] While, Aruba asserts that "not a single document has yet been produced in this case," (Aruba Motion, ¶ 5), *the fact is that Plaintiffs have been insisting on beginning a rolling document production for more than a month now, while Aruba has been dragging its feet.* Indeed, since

---

[4] In contrast, to date, Aruba has produced no documents.

11

Aruba filed its Motion to Amend, indicating that "not a single document has yet been produced in this case," Plaintiffs have produced nearly 102,000 pages of documents. (Chandra Decl. Ex. 6.)   Plaintiffs believe that they have collected over 85 percent of the relevant documents; Plaintiffs' counsel is currently diligently reviewing the collected documents so as to meet the document production deadlines set by the Court. (Chandra Decl. ¶ 8.)  If the Court were to allow Aruba to assert its two patents in this case, Plaintiffs would need to go back and re-interview numerous current and former employees to ascertain whether additional documents need to be collected as a result of Aruba's patents.  After collection, Plaintiffs would need to review all additional documents for relevancy and privilege, before producing to Aruba.  All of this would have to occur in two months and while discovery in the existing case is being completed.

Fourth, because Plaintiffs' patents and Aruba's patents claim different technologies, the parties as well as the Court would also need to conduct additional claim construction with respect to the Aruba patents.  Plaintiffs have already provided Aruba with 31 pages of detailed claim charts setting forth Plaintiffs' infringement claims in detail.  Moreover, Plaintiffs would also need to engage experts competent regarding the technologies covered by the Aruba patents, in addition to experts competent regarding the technologies covered by Plaintiffs' patents.

As is abundantly clear, allowing Aruba to assert its patents against Plaintiffs in this suit, at this late hour, would be unduly prejudicial and frustrate judicial economy.

### 3.   Denial Will Not Prejudice Aruba Since It Is Free To  Commence A New Suit On Its Patents

As the foregoing makes clear, there is simply no good reason to permit Aruba to engraft a new, complex patent case on this nearly year-old case.  The prejudice to Plaintiffs of doing so is palpable.  On the other hand, there is no prejudice to Aruba whatsoever, in denying its motion, nor does Aruba proffer any.  Indeed Aruba does not cite a single case remotely like this one in

which leave to amend was granted. Aruba's motion assumes there is some great need for expedition of its claims. There is not.

Aruba is free to commence a separate case in this Court, to redress its infringement claims. If Aruba does so, a scheduling order will be entered consistent with the Court's calendar and the complexity of the case. If Aruba's goal truly is efficiency, the parties can stipulate that any relevant discovery in the existing case can be used in Aruba's new case, without need for duplication. Plaintiffs are certainly not interested in wasting the Court's, or their own, time and money.

## CONCLUSION

For the foregoing reasons, Aruba's Motion for Leave to Amend its Answer and Counterclaim should, in all respects, be denied.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Lawrence Brocchini
Arun Chandra
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Dated August 4, 2008
877084 / 32106

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P. O. Box 951
    Wilmington, Delaware 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

Attorneys for Plaintiffs
Symbol Technologies, Inc. and Wireless
Valley Communications, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 4, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on August 4, 2008, I have Electronically Mailed the document to the following person(s):

Frederick L. Cottrell, III
Richards, Layton & Finger
One Rodney Square
Wilmington, DE 19899
cottrell@rlf.com

Matthew D. Powers
Vernon M. Winters
Jason D. Kipnis
Weil, Gotshal & Manges LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
ArubaDelService@weil.com

Nicholas Groombridge
Paul E. Torchia
Etai Lahav
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
ArubaDelService@weil.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

816924 / 32106