```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE

SYMBOL TECHNOLOGIES, INC.,    :
and WIRELESS VALLEY COMM.,    :
INC.,                         :
                              :
        Plaintiffs,           : Civil Action No. 07-519-JJF
                              :
    v.                        :
                              : JURY DEMANDED
ARUBA NETWORKS, INC.,         :
                              :
        Defendant.            :
```

Eric J. Lobenfeld, Esquire; Ira J. Schaefer, Esquire; Lawrence V.
Brocchini, Esquire; Mitchell S. Feller, Esquire; and Arun
Chandra, Esquire of HOGAN & HARTSON L.L.P. of New York, NY.
Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER
ANDERSON & CORROON LLP of Wilmington, DE.

Counsel for Plaintiffs.

Brandon C. Conard, Esquire and Lawrence O. Onyejekwe, Esquire of
WEIL, GOTSHAL & MANGES LLP of Redwood Shores, CA.
Alfredo A. Perez de Alejo, Esquire; Nicholas Groombridge,
Esquire; Paul E. Torchia, Esquire; and Etai Lahav, Esquire of
WEIL, GOTSHAL & MANGES LLP of New York, NY.
Frederick L. Cottrell, III, of RICHARDS, LAYTON & FINGER, P.A. of
Wilmington, DE.

Counsel for Defendant.

_____

**MEMORANDUM OPINION**

March 30 , 2009

Farnan, District Judge

Pending before the Court is Plaintiffs' Motion to Strike the
Fifth, Sixth, and Ninth Defenses and Introduction; and Dismiss,
in Part, Count Six of Defendant's Answer and Counterclaims (D.I.
13).  For the reasons discussed below, the Court will grant in
part and deny in part Plaintiffs' motion.

## I.    Background

On August 27, 2007, Plaintiffs Symbol Technologies, Inc.
("Symbol") and Wireless Valley Communications, Inc. ("Wireless
Valley") filed this action alleging that Defendant Aruba
Networks, Inc. ("Aruba") infringes four patents - U.S. Patent No.
7,173,922 ("'922 patent"), No. 7,173,923 ("'923 patent"), No.
6,625,454 ("'454 patent"), and No. 6,973,622 ("'622
patent")(collectively, "patents in suit").  (D.I. 1.)  The
patents in suit generally relate to wireless communications and
Wireless Local Area Networks ("WLANs").  On October 17, 2007,
Defendant filed an Answer and Counterclaims denying the
allegations and seeking a declaration that the patents in suit
are invalid, unenforceable, and not infringed.  (D.I. 8.)  On
December 10, 2007, Plaintiffs jointly filed the Motion to Strike
and Dismiss presently before the Court.

## II.   Discussion

By their motion, Plaintiffs contend that the Court should
strike, pursuant to Rules 12(f) of the Federal Rules of Civil

2

Procedure, Defendant's affirmative defenses of equitable estoppel (Fifth Defense) and laches (Sixth Defense), one of Defendant's inequitable conduct defenses (Ninth Defense) and related Counterclaim (Count 6), and the Introduction and Summary to Defendant's Answer and Counterclaims.

Pursuant to Rule 12(f), "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, motions to strike under Rule 12(f) are disfavored. Seidel v. Lee, 954 F. Supp. 810, 812 (D. Del. 1996); Abbott Diabetes Care, Inc. v. Dexcom, Inc.., 2007 WL 2892707 at *2 (D. Del. 2007)(citations omitted). When ruling on a motion to strike, "the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law."[1] Proctor & Gamble Co. v. Nabisco Brands, Inc., 697 F. Supp. 1360, 1362 (D. Del. 1988)(citations omitted). Further, "a court should not grant a motion to strike a defense unless the

_____

[1]Even where there is no factual dispute, several courts have noted that a "motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law." Salcer v. Envicon Equities, Corp., 744 F.2d 935, 939 (2d Cir. 1984), rev'd on other grounds, 478 U.S. 1015 (1986)(compiling cases). This is because such questions are generally determinable only after discovery and a hearing on the merits. Wright & Miller, 5C Federal Practice and Procedure § 1381 (footnotes omitted). To decide disputed legal questions at an earlier stage in the litigation "would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts." Salcer, 744 F.2d at 939.

3

insufficiency of the defense is 'clearly apparent.'" Cipollone
v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986), rev'd
on other grounds, 505 U.S. 504 (1992),(citations omitted).

A.    The Fifth Defense

By its fifth defense, Defendant alleges that Plaintiff
Symbol is equitably estopped from asserting its '922 and '923
Patents because at no point during extensive merger negotiations
between Symbol and Defendant in 2003 did Symbol advise or suggest
it might later assert the patents at issue against Defendant.
Plaintiffs contend that the defense should be stricken because
silence, absent a duty to speak, cannot form the basis of
equitable estoppel.

A necessary element of the defense of equitable estoppel is
misleading communication or conduct by a patentee that causes the
accused infringer to infer that the patentee does not intend to
enforce the patents-in-suit. A.C. Aukerman Co. v. R.L. Chaides
Constr. Co., 960 F.2d 1020, 1042 (Fed. Cir. 1992)(en banc).
"[S]ilence alone will not create an estoppel unless there was a
clear duty to speak ... or somehow the patentee's continued
silence reenforces the defendant's inference from the plaintiff's
known acquiescence that the defendant will be unmolested." Id.
at 1043-44 (citations omitted). Most commonly, courts have found
intentionally misleading silence where "a patentee threatened
immediate or vigorous enforcement of its patent right but then

4

did nothing for an unreasonably long time." Hottel Corp. v. Seaman Corp., 833 F.2d 1570, 1574 (Fed. Cir. 1987), overruled on other grounds, 960 F.2d 1020 (Fed. Cir. 1992),(citations omitted).

Plaintiffs contend that the facts as alleged by Defendant cannot give rise to a duty to speak, citing Altech Controls Corp. v. EIL Instruments, Inc., 8 Fed. Appx. 941 (Fed. Cir. 2001) (unpublished) as instructive. In Altech, the Federal Circuit reversed a finding of equitable estoppel where, during earlier merger talks between the parties, plaintiff made no mention of an intent to enforce its patent against defendant, despite complaints of a third party copying plaintiff's products. Id. at 946. Further, Plaintiffs contend that Symbol's silence and conduct could not have triggered a duty to speak because the patents at issue had not yet issued, relying on Ricoh Co., Ltd. v. Nashua Corp., 185 F.3d 884 (Fed. Cir. 1999)(unpublished) which ruled that a patentee had "no right" to object to infringement on the basis of a pending patent application.

In response, Defendant contends that Rule 8 requires only notice pleading, that it "had no obligation to set forth all possible facts in its pleading," and that it has thus made no admission that Symbol was silent during merger discussions regarding its pending patent applications. Further, Defendant contends that as an equitable defense intended to be applied

5

flexibly, equitable estoppel depends heavily on the communications at issue and the beliefs of the party being misled, and that it would be mistaken to assume the defense will fail until the full scope of the facts are presented.

The Court agrees with Defendant. Given that equitable estoppel "is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules," A.C. Aukerman, 960 F.2d at 1041, and that the factual record before the Court is sparse, the Court concludes that it cannot be said that the insufficiency of Defendant's fifth defense is "clearly apparent," Cipollone, 789 F.2d at 188. In drawing this conclusion, the Court notes the disfavor with which motions to strike are regarded and the early stage of the proceeding.

B.    The Sixth Defense

By its sixth defense, Defendant alleges that the relief sought by Plaintiffs Symbol and Wireless is barred by the doctrine of laches because Plaintiffs knew or should of known long ago of the activities now alleged to infringe the patents in suit. Plaintiffs contend that the sixth defense should be stricken because Defendant fails to allege unreasonable delay or prejudice.

While the doctrine of laches, as an equitable defense, must have flexibility in its application, a defendant asserting it in a patent infringement action has the burden to prove that "(1)

6

the plaintiff delayed filing suit for an unreasonable and
inexcusable length of time from the time the plaintiff knew or
reasonably should have known of its claim against the defendant,
and (2) the delay operated to the prejudice or injury of the
defendant." Aukerman, 960 F.2d at 1032 (citations omitted).

Plaintiffs contend that, because the '922 and '923 Patents
issued on February 6, 2007, roughly seven months before this
action was filed, Defendant's laches defense "can only be
characterized as frivolous" and fails as a matter of law.
Further, Plaintiffs contend it would be improper to characterize
this seven month period as a delay at all, as Symbol was awaiting
the PTO's Certificate of Correction on the '922 Patent, which had
been requested to correctly reflect the claims allowed and
without which Symbol may not have been able to bring suit.
Plaintiffs also contend that Defendant improperly "muddles"
together the separate and distinct plaintiffs and patents at
issue, and that the period of delay for each patent must be
determined independently.

In response, Defendant contends it provided in the sixth
defense a "short and plain statement" giving Plaintiffs fair
notice of the defense it intends to assert, satisfying all that
is required under Rule 8. Addressing Plaintiffs' contention that
the defense fails as a matter of law, Defendant contends that it
has alleged "prosecution laches," which may be applied to bar

7

enforcement of patent claims that issued after an unreasonable and unexplained delay in the prosecution of the patent application.

The Court is unpersuaded that the sixth defense of Defendant's Answer and Counterclaims gives fair notice of a claim of prosecution laches. As Plaintiffs contend, Defendant's laches allegation sets out a "garden variety" laches defense: "Accordingly, [Plaintiffs] knew or reasonably should have known of the activities now alleged by [Plaintiffs] to infringe the patents-in-suit long ago." (D.I. 46 at ¶52.) Finding nothing in the sixth defense that can be said to put Plaintiffs on fair notice of a "prosecution laches" defense, the Court will grant Plaintiffs' motion with respect to the sixth defense with leave to amend if Defendant chooses to do so.

C.    The Ninth Defense and Counterclaim Count Six

By its ninth defense and counterclaim count six, Defendant alleges that Wireless Valley cannot enforce its '622 Patent because it committed inequitable conduct by "burying" a highly material reference in a disclosure to the patent examiner. Plaintiffs contend that this defense should be stricken as insufficient because inequitable conduct cannot be found where, as here, the reference was cited to the examiner.

Inequitable conduct cannot be based on an applicant's failure to cite a prior art reference where the examiner

8

independently cited the same reference.  Scripps Clinic &
Research Found. v. Genentech, Inc., 927 F.2d 1565, 1582 (Fed.
Cir. 1991).  Likewise, "[a]n applicant can not be guilty of
inequitable conduct if the reference was cited to the examiner."
Fiskars, Inc. v. Hunt Mfg., 221 F.3d 1318, 1327 (Fed. Cir. 2000);
accord Molins PLC v. Textron, Inc., 48 F.3d 1172 (Fed. Cir.
1995)(rejecting claim that applicant intended to deceive by
"burying" a relevant reference).

        By their motion, Plaintiffs contend that, based on clear
Federal Circuit precedent, "burying" a relevant reference in a
long list of citations cannot support a claim of inequitable
conduct.  In response, Defendant contends that Plaintiffs misread
Molins and that at least two rules from the Manual of Patent
Examining Procedure ("MPEP"), which the Molins court cited,
caution against "burying" a reference.

        While dicta in Molins supports the contention that "burying"
a reference can be probative of bad faith, the Court concludes
that this is contradicted by the decision of the case and by the
clear precedent of Scripps and Fiskars.  "An applicant can not be
guilty of inequitable conduct if the reference was cited to the
examiner."  Fiskars, 221 F.3d at 1327.  Moreover, the MPEP rules
Defendant relies on were from a 1980 version of the MPEP, and
were no longer in force during the prosecution of the patent at
issue.  See MPEP Chapter 2000 § 2001.04 at 2000-4 (Aug. 2001

                                     9

Rev.) ("the new rules will actually facilitate the filing of information since the burden of submitting information to the Office has been reduced by eliminating, in most cases, the requirement for a concise statement of the relevance of each item of information listed in an information disclosure statement"); 37 C.F.R. § 1.98(a)(3)(i) (as amended in 1992) (requiring a concise explanation of relevance only for references "not in the English language"); Molins, 48 F.3d at 1184.  The Court thus concludes that, under Federal Circuit caselaw and the relevant regulations, Defendant's ninth defense is insufficient as a matter of law. Accordingly, the Court will grant Plaintiffs' motion with respect to the ninth defense and counterclaim count six.

D.    The Introduction and Summary

Plaintiffs contend that the Introduction and Summary to Defendant's Answer should be stricken because it is not responsive to Plaintiffs' Complaint, serves no legitimate pleading purpose, and is potentially prejudicial to Plaintiffs.

The Introduction and Summary to Defendant's Answer and Counterclaims states, in part:

Sometimes, when companies are losing in the marketplace, they sue - hoping that they can persuade jurors to overrule the verdict of the market.  This lawsuit, filed by [Symbol & Wireless Valley] (both wholly owned subsidiaries of global behemoth Motorola, Inc.), is that type of case. . . .
Recognizing the superiority of Aruba's technologies, Symbol tried to get access to them by buying Aruba.

(D.I. 45 at 1.)   The Introduction and Summary continues by

10

discussing Aruba's growth and receipt of "widespread recognition"
and awards, and ends:

> The Complaint fails to explain why the plaintiffs:
> - waited for four years after Symbol's close inspection of Aruba's technology and business to sue;
> - sued with no prior notice to Aruba; and
> - chose to bring this lawsuit on the eve of Aruba's earnings announcement.
>
> That explanation can be found in Aruba's success in the marketplace.

(Id. at 2.)

Under Rule 12(f), even where the challenged material is
"redundant, immaterial, impertinent, or scandalous," a motion to
strike should not be granted "unless the presence of the
surplusage will prejudice the adverse party." Schwarzkopf
Technologies Corp. v. Ingersoll Cutting Tool Co., 820 F. Supp.
150, 154 (D. Del. 1992)(citations omitted).

Plaintiffs contend that Defendant's Introduction and Summary
serves no legitimate pleading purpose, as evidenced by being
nowhere incorporated into the body of the Answer and
Counterclaims, and impugns Plaintiffs' motives for seeking to
lawfully enforce their patents. In response, Defendant contends
that the Introduction and Summary sets forth background
information critical to its equitable defenses and relevant to
the Court's determination of credibility and equity.

The Court concludes that the Introduction and Summary to
Defendant's Answer and Counterclaims is unrelated in any
substantive way to Defendant's equitable defenses, and therefore

the Court will grant Plaintiffs' motion with respect to the
Introduction and Summary.

## III. Conclusion

For the foregoing reasons, the Court will grant in part and
deny in part Plaintiffs' Motion to Strike and Dismiss.   An
appropriate order will be entered.